**FILED**
**Lucinda B. Rauback, Clerk**
**United States Bankruptcy Court**
**Brunswick, Georgia**
**By jbergen at 5:08 pm, Jun 07, 2019**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| | ) | No. 07-20244 |
| MARVIN B. SMITH, III, and | ) | |
| SHARON H. SMITH, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| MARVIN B. SMITH, III, and | ) | |
| SHARON H. SMITH, | ) | |
| | ) | |
| Debtors/Movants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC BANK USA, | ) | |
| | ) | |
| HSBC BANK USA, N.A., | ) | |
| | ) | |
| HSBC BANK USA, NATIONAL | ) | |
| ASSOCIATION AS TRUSTEE FOR THE | ) | |
| HOLDERS OF BCAP LLC TRUST 2006- | ) | |
| AA2, | ) | |
| | ) | |
| PATRICK J. BURKE, PRES./CEO OF | ) | |
| HSBC BANK USA, N.A., | ) | |
| | ) | |
| BALCH & BINGHAM, LLP, | ) | |
| | ) | |
| GEREMY GREGORY, AGENT FOR | ) | |
| BALCH & BINGHAM, LLP, | ) | |

<mark>
</mark>

| | |
|---|---|
| CHRISTOPHER ANULEWICZ, AGENT FOR BALCH & BINGHAM, LLP, | ) ) ) |
| MCGUIRE WOODS, LLP, | ) ) |
| PAUL A. ROGERS, AGENT FOR MCGUIRE WOODS, LLP, | ) ) ) |
| THOMAS R. WALKER, AGENT FOR MCGUIRE WOODS, LLP, | ) ) ) |
| JARROD S. MENDEL, AGENT FOR MCGUIRE WOODS, LLP, | ) ) ) |
| RUBIN LUBLIN, LLC, | ) ) |
| PETER LUBLIN, AGENT OF RUBIN LUBLIN, LLC, | ) ) ) |
| BRET CHANESS, AGENT OF RUBIN LUBLIN, LLC, | ) ) ) |
| RONNIE PERRY REALTY CO., INC., and | ) ) |
| JILL JERNIGAN, AGENT/BROKER FOR RONNIE PERRY REALTY CO., INC., | ) ) ) |
| Respondents. | ) ) ) |

**ORDER DENYING EMERGENCY MOTION TO ENFORCE**
<u>**DISCHARGE INJUNCTION AND MOTION FOR CONTEMPT**</u>

Before the Court is the Emergency Motion to Enforce Discharge Injunction and

Motion for Issuance of an Order to Respondents to Show Cause Why They Should Not Be

Held in Contempt (ECF No. 755) (the "Motion") of debtors Marvin B. Smith, III, and Sharon H. Smith (the "Smiths"). The Smiths seek in their Motion relief against a long list of respondents (collectively, the "Respondents") involved in the foreclosure and sale of their former residence. Included in the list of Respondents are HSBC Bank USA, HSBC Bank, N.A., and HSBC Bank, USA, National Association as Trustee for the Holders of BCAP Trust LLC 2006-AA2 (individually and collectively, "HSBC"), several attorneys and associated law firms representing HSBC, and a realty company and realtor. For the reasons stated below, the Motion will be denied.

## BACKGROUND

The Smiths filed for bankruptcy on April 2, 2007. On November 12, 2008, this Court[1] entered a Consent Order Modifying the Automatic Stay (ECF No. 174) (the "Consent Order") in which the Smiths agreed through counsel to a modification of the automatic stay with respect to the Smiths' former residence located at 311 10th Street, Unit B, St. Simons Island, Georgia (the "Property"). Sometime thereafter, pursuant to the terms of the Consent Order, the automatic stay was deemed lifted without further hearing or order to allow Countrywide Home Loans, Inc., as servicing agent for HSBC and its successors and assigns (in such capacity, "Countrywide"), to pursue its state law remedies, including

---

[1] This case was originally assigned to the Honorable John S. Dalis. Following his retirement, the case was reassigned on June 26, 2017.

3

foreclosure, with respect to the Property. Because the stay had been lifted as to the Property, the chapter 7 trustee (the "Trustee") determined the Property was "burdensome and of inconsequential value to the estate" and filed a notice of abandonment on April 25, 2012. (ECF No. 555.) HSBC foreclosed upon the Property on May 5, 2015. Upon foreclosure, title to the Property passed to HSBC. The Smiths received a discharge on June 1, 2016. (ECF No. 699.) The Smiths were removed from the Property on August 14, 2017, after HSBC initiated dispossessory proceedings. According to the Smiths, the Property is now listed for sale.

## DISCUSSION

### I. Emergency Motion to Enforce Discharge Injunction

The Smiths allege that Respondents violated the discharge injunction under 11 U.S.C. § 524 by undertaking actions related to the foreclosure of and the Smiths' eviction from the Property. In this Motion, the Smiths ask the Court to enforce the discharge injunction,[2] issue a show cause order regarding Respondents' contempt, and award actual damages. (ECF No. 755 at 2, 11.)

---

[2] The Motion does not clearly indicate what the Smiths are asking for when they request that the Court "enforce the discharge injunction." (ECF No. 755 at 11.) While the Smiths have asked for contempt to be considered, the Motion indicates that the Smiths are also requesting injunctive relief to prevent certain Respondents from selling the Property. (ECF No. 755 at 2.) Due to the pro se status of the Smiths, the Court will construe the Motion liberally and address whether an injunction can be issued under the circumstances in this case.

4

Importantly, the only remedy for a violation of the discharge injunction comes in the form of sanctions for contempt.[3] Debtors do not have a private right of action for damages arising from a violation of the discharge injunction, and enforcement of the discharge injunction exists only through a contempt proceeding. Giles v. James B. Nutter & Co. (In re Giles), 502 B.R. 892, 905 (Bankr. N.D. Ga. 2013); see also Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) (holding that there is no private cause of action in Section 524 and that the court's contempt power is its enforcement mechanism); Cox v. Zale Del., Inc., 239 F.3d 910, 917 (7th Cir. 2001) (holding that an action alleging a violation of Section 524(c) can be brought only as a contempt action because Section 524 lacks a provision for punitive damages); Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 422 (6th Cir. 2000) (holding a private cause of action improper where the appropriate remedy for violation of an injunction is a contempt proceeding). The Court cannot enforce the discharge injunction with a new injunction. All it can do is sanction parties that have violated the discharge injunction through a contempt order. Therefore, the Court will consider only the Smiths' request for sanctions, including actual damages, arising from the alleged violation of the discharge injunction.

---

[3] The Smiths seek actual damages for Respondents' actions allegedly in violation of the discharge injunction. (ECF No. 755 at 11.) Actual damages for such a violation are available only in the context of a sanction for contempt. Hardy v. United States ex rel. IRS (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996); McTyeire v. Hunt (In re McTyeire), 357 B.R. 898, 903 (Bankr. M.D. Ga. 2006).

The Court derives its contempt powers from its statutory authority to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). "The language of § 105 encompasses 'any type of order, whether injunctive, compensative or punitive,' as long as it is 'necessary or appropriate to carry out the provisions of' the Bankruptcy Code." Hardy v. United States ex rel. IRS (In re Hardy), 97 F.3d 1384, 1389 (11th Cir. 1996).

Before sanctions can be considered, the Court must determine whether a violation of the discharge injunction has occurred. Section 524(a)(2) provides:

> (a) A discharge in a case under this title—
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt *as a personal liability of the debtor*, whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(2) (emphasis added). Section 524 provides debtors with the "fresh start" of the Bankruptcy Code by implementing "a post-discharge injunction against collection of debts discharged in bankruptcy." Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996). The discharge injunction "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). "Section 524 is intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it." Green Point Credit, LLC v. McLean

(In re McLean), 794 F.3d 1313, 1321 (11th Cir. 2015) (citations and internal quotations omitted).

In determining whether a creditor has violated the discharge injunction, courts ask "whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt, regardless of the legal entity against which the creditor files its claim." Id. at 1322.  However, the chapter 7 discharge stops the collection of debts personally against the debtor only.  It "does not avoid or otherwise affect a lien against property of the debtor."  Mele v. Bank of Am. Home Loans (BAC) (In re Mele), 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013).

The Smiths have not presented facts demonstrating that Respondents have violated the discharge injunction.  Nothing in their Motion shows that any of Respondents have made any attempts to collect any debt as a personal liability of the Smiths.  The Smiths' discharge extinguished their personal liability for certain debts but did not extinguish HSBC's ability to enforce the lien on the Property.  As such, actions taken by any Respondent to foreclose, evict the Smiths from the Property, and/or sell the Property that has been foreclosed upon had nothing to do with the Smiths or their discharge.  Accordingly, there is no need for the Court to exercise its contempt powers.

II.     **Contempt for Violation of Court's Order Disallowing Claim No. 10**

The Smiths next request that the Court hold Respondents in contempt for violation

of its Order on Objection to Claim No. 10 of Countrywide (ECF No. 603) (the "Disallowance Order"). Countrywide[4] filed a proof of claim (Claim No. 10) (the "Claim") regarding the loan that was secured by a lien on the Property. The Claim was disallowed when the Court sustained the objection of the Trustee (ECF No. 588) (the "Objection"), in which the Trustee contended that the Claim should be disallowed because it was "secured by property either abandoned or not administered by the Trustee and, therefore, Creditor should look to its collateral for satisfaction of the debt." (ECF No. 588 at 2.) The Smiths argue that the effect of the Disallowance Order was to void the subject lien on the Property under 11 U.S.C. § 506(d) upon the Smiths' discharge. They argue Respondents have acted in violation of the Disallowance Order by enforcing the lien and foreclosing on the Property.

11 U.S.C. 506(d) provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d)(1)-(2). The Smiths submit that Section 506(d) automatically voided the subject lien on the Property upon their discharge. In support, the Smiths refer to Nat'l

---

[4] As previously stated, Countrywide was HSBC's servicing agent. Countrywide was listed as the creditor of the Claim on the proof of claim and was granted relief from the automatic stay. (ECF No. 174.) Sometime thereafter, Countrywide ceased to be HSBC's servicing agent. For the sake of clarity, the Court notes that HSBC is the real party in interest with respect to the subject lien on the Property.

Capital Mgmt., LLC v. Gammage-Lewis, No. 5:10-CV-468-F, 2012 WL 3561785 (E.D.N.C. Aug. 14, 2012), aff'd, 523 F. App'x 254 (4th Cir. 2013).  In that case, the district court concluded that Section 506(d) provided for avoidance where the trustee objected to a creditor's secured claim for failure to attach proper documentation to its claim against debtor's vehicle and the creditor failed to respond.  Id. at *3.  In the objection, the trustee requested the court to disallow the creditor's claim as a secured claim and allow it instead as a general unsecured claim.  Id. at *1.  To reach its holding, the court determined that under those circumstances, the trustee's objection was sufficient in place of an adversary proceeding—a requirement under Federal Rule of Bankruptcy Procedure 7001(2) to challenge a lien—because it gave proper notice to the creditor that "the debtor was challenging the validity, priority or extent of lien."  Id. at *3.

The National Capital case is not binding precedent upon the Court nor is it persuasive.  The Trustee abandoned the Property after determining that the Property was of no value to the bankruptcy estate.  Abandonment had the effect of removing the Property from the bankruptcy estate and the jurisdiction of the bankruptcy court and returning the Property to the Smiths as if the bankruptcy had never occurred.  11 U.S.C. § 554(a); In re Faloye, 459 B.R. 865, 867 (Bankr. N.D. Ga. 2011).  In this case, the Claim was disallowed because the Property was no longer part of the bankruptcy estate.  The Trustee's Objection was not a challenge to the existence, legitimacy, perfection, priority, or

9

extent of the lien on the Property; and the Disallowance Order made no determination on such issues. The disallowance was procedural, and its effect was simply to keep Countrywide and/or HSBC from receiving any distribution from the Trustee for the Claim.

Further, the Claim was disallowed directly as a result of the Smiths' decision to agree to the Consent Order which allowed Countrywide and/or HSBC to pursue its state law remedies, including foreclosure, with respect to the Property. (ECF No. 174.) It appears that the Smiths have sifted through the more than 700-entry docket in this case to find something that might support their ongoing quest to escape the consequences of the Consent Order, deciding now to rely erroneously on the Disallowance Order.

This Court joins other courts in refusing to deem a perfectly valid lien void without a proper determination of such on the merits. See Shelton v. CitiMortgage, Inc. (In re Shelton), 477 B.R. 749, 752 (B.A.P. 8th Cir. 2012) (concluding a secured creditor's lien cannot be avoided under Section 506(d) for untimeliness); Hamlett v. Amsouth Bank (In re Hamlett), 322 F.3d 342, 349 (4th Cir. 2003) (holding creditor who chooses to sit out bankruptcy by not filing a proof of claim retains its lien under Section 506(d)); Roman v. CitiMortgage, Inc. (In re Roman), No. 14-03686, Adv. No. 14-00255, 2018 WL 4801933, at *8 (Bankr. D.P.R. Oct. 2, 2018) (holding lien cannot be avoided where neither trustee nor debtor challenged the lien or took any affirmative action that could lead to lien avoidance); Kohout v. Nationstar Mortg., LLC (In re Kohout), 560 B.R. 399, 408 (Bankr. N.D.N.Y. 2016)

("Where . . . the Court does not examine the substance of a creditor's claim or make a merit-based determination, it would be illogical and contrary to longstanding bankruptcy jurisprudence to deprive such creditor of its contractual in rem rights."). To hold otherwise would be antithetical to the long-standing premise under the Bankruptcy Code that certain liens ride through bankruptcy. Universal Am. Mortg. Co. v. Bateman (In re Bateman), 331 F.3d 821, 827 (11th Cir. 2003) ("[A] secured creditor need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien.") (citing Long v. Bullard, 117 U.S. 617, 620-21 (1886)). Finally, because the Court concludes that the lien was not voided, there has been no violation of the Disallowance Order. Accordingly, again, there is no need for the Court to exercise its contempt powers.

    **IT IS THEREFORE ORDERED** that the Motion is **DENIED**.

_____
Michele J. Kim
United States Bankruptcy Court
Southern District of Georgia

Dated at Brunswick, Georgia,
this 7th day of June, 2019.

11