## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| IN RE: | : **CASE NO: 07-20244-JSD** |
| | : **CHAPTER: 7** |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
|     **Debtors** | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| **COUNTRYWIDE HOME LOANS, INC. AS** | : |
| **SERVICING AGENT FOR HSBC BANK** | : |
| **USA, NATIONAL ASSOCIATION AS** | : |
| **TRUSTEE FOR THE HOLDERS OF BCAP** | : |
| **LLC TRUST 2006-AA2,** | : |
|     **Movant,** | : |
| | : **CONTESTED MATTER** |
| **vs.** | : |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **R. MICHAEL SOUTHER, Trustee** | : |
|     **Respondents.** | : |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Comes now COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, a secured creditor of the above-named Debtors, and respectfully shows the Court as follows:

1.

Marvin B. Smith, III and Sharon H. Smith, hereinafter known as Debtors, filed a Petition for Relief under 11 U.S.C. Chapter 11 on April 2, 2007, which was converted to a Chapter 7 on May 8, 2008, and are therefore subject to the jurisdiction of this Court.

2.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §362.

3.

COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, hereinafter known as Movant, is a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt.  The mortgage is evidenced by a Promissory Note executed by Marvin S. Smith III and Sharon H. Smith, dated August 7, 2006, in the original principal amount of $1,767,500.00.  The mortgage Promissory Note is secured by a Deed to Secure Debt executed by Marvin B Smith, III and  Sharon H Smith, dated August 7, 2006, which conveys certain property located in Glynn County, Georgia, now or formerly known as 311 10th Street, Unit# B, Saint Simons Island, GA 31522.  Said Deed to Secure Debt is recorded in Deed Book 2026, Page 174, Glynn County, Georgia Records.

4.

Movant affirmatively alleges that Debtors failed to maintain the monthly mortgage payments to Movant.  As of the date of the filing of this Motion there is an arrearage deficiency of $193,225.79. This figure is comprised of April, 2007 through September, 2007 Regular Mortgage Payments (6 at $10,678.66) totaling $64,071.96, October, 2007 through June, 2008 Regular Mortgage Payments (9 at $10,678.65) totaling $96,107.85, July, 2008 through September, 2008 Regular Mortgage Payments (3 at $10,678.66) totaling $32,035.98, Property Inspections of $210.00, and Bankruptcy Fees and Costs of $800.00.

5.

Movant shows that the total debt owing on this loan is approximately $1,960,725.79 and that the fair market value of this property is $2,000,000.00 pursuant to Glynn County Tax Assessor. There is a second mortgage held by Countrywide Home Loans in the approximate amount of $309,886.00 for a total of approximately $2,270,611.79 owing against the property.  Movant further alleges that there appears to be little or no equity in Movant's secured property.  Since the have not made a direct

payment to Movant in approximately eighteen (18) months, Movant's security interest in said property is not adequately protected.

<div align="center">6.</div>

Pursuant to 11 U.S.C. §362, Movant is entitled to a termination of the Automatic Stay with respect to its secured property, for cause, since the lack of adequate protection exists.

WHEREFORE MOVANT PRAYS:

(a)     That the Automatic Stay entered by this Honorable Court pursuant to 11 U.S.C. §362 be modified so as to permit the Movant to exercise its right to foreclose its secured property under the terms of its Note and Deed to Secure Debt;

(b)     That the Movant's secured property be abandoned as property of the estate;

(c)     That the Order lifting the stay waive the ten day stay provision as prescribed by Bankruptcy Rule 4001(a)(3); and

(d)     For such other and further relief as this Court deems just and proper.

(d)     For such other and further relief as this Court deems just and proper.

<div style="margin-left:50%">
ADORNO & YOSS LLC
/s/ Lisa F. Caplan
Lisa F. Caplan
Attorney for COUNTRYWIDE
GA. State Bar No. 001304
</div>

Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA 30309
(888) 890-5309
lcaplan@adorno.com

BK 2 0 2 6 PG 1 7 4

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL 35209

Recorded *8/23/06*

Lola B. Jamsky
Clerk Superior Court

FILED
GLYNN CO. CLERK'S OFFICE

2006 AUG 22 P 3: 40

RETURN TO:
WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

Prepared By:

Lola B. Jamsky
CLERK SUPERIOR COURT

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham,AL 35209

GA. INTANGIBLE TAX PAID
*5302.50* DATE *8-22-06*
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

—————————[Space Above This Line For Recording Data]—————————

## SECURITY DEED

MIN 100085600024184247

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 7, 2006
together with all Riders to this document.
(B) "Borrower" is MARVIN B SMITH, III & SHARON H SMITH

610   130050693   D2  001   001

Borrower is the grantor under this Security Instru
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02418424

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011 1/01

VMP®-6A(GA) (0005).03

Page 1 of 14                   Initials:

VMP Mortgage Solutions, Inc.

BK 2 0 2 6 PG 1 7 5

(D) "Lender" is **Synovus Mortgage Corp.**

Lender is a **Corporation**
organized and existing under the laws of **Alabama**
Lender's address is **2204 Lakeshore Drive, Suite 325, Birmingham, AL   35209**

(E) "Note" means the promissory note signed by Borrower and dated **August 7, 2006**
The Note states that Borrower owes Lender **one million seven hundred sixty-seven
thousand five hundred and 00/100**                                          Dollars
(U.S. $**1,767,500.00**        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **September 1, 2036**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | **GA Waiver of Borr's Rights** |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____

02418424

VMP®-6A(GA) (0005).03         Page 2 of 14         Form 3011  1/01

BK 2 0 2 6 PG 1 7 6

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**

| of | **Glynn, GA** | : |
| [Type of Recording Jurisdiction] | [Name of Recording Jurisdiction] | |

Parcel ID Number:                                    which currently has the address of
**311 10th Street, Unit B**                                              [Street]
**Saint Simons Island**          [City] , Georgia  **31522**      [Zip Code]
("Property Address"):

   TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:

02418424

VMP®-6A(GA) (0005).03                    Page 3 of 14                    Form 3011  1/01

62

BK 2026 PG 187

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
MARVIN B SMITH, III        -Borrower      SHARON H SMITH        -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                            -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                            -Borrower

**STATE OF GEORGIA,**                              **County ss:**
    Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,
State of Georgia

02418424

VMP®-6A(GA) (0005).03          Page 14 of 14          Form 3011  1/01

63

BK 2 0 2 6 PG 1 8 8

## EXHIBIT "A"

All that tract or parcel of land lying and being in the Land Lot One-hundred Sixty-Three (163) of the 25th GMD District, of Glynn County, Georgia, being Unit B, of Enchantment by the Sea Condominium as shown on plat of survey, which plat is recorded in Condominium Plat Book 1, Page 48-B, Glynn County records and Floor Plans filed in Condominium Cabinet IV, Folder 3A-3H, aforesaid records, together with all right, title and interest contained in the Declaration of Enchantment By the Sea, a condominium, recorded in Deed Book 1380, Page 35, aforesaid records, together with the appurtenant percentages of undivided interests in the common element as described in said Declaration.  This conveyance is made subject to the following matters:

1.    2006 ad valorem taxes and subsequent years which are liens not now due and payable;
2.    Easements, Restrictions and Right of Ways of record;
3.    Condominium Declaration of record and any amendments thereto; and
4.    All matters of survey as shown on recorded plat.

**Parcel ID# 04-12897**

64

**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By jbergen at 4:42 pm, Nov 12, 2008*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

|  |  |
|---|---|
| **IN RE:** | : **CASE NO 07-20244-JSD** |
|  | : **CHAPTER 7** |
|  | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **Debtors** | : |
| - - - - - - - - - - - - - - - - - - - - - - | - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **COUNTRYWIDE HOME LOANS, INC.** | : |
| **AS SERVICING AGENT FOR HSBC** | : |
| **BANK USA, NATIONAL ASSOCIATION** | : |
| **AS TRUSTEE FOR THE HOLDERS OF** | : |
| **BCAP LLC TRUST 2006-AA2,** | : |
| **Movant,** | : |
|  | : **CONTESTED MATTER** |
| **vs.** | : |
|  | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **R. MICHAEL SOUTHER, Trustee** | : |
| **Respondents.** | : |
|  | : |

### CONSENT ORDER MODIFYING AUTOMATIC STAY

A Hearing on the above-styled Motion for Relief from Automatic Stay filed September

25, 2008, by COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA,

National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors

and assigns (hereinafter "Movant") was scheduled to come before this Court on November 6,

2008.  Relief is sought as to real property located in Glynn County, GA now or formerly known

as 311 10th Street, Unit# B, Saint Simons Island, GA 31522 (the "Property"), as more

particularly described on Exhibit "A" attached to the Motion for Relief from Automatic Stay.

Movant's counsel and the Chapter 7 Trustee, R. Michael Souther, conferred and have reached an

agreement which will allow Trustee to market the Property for a specific period of time.

Accordingly, by consent, it is hereby **ORDERED** that:

the Motion is conditionally **DENIED**; the automatic stay pursuant to 11 U.S.C. § 362 will remain in effect for a period of one hundred and eighty (180) days from November 6, 2008 to allow Trustee to market the Property, unless at any time, the Trustee files an abandonment of the property, in which case the automatic stay pursuant to 11 U.S.C. § 362 shall be deemed modified without further order or hearing. If, however, Trustee does not produce a contract for sale of the Property to Movant's counsel on or before May 5, 2009 (or in the alternative file a report of abandonment of the Property as per above), then the automatic stay pursuant to 11 U.S.C. § 362 shall be deemed modified without further order or hearing allowing Movant to proceed with its state law remedies as to its collateral, including but not limited to conducting a foreclosure sale with regard to the Property.  files.  After the conduct of said foreclosure sale, Movant shall promptly remit all such proceeds as exceed the lawful debt owed to Movant by Debtors and expenses of sale (as allowed by law and the Note) incurred by Movant to Trustee.

It is so Ordered this  10th   of November, 2008.

_____

Judge John S. Dalis

Signatures continued on following page --

Prepared and Submitted by:

Lisa F. Caplan
Attorney for Movant
Georgia State Bar No. 001304
001304
Adorno & Yoss LLC
3740 Davinci Court
Suite 100
Norcross, GA 30092
(888) 890-5309
lcaplan@adorno.com

Consented to by:

William S. Orange, III, Esq.
Attorney for Debtors
Georgia State Bar No.
1419 Newcastle Street
Brunswick, GA 31520
(912) 267-7598
orangelaw@bellsouth.net

No Opposition to by:

R. Michael Souther
Chapter 7 Trustee
Georgia State Bar No.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
| Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) | MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
| Defendants. | ) | |

2009 APR 15  PM 3:52
U.S. BANKRUPTCY COURT
BRUNSWICK, GA
SAMUEL L. KAY, CLERK

FILED


## MOTION TO VACATE CONSENT ORDER MODIFYING AUTOMATIC STAY


NOW COME Debtors, Marvin B. Smith III and Sharon H. Smith, pursuant to Bankruptcy Rule 9024, Federal Rule of Civil Procedure 60(b), and applicable decisional law, and move for an order vacating this Court's prior Order of November 10, 2008 which modified the Automatic Stay and conditionally granted the motion of Countrywide Home Loans, Inc. as Servicing agent for HSBC Bank USA, National Association as Trustee for the Holders of BCAP LLC Trust 2006-AA2, its successors and assigns (hereafter "Movant") for relief from the automatic stay.

MEMORANDUM OF POINTS AND AUTHORITIES

I. Background Material Facts

On or about September 25, 2008, Movant filed a Motion for Relief from Automatic Stay which was scheduled for hearing on November 6, 2008. The subject property is the Debtors' home at 311 10th Street, Unit# B, Saint Simons Island, GA 31522.(hereafter, ("Smiths' home"). Movant's counsel and the Chapter 7 Trustee, R. Michael Souther,

1

conferred and reached an agreement which allowed Trustee to market the Smith's home for a period of time. This Court's Consent Order Modifying Automatic Stay ("Order") of November 10, 2008 grants Relief of Stay after May 5, 2009 if the Smiths' home has not sold.

Movant's Motion for Relief from Automatic Stay ("Motion") is attached and incorporated herein as Exhibit A. In paragraph 3 of the Motion, Movant misrepresented itself as owner of Debtor's mortgage: "..Movant is a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt. The mortgage is evidenced by a Promissory Note executed by Marvin B. Smith III and Sharon H. Smith ...The Promissory Note is secured by a Deed to Secure Debt...recorded in Deed Book 2026, Page 174, Glynn County." The subject Security Deed , attached to Movant's Motion , identifies the lender as Synovus Mortgage Corp, not Movant. Conspicuously absent from the Motion are Assignment of Security Deed to Movant and Promissory Note. With no Assignment, there is no indication that Movant ever had an interest in Debtor's note. Without the promissory note it is impossible to know who had an interest on September 25,2008, because this security instrument is negotiable. The note could have been sold numerous times. (If the lender were allowed to proceed without that proof, there is a possibility another institution, which may have bought Debtor's note along the way, will also try to collect the same debt again at some future date.)

The Proof of Claim filed by Movant on November 11/18/07 is attached and incorporated herein as Exhibit B. The subject Security Deed referenced above was attached to the Claim with the omission of Page 2, which identifies the lender as Synovus Mortgage Corp.; thereby, concealing from the Trustee, Debtors' Counsel and this Court the fact that Movant is not the secured creditor of record. Again, the Promissory Note was conspicuously missing.

"Movant" had no legal standing to seek any relief incident to the subject Security Deed on September 25, 2008, including the right to seek any relief from the automatic stay. Further, Movant had no legal standing to enter into the agreement with Trustee. As Movant had actual knowledge, at the time that it filed the Motion for Relief from Automatic Stay, Movant has misrepresented material facts to this Court and Trustee and has perpetrated a fraud upon this Court to the detriment of the Debtors.

II. Applicable Law

Federal Circuit Courts have ruled that the only way to prove the perfection of any security [including promissory note] is by actual possession of the security. Current or prior possession must be proved up.

Where the complaining party cannot prove the existence of the note, there is no note. See *Pacific Concrete F.C.U. V. Kauanoe,* 62 Haw. 334, 614 P.2d 936 (1980), *GE Capital Hawaii, Inc. v. Yonenaka* 25 P.3d 807, 96 Hawaii 32, (Hawaii App 2001). Siwooganock Bank in Lancaster NH, in alleged foreclosure suit, failed or refused to

2

produce the actual note which Siwooganock alleges Eva J. Lovejoy owed.

To recover on a promissory note, the plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. See *In Re: SMS Financial LLC. v. Abco Homes, Inc.* No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.)

Since Movant  has not produced the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. See *Matter of Staff Mortg. & Inv. Corp.*, 550 F.2d 1228 (9th Cir 1977). "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. *In Re Investors & Lenders, Ltd.* 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession.

A Federal court has the inherent power to determine whether it may exercise jurisdiction in any particular matter and to determine standing under Federal constitutional principles and under the Bankruptcy Code. In Re *Commercial Financial Services, Inc.*, 238 B.R. 249, 481 (Bankr. N.D. Okl. 1999)(Order striking pleadings for lack of standing, citing *Stoll v. Gottleib*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938)). The question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues, which inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. In Re *Commercial Financial Services, Inc.*, supra, citing *Warth v. Seldin*, 422 U.S. 490, 497, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

A party seeking to foreclose bears the burden of demonstrating standing and must plead its components with specificity, and must demonstrate that it was the holder and owner of the note and mortgage as of the date that foreclosure relief is sought or the court will enter a dismissal of the foreclosure action. *Coyne v. American Tobacco Company*, 183 F.3d 488 (6th Circuit 1999), cited in Opinion and Order of Hon. Christopher A. Boyko in the matter of In Re Foreclosure Cases, United States District Court, Northern District of Ohio (Eastern Division)(copy attached hereto as Exhibit C, dismissing foreclosure actions for failure of foreclosing party to satisfy its burden of demonstrating standing as of the time of seeking foreclosure relief through filing of Complaint).

In re *McGhee*, No. 06–1–4515 TJC (2008) A recent decision by Maryland Bankruptcy Court Judge Thomas J. Catliota was an important ruling regarding the real party in interest requirement of Bankruptcy Rule 7017. Judge Catliota ruled that since the loan was not owned by Americredit, it needed to file the Motion for Relief of Stay in the name of the actual noteholder, and denied the Motion for Relief of Stay. Pursuant to Bankruptcy Rule 7017, incorporating Fed. R. Civ. P. 17(1)(a): An action must be prosecuted in the name of the real party in interest.

Section 1109 of the Bankruptcy Code identifies persons or entities who possess the right to be heard in a bankruptcy case as being a party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee. Although any of these parties may raise and may appear and be heard on any issue in a case, the Bankruptcy Court must determine, on a case-by-case basis and pursuant to 11 U.S.C. sec. 1109(b), whether the prospective party in interest has a sufficient stake in the proceeding to require representation. In Re *Commercial Financial Services, Inc.,* supra, citing *Vermejo Park Corp. v. Kaiser Coal Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir. 1985). If a party seeking relief is not a party in interest, has no personal claim, or does not represent anyone on whose behalf he might be a party in interest, he has no standing to seek relief and any relief sought is without merit and cannot be granted for lack of standing. In Re *Property Management & Investment, Inc.,* 17 B.R. 728, 730 (Bankr. M.D. Fla. 1982).

Bankruptcy Rule 9024 provides for relief from Orders or Judgments, incorporating Federal Rule of Civil Procedure 60(b). Rule 60(b) permits relief from a Judgment or Order for, inter alia,
(1) mistake, inadvertence, surprise, or excusable neglect;
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void; or
(6) any other reason that justifies relief.

Orders of the United States Bankruptcy Court are subject to the provisions of Rule 60(b), especially with regard to orders granting relief from the automatic stay including those which grant relief from the automatic stay in order to permit a putative creditor to seek foreclosure of the debtor's residence. "Such orders can be brutal", and "Where they do not promote their intended purposes, they must be reviewed, and where enforcement produces inequitable results, Rule 60(b)(6) offers an alternative." In *Re Rickey Linda Thomas,* A.P. No. 07-00042 (Memorandum Opinion, Bankr. N.D. Ala. Southern Division, April 20, 2007). Rule 60(b)(6) is a provision designed to cover unforeseen contingencies and is available in exceptional circumstances, and where absent such relief an extreme hardship will result. In Re *Rickey Linda Thomas,* supra at page 7, citing *Lasky v. Continental Products Corp.*, 804 F.2d 250, 255 n.9 (3d Cir. 1986) and *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977).

When a party demonstrates circumstances that justify vacating an earlier court order lifting the stay to pursue a foreclosure, that party may properly file a motion pursuant to Bankruptcy Rule 9024 and Fed.R.Civ.P. 60(b) for relief from the prior order granting relief from the automatic stay, with the granting of the Rule 9024/60(b) motion operating to reimpose the automatic stay to prevent a foreclosure. In Re *Gledhill,* 76 F.3d 1070, 1072 (10th Cir. 1996). Doing so does not constitute a request for an injunction which requires an adversary proceeding under Bankruptcy Rule 7001(7), and thus a party may seek relief from a bankruptcy court order which lifted the automatic stay by motion

4

pursuant to Rules 9024 and 60(b) without filing an adversary proceeding. The plain language of Rules 9024 and 60(b) permit a party to request Rule 60(b) relief by filing the motion as a contested matter. In re *Gledhill*, supra at 1079-1080.

Rule 60(b) "gives the court a 'grand reservoir of equitable power to do justice in a particular case'". In Re *Gledhill*, supra, citing *Pierce v. Cook & Co.,* 518 F.2d 720, 722 (10th Cir. 1075)(en banc), quoting *Radack v. Norwegian America Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963). Rule 60(b) should be liberally construed to achieve substantial justice. *United States v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962), quoting 7 Moore's Federal Practice P. 60.19, at 237-39.

The allowance of a movant to foreclose on a debtor's home results in the debtor suffering irreparable injury, and the threatened injury to the debtor from a foreclosure is greater than any damage which the movant may claim to suffer. In Re *Rickey Linda Thomas*, supra .

III. Application of Law to Facts and Relief Sought

Movant has failed to demonstrate, and cannot demonstrate, that it had legal standing to request relief from the automatic stay to pursue a foreclosure. Movant's Motion was devoid of any proof of assignment to Movant, or that Movant had been provided with any legal authority to pursue relief from the automatic stay. As in the attached decision of Judge Boyko, "…none of the Assignments show the named Plaintiff to be the owner of the rights, title, and interest under the Mortgage at issue as of the date of the Foreclosure Complaint." As in *McGhee*, supra., Movant's Motion for Relief of Stay was not in the actual note holder's name; therefore, the real party in interest requirement of Bankruptcy Rule 7017 was not satisfied.

The material omissions by Movant and the material nondisclosure by Movant in Movant's Motion and Proof of Claim resulted in a ruse to have this Court believe, at the time that Movant's Motion was filed and on November 6, 2008 that Movant had full legal standing to request the drastic form of relief from the automatic stay to pursue a foreclosure on the Debtor's home. As in the Boyko decision and in *McGhee*, supra., Movant has failed to satisfy its threshold obligation of demonstrating legal standing or legal interest to seek relief.

Under these circumstances, the entry of this Court's November 10, 2008 Order granting Movant's Motion for Relief From Automatic Stay was a mistake based on the misrepresentations of Movant ab initio, thus justifying the vacation of the subject Order pursuant to Fed.R.Civ.P. 60(b)(1). The material misrepresentations of Movant constitute fraud, misrepresentation, and misconduct by Movant, thus warranting the vacation of this Court's November 10, 2008 Order pursuant to Fed.R.Civ.P. 60(b)(3).

As this Court's Order of November 10, 2008 was based on a premise which is conclusively false (legal standing or legal interest of Movant), the subject Order granting

relief from the automatic stay for Movant to pursue a foreclosure is void, warranting the vacation of the subject Order pursuant to Fed.R.Civ.P. 60(b)(4). As the injustice resulting from the entry of this Court's November 10, 2008 Order is extraordinary, not anticipated by the Court at the time of entry of the November 10, 2008 Order, and as such harm is substantial and represents irreparable injury to the Debtor which greatly outweighs any alleged "harm" to the Movant (who had no proven interest in the subject Security Deed and Promissory Note), this Court's November 10, 2008 Order should be vacated pursuant to Fed.R.Civ.P. 60(b)(6).

Debtors thus request that this Court's November 10, 2009 Order be vacated.

Respectfully submitted this 15th day of April, 2009.


Marvin B. Smith, III
Debtor


Sharon H. Smith
Debtor
P.O. Box 31306
Sea Island, Georgia 31561
Telephone: 912-638-0528
E-mail: smbsmith@comcast.net

6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
|    Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) |  MATTER |
|    Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
|    Defendants. | ) | |

## CERTIFICATE OF SERVICE

   This is to certify that we have this day served all parties in the foregoing matter with a copy of the **Motion to Vacate Consent Order Modifying Automatic Stay** by addressing a true and correct copy of same to:

R. Michael Souther
P.O. Box 978
Brunswick, GA  31521
*Trustee*

Lisa F. Caplan
Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA  30309
*Attorney for Movant*

William S. Orange, III
1419 Newcastle Street
Brunswick, Ga  31520


and placing the same in the United States Mail with sufficient postage affixed thereon to
assure delivery.

     Respectfully submitted this 15th day of April, 2009.


Marvin B. Smith, III
Defendant/Debtor


Sharon H. Smith
Defendant/Debtor

P.O. Box 31306
Sea Island, GA  31561
Telephone:  912-638-0528

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| IN RE: | : **CASE NO: 07-20244-JSD** |
| | : **CHAPTER: 7** |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
|     Debtors | : |

- - - - - - - - - - - - - - - - - - - - - - - - -   - -- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| **COUNTRYWIDE HOME LOANS, INC. AS** | : |
| **SERVICING AGENT FOR HSBC BANK** | : |
| **USA, NATIONAL ASSOCIATION AS** | : |
| **TRUSTEE FOR THE HOLDERS OF BCAP** | : |
| **LLC TRUST 2006-AA2,** | : |
|     Movant, | : |
| | : **CONTESTED MATTER** |
| vs. | : |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **R. MICHAEL SOUTHER, Trustee** | : |
|     Respondents. | : |

### MOTION FOR RELIEF FROM AUTOMATIC STAY

Comes now COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, a secured creditor of the above-named Debtors, and respectfully shows the Court as follows:

1.

Marvin B. Smith, III and Sharon H. Smith, hereinafter known as Debtors, filed a Petition for Relief under 11 U.S.C. Chapter 11 on April 2, 2007, which was converted to a Chapter 7 on May 8, 2008, and are therefore subject to the jurisdiction of this Court.

2.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §362.

3.



COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, hereinafter known as Movant, is a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt. The mortgage is evidenced by a Promissory Note executed by Marvin S. Smith III and Sharon H. Smith, dated August 7, 2006, in the original principal amount of $1,767,500.00. The mortgage Promissory Note is secured by a Deed to Secure Debt executed by Marvin B Smith, III and Sharon H Smith, dated August 7, 2006, which conveys certain property located in Glynn County, Georgia, now or formerly known as 311 10th Street, Unit# B, Saint Simons Island, GA 31522. Said Deed to Secure Debt is recorded in Deed Book 2026, Page 174, Glynn County, Georgia Records.

4.

Movant affirmatively alleges that Debtors failed to maintain the monthly mortgage payments to Movant. As of the date of the filing of this Motion there is an arrearage deficiency of $193,225.79. This figure is comprised of April, 2007 through September, 2007 Regular Mortgage Payments (6 at $10,678.66) totaling $64,071.96, October, 2007 through June, 2008 Regular Mortgage Payments (9 at $10,678.65) totaling $96,107.85, July, 2008 through September, 2008 Regular Mortgage Payments (3 at $10,678.66) totaling $32,035.98, Property Inspections of $210.00, and Bankruptcy Fees and Costs of $800.00.

5.

Movant shows that the total debt owing on this loan is approximately $1,960,725.79 and that the fair market value of this property is $2,000,000.00 pursuant to Glynn County Tax Assessor. There is a second mortgage held by Countrywide Home Loans in the approximate amount of $309,886.00 for a total of approximately $2,270,611.79 owing against the property. Movant further alleges that there appears to be little or no equity in Movant's secured property. Since the have not made a direct

payment to Movant in approximately eighteen (18) months, Movant's security interest in said property is not adequately protected.

6.

Pursuant to 11 U.S.C. §362, Movant is entitled to a termination of the Automatic Stay with respect to its secured property, for cause, since the lack of adequate protection exists.

WHEREFORE MOVANT PRAYS:

(a)     That the Automatic Stay entered by this Honorable Court pursuant to 11 U.S.C. §362 be modified so as to permit the Movant to exercise its right to foreclose its secured property under the terms of its Note and Deed to Secure Debt;

(b)     That the Movant's secured property be abandoned as property of the estate;

(c)     That the Order lifting the stay waive the ten day stay provision as prescribed by Bankruptcy Rule 4001(a)(3); and

(d)     For such other and further relief as this Court deems just and proper.

(d)     For such other and further relief as this Court deems just and proper.

ADORNO & YOSS LLC
/s/ Lisa F. Caplan
Lisa F. Caplan
Attorney for COUNTRYWIDE
GA. State Bar No. 001304

Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA 30309
(888) 890-5309
lcaplan@adorno.com

BK 2 0 2 6 PG 1 7 4.    *ECIO S/1 Reduce*

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL  35209

Recorded *8/23/06*

*Lola B. Jamsky*

Clerk Superior Court

FILED
GLYNN CO. CLERK'S OFFICE

2006 AUG 22 P 3: 40

*Lola B. Jamsky*

CLERK SUPERIOR COURT

RETURN TO:
WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

Prepared By:

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham, AL 35209

GA. INTANGIBLE TAX PAID
*5,302.50* DATE *8-22-06*
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

———————————[Space Above This Line For Recording Data]———————————

# SECURITY DEED

MIN 100085600024184247

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 7, 2006
together with all Riders to this document.
(B) "Borrower" is MARVIN B SMITH, III & SHARON H SMITH

```
610  130050693  D2  001  001
```

Borrower is the grantor under this Security Instrument

(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the grantee under
this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02418424

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011 1/01

VMP-6A(GA) (0005).03

Page 1 of 14          Initials:

VMP Mortgage Solutions, Inc.

BK 2 0 2 6 PG 1 7 5

(D) "Lender" is Synovus Mortgage Corp.

Lender is a Corporation
organized and existing under the laws of Alabama
Lender's address is 2204 Lakeshore Drive, Suite 325, Birmingham, AL  35209

(E) "Note" means the promissory note signed by Borrower and dated August 7, 2006
The Note states that Borrower owes Lender one million seven hundred sixty-seven
thousand five hundred and 00/100                                                                   Dollars
(U.S. $1,767,500.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2036
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider      [x] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider              [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                   [ ] Biweekly Payment Rider         [x] Other(s) [specify]
                                                                  GA Waiver of Borr's Rights

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

VMP-6A(GA) (0005).03          Page 2 of 14          Initials:          02418424          Form 3011  1/01

BK 2 0 2 6 PG 1 7 6

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the **County**

of                                              **Glynn, GA**                                    :

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

Parcel ID Number:                                        which currently has the address of
**311 10th Street, Unit B**                                                              [Street]
**Saint Simons Island**                        [City] , Georgia **31522**            [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:                                                                      02416424

VMP®-6A(GA) (0005).03                Page 3 of 14                                Form 3011  1/01

81

BK 2 0 2 6 PG 1 8 7

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
MARVIN B SMITH, III              -Borrower        SHARON H SMITH                -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                                 -Borrower                                      -Borrower

STATE OF GEORGIA,                                         County ss:
    Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,
State of Georgia

02418424

82

BK 2 0 2 6 PG 1 8 8

## EXHIBIT "A"

All that tract or parcel of land lying and being in the Land Lot One-hundred Sixty-Three (163) of the 25th GMD District, of Glynn County, Georgia, being Unit B, of Enchantment by the Sea Condominium as shown on plat of survey, which plat is recorded in Condominium Plat Book 1, Page 48-B, Glynn County records and Floor Plans filed in Condominium Cabinet IV, Folder 3A-3H, aforesaid records, together with all right, title and interest contained in the Declaration of Enchantment By the Sea, a condominium, recorded in Deed Book 1380, Page 35, aforesaid records, together with the appurtenant percentages of undivided interests in the common element as described in said Declaration.  This conveyance is made subject to the following matters:

1.   2006 ad valorem taxes and subsequent years which are liens not now due and payable;
2.   Easements, Restrictions and Right of Ways of record;
3.   Condominium Declaration of record and any amendments thereto; and
4.   All matters of survey as shown on recorded plat.

**Parcel ID# 04-12897**

Form B10 (Official Form 10) (Rev. 04/05)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF GEORGIA | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>MARVIN B. SMITH, III and SHARON H. SMITH | Case Number<br>07-20244-JSD |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>COUNTRYWIDE HOME LOANS, INC.<br>Name and address where notices should be sent:<br>COUNTRYWIDE<br>7105 Corporate Drive<br>PTX-B-209<br>Plano, TX 75024 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone number:   805-520-5100 | THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor:<br>130050693 | Check here ☐ replaces<br>if this claim ☐ amends a previously filed claim, dated: |

**1.   Basis for Claim**

- ☐ Goods sold
- ☐ Services performed
- ☒ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill our below)
  Last four digits of SS #:
  Unpaid compensation for services performed
  from ___ to ___
  (date)      (date)

**2.   Date debt was incurred: August 7, 2006**      **3.   If court judgment, date obtained:**

**4.   Total Amount of Claim at Time Case Filed:**$
**1,858,535.38**

| | | | |
|---|---|---|---|
| $ | $1,858,535.38 | $ | $1,858,535.38 |
| (unsecured) | (secured) | (priority) | (Total) |

If all part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5.   Secured Claim.**
☒ Check this box if your claim is secured by collateral (including a right of setoff).
Brief Description of Collateral:
☒ Real Estate      ☐ Motor Vehicle
☐ Other
Value of Collateral: $
Amount of arrearage and other charges at time case filed included in secured claim, if any $0.00

**6.   Unsecured Nonpriority Claim.**      $
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7.   Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim.
Amount entitled to priority $
Specify the priority of the claim:
☐ Domestic Support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000), *earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph - 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**8.   Credits:**   The amount of all payments of this claim has been credited and deducted for the purpose of making this proof of claim

**9.   Supporting Documents:**   *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10.   Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

THIS SPACE IS FOR COURT USE ONLY

| Date<br>11/18/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>/s/Lisa F. Caplan      GA State Bar No. 001304 |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

EXHIBIT
B

84

**In Re: MARVIN B. SMITH, III and
SHARON H. SMITH**                              **Case No. 07-20244-JSD**

Payoff*:
    Principal balance as of 11/16/2007            $ 1,767,500.00
    Accrued Interest                             90,695.38
    Expedited Payoff Fee                      10.00
    Recording Fees                            10.00
    Miscellaneous Fees                       70.00
    Bankruptcy Fees & Costs                250.00
                                         --------------------

**Total Debt:**                                 **$ 1,858,535.38**

*Claimant holds a first priority Security Deed on property located at 311 10th Street, Unit# B,
Saint Simons Island, Georgia 31522. This claim is intended to represent sums due and owing as
of the date of its filing.  Interest, fees, and other costs will continue to accrue pursuant to the
Note and Security Deed. **The current interest rate on the loan is 7.250%.**  Prior to payment of
claim, please obtain an up to date payoff.

**This claim may include certain post-petition, pre-confirmation charges that have been posted
to the account based upon the contract with this creditor and applicable law.

Debtor(s)' ongoing regular monthly payment is $10,678.65.

All payments should reference loan number 130050693 and be sent to COUNTRYWIDE, 7105
Corporate Drive PTX-B-209 , Plano, TX 75024.

BK 2 0 2 6 PG 1 7 4.

*ECIO 5/1 Reduce*
*cw*

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL 35209

Recorded 8/23/06    FILED
*Lola B. Jamsky*    GLYNN CO. CLERK'S OFFICE
Clerk Superior Court    2006 AUG 22 P 3: 40

RETURN TO:
Prepared By: WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

*Lola B. Jamsky*
CLERK SUPERIOR COURT

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham, AL 35209

GA. INTANGIBLE TAX PAID
5,302.50 DATE 8-22-06
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

———————————[Space Above This Line For Recording Data]———————————

## SECURITY DEED

MIN 100085600024184247

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 7, 2006
together with all Riders to this document.
(B) "Borrower" is MARVIN B SMITH, III & SHARON H SMITH

610  130050693  D2  001  001

Borrower is the grantor under this Security Instru
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02418424

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3011  1/01

VMP-6A(GA) (0005).03
Page 1 of 14    Initials:
VMP Mortgage Solutions, Inc.

Original

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| IN RE: | : | **CASE NO. 07-20244-JSD** |
| | : | |
| **MARVIN B. SMITH, III and** | : | |
| **SHARON H. SMITH,** | : | **CHAPTER 11** |
| | : | |
| Debtors. | : | |
| | : | |

## CERTIFICATE OF SERVICE

I, Lisa F. Caplan of Adorno & Yoss, LLC certify that on the 18th day of November, 2007,

I caused a copy of the within Proof of Claim to be served by depositing a copy of the same in the

United States Mail in a properly addressed envelope with adequate postage thereon to the said

parties as follows:

U.S. Trustee, Trustee
Office of the U.S. Trusete
222 West Oglethorpe Ave., Suite 302
Savannah, GA 31401

William S. Orange, III
1419 Newcastle Street
Brunswick, GA 31520


This 18th day of November, 2007


/s/ Lisa F. Caplan
Lisa F. Caplan
GA State Bar No. 001304

Adorno & Yoss, LLC
Attorney for COUNTRYWIDE,
its successors or assigns
Two Midtown Plaza, Suite 1500
1349 W. Peachtree St.
Atlanta, GA 30309
(888) 890-5309
lcaplan@adorno.com

Case 2:12-cv-00973-LGW   Document 7-4   Filed 09/04/12   Page 32 of 198
Case 1:07-cv-02956-CAB   Document 14   Filed 10/31/2007   Page 1 of 6
Case:07-20244-MJK   Doc#:192   Filed:04/15/09   Entered:04/15/09 16:15:39   Page:21 of 26

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **IN RE FORECLOSURE CASES** | ) | **CASE NO. NO.1:07CV2282** |
| | ) | **07CV2532** |
| | ) | **07CV2560** |
| | ) | **07CV2602** |
| | ) | **07CV2631** |
| | ) | **07CV2638** |
| | ) | **07CV2681** |
| | ) | **07CV2695** |
| | ) | **07CV2920** |
| | ) | **07CV2930** |
| | ) | **07CV2949** |
| | ) | **07CV2950** |
| | ) | **07CV3000** |
| | ) | **07CV3029** |
| | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J.**:

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a
number of pending foreclosure cases to file a copy of the executed Assignment demonstrating
Plaintiff was the holder and owner of the Note and Mortgage ***as of the date the Complaint
was filed***, or the Court would enter a dismissal. After considering the submissions, along
with all the documents filed of record, the Court dismisses the captioned cases without
prejudice. The Court has reached today's determination after a thorough review of all the
relevant law and the briefs and arguments recently presented by the parties, including oral

EXHIBIT
C
88

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration.  The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

## LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction.  *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999).  Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are:  proof of injury in fact, causation, and redressability.  *Valley Forge*, 454 U.S. at 472.  In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)).  To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has ***personally suffered some actual injury*** as a result of the illegal conduct of the defendant. (Emphasis added).  *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage.  However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff.  Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

-3-

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..."  Plaintiff-Lenders do not allege mistake or that a party cannot be identified.  Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing.  R.C. § 1335.04.  Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25.  *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543).  "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Pinney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments.  And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes.  Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction.  Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

Case 2:12-cv-00973-LGW Document 74 Filed 08/01/12 Page 36 of 38 6
Case 1:07-cv-02950-CAB Document 74 Filed 10/31/2007 Page 5 of 6
Case:07-20244-MJK Doc#:192 Filed:04/15/09 Entered:04/15/09 16:15:39 Page:25 of 26

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2] Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938); *Legg v. Chopra*, 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3] Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in testing state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary , they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

-5-

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are

dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

         **S/Christopher A. Boyko**
         **CHRISTOPHER A. BOYKO**
         **United States District Judge**

---

and jurisdictional burdens. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."

-6-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
| Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) | MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
| Defendants. | ) | |

## ORDER ON MOTION TO VACATE CONSENT ORDER MODIFYING AUTOMATIC STAY

After consideration of the Motion of Debtors, Marvin B. Smith and Sharon H. Smith, to vacate this Court's Consent Order Modifying Automatic Stay,

IT IS ORDERED, that the Consent Order dated November 10, 2009 is vacated.

This _____day of _____, 2009.


_____
John S. Dalis
U.S. Bankruptcy Judge

94

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
| Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) | MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
| Defendants. | ) | |

2009 APR 17  PM 12: 37
U.S. BANKRUPTCY COURT
BRUNSWICK, GA
SAMUEL L. KAY, CLERK
FILED

## AMENDMENT TO MOTION TO VACATE CONSENT ORDER MODIFYING AUTOMATIC STAY

NOW COME, Marvin B. Smith, III and Sharon H. Smith, Debtors, and amend the Motion to Vacate Consent Order Modifying Automatic Stay to include the following current and relevant decisional law.

As federal Judge Rose wrote in dismissing CitiBank, IndyBank and WellsFargo, "Subject matter jurisdiction may not have existed at the time certain of the foreclosure complaints were filed [ * * * ] To show standing, then, in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed. *In re Foreclosure Cases, 521 F.Supp.2d 650 (S.D.Ohio 2007).*

In re: *Kang Jin Hwang*, LA08-15337SB (2008), a Central District of California Bankruptcy Court Case, IndyMac was the only entity with the actual legal ability to proceed with foreclosure, yet it admitted it was not the actual owner of the note. In *Hwang*, even though IndyMac had the rights to foreclose on the note (it had possession and a valid endorsement), the Court stated nobody knew who the owner of the note was, *"Indeed, it is doubtful that IndyMac could make such a claim, because IndyMac does not know who owns the note."* In that case, the Judge denied IndyMac the ability to obtain

1

relief of the automatic stay to pursue the foreclosure solely because no one seemed to know who was the actual owner of the note.

 In re: *Peter A. Jacobson and Maria E. Jacobson*, Debtors, UBSC WDWA, Bankruptcy Case No. 08-45120 (Entered on Docket Mar. 06, 2009) The Court denied UBS, AG's Motion to Lift the Stay on the basis of Lack of Standing and lack of a Real Party in Interest. The Court wrote:

*UBS AG's records [show it to be] "servicing agent for ACT Properties"*

*But even if all of the deficiencies were overlooked or resolved in UBS AG's favor, one emerges from the syntactical fog into an impassable swamp.*

*The declaration of someone in California, apparently based on business records, and perhaps predating his employer becoming servicing agent, is that Jacobson's note secured by the deed of trust is in "the possession" of a separate entity in Minnesota.*

*Assuming the exhibits to the motion are authentic and are the same as those intended to have been attached to the declaration, the note is indorsed in blank. Without more, that and possession (rather than mere custody) suggests that Wells Fargo is the holder of the note.*

*[Nothing in the]*

*record establish UBS AG's authority to enforce the Debtors' note, for whomever holds it; and thus to foreclose the deed of trust. The declaration states that UBS AG is "servicing agent," a term with no uniform meaning, and no definition cited.*

*At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority.*

*UBS AG has not shown that it has standing to bring the motion for relief from stay or authority to act for whomever does.*

*V. CONCLUSION*

*As the motion was not brought In the name of the real party in interest, nor has standing to bring it been established, it will be*

*DENIED.*

*Philip H Brandt*
*United States Bankruptcy Judge*

2

Additionally, Motion to Vacate Consent Order Modifying Automatic Stay is incorporated herein as if fully set forth.

In the present case, Movant presented no note and no assignment. Movant is not even the named lender on the Security Deed, a fact which Movant concealed in its Proof of Claim as shown above.

Due to lack of standing and a lack of real party in interest, Movant was not authorized to request relief of stay as shown above.

In Georgia the foreclosure proceeds quickly. Although Debtors would have recourse against a wrongful foreclosure if the stay were lifted, it would likely be after the fact and after the Smiths were forced onto the street.

Debtors ask this Court to take into consideration the irreparable injury the Smiths would suffer if the unauthorized Movant were allowed to proceed to foreclosure of Debtors' home.

WHEREFORE, Debtors pray unto this Court to vacate the November 10, 2009 Order and deny the relief of stay requested by the unauthorized Movant.

Respectfully submitted this 17th day of April, 2009.


Marvin B. Smith, III
Debtor


Sharon H. Smith
Debtor

P.O. Box 31306
Sea Island, Georgia  31561
Telephone:  912-638-0528
E-mail:  smbsmith@comcast.net

3

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
|       Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) |    MATTER |
|       Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
|       Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that we have this day served all parties in the foregoing matter with a copy of the **Amendment to Motion to Vacate Consent Order Modifying Automatic Stay** by addressing a true and correct copy of same to:

R. Michael Souther
P.O. Box 978
Brunswick, GA  31521
*Trustee*

Lisa F. Caplan
Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA  30309
*Attorney for Movant*

William S. Orange, III
1419 Newcastle Street
Brunswick, Ga  31520


and placing the same in the United States Mail with sufficient postage affixed thereon to
assure delivery.

     Respectfully submitted this 17th day of April, 2009.


Marvin B. Smith, III
Defendant/Debtor


Sharon H. Smith
Defendant/Debtor

P.O. Box 31306
Sea Island, GA  31561
Telephone:  912-638-0528

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA

**FILED**

MAY 2 8 2009

IN COURT

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
| Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) | MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
| Defendants. | ) | |

## SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO VACATE CONSENT ORDER MODIFYING AUTOMATIC STAY

NOW COME Marvin B. Smith, III and Sharon H. Smith, Debtors, and submit the following in support of Motion to Vacate Consent Order Modifying Automatic Stay.

### I. COUNTRYWIDE MISREPRESENTED ITS IDENTITY *AB INITIO.*

A. On November 18, 2007, Countrywide Home Loans, Inc. filed Proof of Claim, which is incorporated herein and attached as Exhibit B.

    1. Page 2: "Claimant holds a first priority Security Deed on property located at 311 10th Street, Unit#B, Saint Simons Island, Georgia 31522."

    2. Security Deed attached names MERS as grantee and the second page was omitted; thereby, concealing from the Trustee, Debtors' Counsel and this Court the fact that Movant is not the secured creditor of record.

1

     3. The Note was conspicuously missing.

     4. No documentation whatsoever was presented to indicate that Debtors' Note or Deed had been transferred to Countrywide.

     B. On September 25, 2008, Countrywide Home Loans, Inc. became Countrywide Home Loans, Inc. as servicing agent for HSBC Bank USA, National Association as Trustee for The Holders of BCAP LLC Trust 2006-AA2 and filed Motion for Relief from Automatic Stay, which is incorporated herein and attached as Exhibit A.

     1. Paragraph 3 of the Motion for Relief from Automatic Stay:
"COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, hereinafter known as Movant, is a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt. The mortgage is evidenced by a Promissory Note executed by Marvin S. Smith III and Sharon H. Smith, dated August 7, 2006, in the original principal amount of $1,767,500.00. The mortgage Promissory Note is secured by a Deed to Secure Debt executed by Marvin B Smith, III and Sharon H Smith, dated August 7, 2006, which conveys certain property located in Glynn County, Georgia, now or formerly known as 311 10th Street, Unit# B, Saint Simons Island, GA 31522. Said Deed to Secure Debt is recorded in Deed Book 2026, Page 174, Glynn County, Georgia Records."

     a. Although Movant claims to be a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt, no Note was attached.

     b. Security Deed attached names MERS as grantee and Synovus as lender.

     c. No documentation was presented to indicate that Debtors' Note or Deed had been transferred.

     d. No documentation was presented to indicate a servicing agreement with any principle.

     C. Movant states that Debtors' brief is "illogical and unintelligent" in that Countrywide is a servicing agent and not required to prove up the original note.

     1. Countrywide is the one who claimed *ab initio* that it "holds a first priority security deed" in Proof of Claim; thereby, requiring proof of such claim.

     2. If Countrywide was a servicing agent it must have proved agency status and that the principle was the holder of Debtors' Note.

     3. Even though it seems "illogical and unintelligent" to Movant,  it is the law.

<div align="center">2</div>

## II. BANKRUPTCY COURTS HAVE FOLLOWED THE UNIFORM COMMERCIAL CODE.

A.  *In Re Investors & Lenders, Ltd.* 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession.

B.  Quoting  United States Bankrupcy Judge, Samuel L. Bufford:
Article 3 governs negotiable instruments – it defines what a negotiable instrument is and defines how ownership of those pieces of paper is transferred. For the precise definition, see § 3-104(a) ("an unconditional promise or order to pay a fixed amount of money, with or without interest . . . .") The instrument may be either payable to order or bearer and payable on demand or at a definite time, with or without interest.
**Ordinary negotiable instruments include notes and drafts (a check is a draft drawn on a bank). See § 3-104(e).**
Negotiable paper is transferred from the original payor by negotiation. §3-301. "Order paper" must be endorsed; bearer paper need only be delivered. §3-305. However, in either case, for the note to be enforced, the person who asserts the status of the holder must be in possession of the instrument. See UCC § 1-201 (20) and comments.
The original and subsequent transferees are referred to as holders. Holders who take with no notice of defect or default are called "holders in due course," and take free of many defenses. See §§ 3-305(b).
The UCC says that a payment to a party "entitled to enforce the instrument" is sufficient to extinguish the obligation of the person obligated on the instrument. Clearly, then, only a holder – a person in possession of a note endorsed to it or a holder of bearer paper – may seek satisfaction or enforce rights in collateral such as real estate.

## III. COUNTRYWIDE HAS FAILED TO SHOW A REAL PARTY IN INTEREST AND  STANDING.

A.  F.R.Civ. Pro. 17, "[a]n action must be prosecuted in the name of the real party in interest." This rule is incorporated into the rules governing bankruptcy procedure in several ways. **In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008)**
As Judge Bufford has pointed out, for example, in a motion for relief from stay, filed under F.R.Bankr.Pro. 4001 is a contested matter, governed by F. R. Bankr. P. 9014, which makes F.R. Bankr. Pro. 7017 applicable to such motions. F.R. Bankr. P. 7017 is, of course, a restatement of F. R. Civ. P. 17. In re Hwang, 396 B.R. at 766. The real party in interest in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the owner of a note. When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note). Unless the name of the actual note holder can be stated, the very pleadings are defective.

B.  No legal documentation presented at the time the Proof of Claim was filed, November 18, 2007 showed HSBC Bank USA or Countrywide as lender, grantee, or

3

servicing agent.

      1. There was no Note presented on November 18, 2007.

      2. The Security Deed presented on November 18, 2007 showed MERS as grantee. The second page was missing (and would have shown Synovus as lender).

      3. There was no assignment presented on November 18, 2007.

    C. Although it is irrelevant in light of the fact that Movant represented itself as holder *ab initio,* there was no servicing agreement presented on September 25, 2008.

      1. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder of Debtor's Note. In re *Vargas,* 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

This simply is not true in the present case.

      a. Movant showed no documentation proving agency status on September 25, 2008.

      b. Movant presented no note to prove that the principle was the holder of Debtor's Note on September 25, 2008.

      c. There was no assignment presented on September 25, 2008 that might have shown even a possibility that HSBC Bank USA or Countrywide had standing to request relief of stay or enter into the consent order.

      d. *James H. Greer, et al. v. O'Dell*, 305 F.3d 1297 does not help Movant. In *Greer*, the loan servicer **did** show agency status and the principle was the proven holder of the debt. Such is not true in the present case, as shown above.

## IV.  CONTRARY TO MOVANT'S CLAIM, DEBTORS CITED NUMEROUS BANKRUPTCY CASES REQUIRING PROOF OF STANDING BY PRESENTING THE ORIGINAL NOTE.

    A. Cited in Motion to Vacate Consent Order Modifying Automatic Stay:

In re *McGhee*, No. 06–1–4515 TJC (2008) Maryland Bankruptcy Court Judge Catliota ruled that since the loan was not owned by Americredit, it needed to file the Motion for Relief of Stay in the name of the actual noteholder, and denied the Motion for Relief of Stay. Pursuant to Bankruptcy Rule 7017, incorporating Fed. R. Civ. P. 17(1)(a): An action must be prosecuted in the name of the real party in interest.

*In Re Investors & Lenders, Ltd.* 165 B.R. 389 (Bankruptcy.D.N.J.1994), "Under the New

4

Jersey Uniform Commercial Code (NJUCC), promissory note is "instrument," security interest in which must be perfected by possession.

B. Cited in Amendment to Motion to Vacate Consent Order Modifying Automatic Stay:

In re: *Kang Jin Hwang*, LA08-15337SB (2008), a Central District of California Bankruptcy Court Case, IndyMac was the only entity with the actual legal ability to proceed with foreclosure, yet it admitted it was not the actual owner of the note. In *Hwang*, even though IndyMac had the rights to foreclose on the note (it had possession and a valid endorsement), the Court stated nobody knew who the owner of the note was, *"Indeed, it is doubtful that IndyMac could make such a claim, because IndyMac does not know who owns the note."* In that case, the Judge denied IndyMac the ability to obtain relief of the automatic stay to pursue the foreclosure solely because no one seemed to know who was the actual owner of the note.

In re: *Peter A. Jacobson and Maria E. Jacobson*, Debtors, UBSC WDWA, Bankruptcy Case No. 08-45120 (Entered on Docket Mar. 06, 2009) The Court denied UBS, AG's Motion to Lift the Stay on the basis of Lack of Standing and lack of a Real Party in Interest. The Court wrote:
*[Nothing in the]*

*record establish UBS AG's authority to enforce the Debtors' note, for whomever holds it; and thus to foreclose the deed of trust. The declaration states that UBS AG is "servicing agent," a term with no uniform meaning, and no definition cited.*

*At a minimum, there must be an unambiguous representation or declaration setting forth the servicer's authority from the present holder of the note to collect on the note and enforce the deed of trust. If questioned, the servicer must be able to produce and authenticate that authority.*

*UBS AG has not shown that it has standing to bring the motion for relief from stay or authority to act for whomever does.*

*V. CONCLUSION*

*As the motion was not brought In the name of the real party in interest, nor has standing to bring it been established, it will be*

*DENIED.*

*Philip H Brandt*
*United States Bankruptcy Judge*

C. Cited in Brief in Support of Motion to Vacate Consent Order Modifying Automatic

Stay:

**Massachusetts**
**In re Schwartz, 366 B.R.265 (Bankr. D. Mass. 2007)**
Schwartz concerns a Motion for Relief to pursue an eviction. Movant asserted that the property had been foreclosed upon prior to the date of the bankruptcy petition. The pro se debtor asserted that the Movant was required to show that it had authority to conduct the sale. Movant, and "the party which appears to be the current mortgagee…" provided documents for the court to review, but did not ask for an evidentiary hearing. Judge Rosenthal sifted through the documents and found that the Movant and the current mortgagee had failed to prove that the foreclosure was properly conducted. Specifically, Judge Rosenthal found that there was no evidence of a proper assignment of the mortgage prior to foreclosure. However, at footnote 5, Id. at 268, the Court also finds that there is no evidence that the note itself was assigned and no evidence as to who the current holder might be.

**Nosek v. Ameriquest Mortgage Company (In re Nosek), 286 Br. 374 (Bankr D Mass. 2008).**
Almost a year to the day after Schwartz was signed, Judge Rosenthal issued a second opinion. This is an opinion on an order to show cause. Judge Rosenthal specifically found that, although the note and mortgage involved in the case had been transferred from the originator to another party within five days of closing, during the five years in which the chapter 13 proceeding was pending, the note and mortgage and associated claims had been prosecuted by Ameriquest which has represented itself to be the holder of the note and the mortgage. Not until September of 2007 did Ameriquest notify the Court that it was merely the servicer. In fact, only after the chapter 13 bankruptcy had been pending for about three years was there even an assignment of the servicing rights. Id. at 378. Because these misrepresentations were not simple mistakes: as the Court has noted on more than one occasion, those parties who do not hold the note of mortgage do not service the mortgage do not have standing to pursue motions for leave or other actions arising form the mortgage obligation. Id at 380.
As a result, the Court sanctioned the local law firm that had been prosecuting the claim $25,000. It sanctioned a partner at that firm an additional $25,000. Then the Court sanctioned the national law firm involved $100,000 and ultimately sanctioned Wells Fargo $250,000. Id. at 382-386.

**In re Hayes, 393 B.R. 259 (Bankr. D. Mass. 2008).**
Like Judge Rosenthal, Judge Feeney has attacked the problem of standing and authority head on. She has also held that standing must be established before either a claim can be allowed or a motion for relief be granted.

**California**
**In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008)**
The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder.

6

## V. THIS COURT SHOULD VACATE THE CONSENT ORDER MODIFYING AUTOMATIC STAY PURSUANT TO BANKRUPTCY RULE 9024.

A. As shown above, Movant misrepresented its identity *ab initio*.

    1. On November 18, 2007 Countrywide represented itself as holder.

    2. On September 25, 2008 Movant represented itself as servicer.

    3. Obviously, one of the two representations is false. In fact, both are probably false by virtue of the fact that no evidence was presented to support either representation.

B. As Movant had knowledge of the material misrepresentation which it presented to this Court, Movant has perpetrated a fraud against this Court to the detriment of the Debtors.

C. As Movant had knowledge of the material misrepresentation which it presented to the Trustee and Debtors' attorney, Movant has perpetrated additional fraud in obtaining the Consent Order.

D. "Any false representation of material facts made with knowledge of falsity and with intent that it shall be acted on by another in entering into contract, and which is so acted upon, constitutes 'fraud,' and entitles party deceived to avoid contract or recover damages." Barnsdall Refining Corn. v. Birnam wood Oil Co., 92 F 2d 817.

E. Bankruptcy Rule 9024, incorporating FRCP 60(b):

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.**
On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

F. Although Movant perpetrated a fraud as shown above, it is not necessary to prove said fraud. Rule 9024 permits vacation of the Consent Order for the reasons cited

above.  At the very least, a mistake was made to allow the unauthorized Movant to request relief of stay *ab initio*.

      1.  Debtors had no knowledge, until after the fact, that  Relief of Stay would be a part of any agreement to sell Debtors' property.

      2.  No documentation whatsoever was presented to prove that Movant was the real party in interest to have requested relief of stay or to have entered into the Consent Order.

      3.  In re *Hwang*, 396 B.R. at 766. The real party in interest in a federal action to enforce a note, whether in bankruptcy court or federal district court, is the owner of a note. When the actual holder of the note is unknown, it is impossible – not difficult but impossible – to plead a cause of action in a federal court (unless the movant simply lies about the ownership of the note). Unless the name of the actual note holder can be stated, the very pleadings are defective.

      G.  The allowance of a Movant to foreclose on a debtor's home results in the debtor suffering irreparable injury, and the threatened injury to the debtor from a foreclosure is greater than any damage which the movant may claim to suffer.  In *Re Rickey Linda Thomas*, A.P. No. 07-00042 (Memorandum Opinion, Bankr. N.D. Ala. Southern Division, April 20, 2007).

      H.  Under these circumstances, the entry of this Court's November 10, 2008 Order granting Movant's Motion for Relief From Automatic Stay was a mistake based on the misrepresentations of Movant ab initio, thus justifying the vacation of the subject Order pursuant to Fed.R.Civ.P. 60(b)(1). The material misrepresentations of Movant constitute fraud, misrepresentation, and misconduct by Movant, thus warranting the vacation of this Court's November 10, 2008 Order pursuant to Fed.R.Civ.P. 60(b)(3).

      As this Court's Order of November 10, 2008 was based on a premise which is conclusively false (legal standing and a real party in interest of Movant), the subject Order granting relief from the automatic stay for Movant to pursue a foreclosure is void, warranting the vacation of the subject Order pursuant to Fed.R.Civ.P. 60(b)(4).  As the injustice resulting from the entry of this Court's November 10, 2008 Order is extraordinary and as such harm is substantial and represents irreparable injury to the Debtor which greatly outweighs any alleged "harm" to the Movant (who had no proven interest in the subject Security Deed and Promissory Note), this Court's November 10, 2008 Order should be vacated pursuant to Fed.R.Civ.P. 60(b)(6).

      WHEREFORE, pursuant to Bankruptcy Rule 9024, incorporating  FRCP 60 (b), Debtors pray unto this Court

1.  To vacate the Consent Order Modifying Automatic Stay;

2.  To deny the Relief of Automatic Stay requested by the unauthorized Movant; and

3. For any other relief this Court deems just and proper.

    Respectfully submitted this 28th day of May, 2009.


                                        Marvin B. Smith III
                                        Marvin B. Smith, III
                                        Defendant/Debtor


                                        Sharon H. Smith
                                        Sharon H. Smith
                                        Defendant/Debtor

                                        P.O. Box 31306
                                        Sea Island, GA  31561
                                        Telephone:  912-638-0528

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| IN RE: | : **CASE NO: 07-20244-JSD** |
| | : **CHAPTER: 7** |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **Debtors** | : |
| - - - - - - - - - - - - - - - - - - - - - - - - - | - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - |
| **COUNTRYWIDE HOME LOANS, INC. AS** | : |
| **SERVICING AGENT FOR HSBC BANK** | : |
| **USA, NATIONAL ASSOCIATION AS** | : |
| **TRUSTEE FOR THE HOLDERS OF BCAP** | : |
| **LLC TRUST 2006-AA2,** | : |
| **Movant,** | : |
| | : **CONTESTED MATTER** |
| **vs.** | : |
| | : |
| **MARVIN B. SMITH, III** | : |
| **SHARON H. SMITH** | : |
| **R. MICHAEL SOUTHER, Trustee** | : |
| **Respondents.** | : |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

Comes now COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, a secured creditor of the above-named Debtors, and respectfully shows the Court as follows:

1.

Marvin B. Smith, III and Sharon H. Smith, hereinafter known as Debtors, filed a Petition for Relief under 11 U.S.C. Chapter 11 on April 2, 2007, which was converted to a Chapter 7 on May 8, 2008, and are therefore subject to the jurisdiction of this Court.

2.

This Court has jurisdiction over this Motion pursuant to 11 U.S.C. §362.

3.

*A*

COUNTRYWIDE HOME LOANS, INC. as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns, hereinafter known as Movant, is a secured creditor of Debtors pursuant to a Note and Deed to Secure Debt. The mortgage is evidenced by a Promissory Note executed by Marvin S. Smith III and Sharon H. Smith, dated August 7, 2006, in the original principal amount of $1,767,500.00. The mortgage Promissory Note is secured by a Deed to Secure Debt executed by Marvin B Smith, III and Sharon H Smith, dated August 7, 2006, which conveys certain property located in Glynn County, Georgia, now or formerly known as 311 10th Street, Unit# B, Saint Simons Island, GA 31522. Said Deed to Secure Debt is recorded in Deed Book 2026, Page 174, Glynn County, Georgia Records.

4.

Movant affirmatively alleges that Debtors failed to maintain the monthly mortgage payments to Movant. As of the date of the filing of this Motion there is an arrearage deficiency of $193,225.79. This figure is comprised of April, 2007 through September, 2007 Regular Mortgage Payments (6 at $10,678.66) totaling $64,071.96, October, 2007 through June, 2008 Regular Mortgage Payments (9 at $10,678.65) totaling $96,107.85, July, 2008 through September, 2008 Regular Mortgage Payments (3 at $10,678.66) totaling $32,035.98, Property Inspections of $210.00, and Bankruptcy Fees and Costs of $800.00.

5.

Movant shows that the total debt owing on this loan is approximately $1,960,725.79 and that the fair market value of this property is $2,000,000.00 pursuant to Glynn County Tax Assessor. There is a second mortgage held by Countrywide Home Loans in the approximate amount of $309,886.00 for a total of approximately $2,270,611.79 owing against the property. Movant further alleges that there appears to be little or no equity in Movant's secured property. Since the have not made a direct

payment to Movant in approximately eighteen (18) months, Movant's security interest in said property is not adequately protected.

6.

Pursuant to 11 U.S.C. §362, Movant is entitled to a termination of the Automatic Stay with respect to its secured property, for cause, since the lack of adequate protection exists.

WHEREFORE MOVANT PRAYS:

(a)     That the Automatic Stay entered by this Honorable Court pursuant to 11 U.S.C. §362 be modified so as to permit the Movant to exercise its right to foreclose its secured property under the terms of its Note and Deed to Secure Debt;

(b)     That the Movant's secured property be abandoned as property of the estate;

(c)     That the Order lifting the stay waive the ten day stay provision as prescribed by Bankruptcy Rule 4001(a)(3); and

(d)     For such other and further relief as this Court deems just and proper.

(d)     For such other and further relief as this Court deems just and proper.

ADORNO & YOSS LLC
/s/ Lisa F. Caplan
Lisa F. Caplan
Attorney for COUNTRYWIDE
GA. State Bar No. 001304

Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA 30309
(888) 890-5309
lcaplan@adorno.com

BK 2 0 2 6 PG 1 7 4

ECIO 5/1 Reduce

cN

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL 35209

Recorded _8/23/06_
*Lola B. Jamsky*
**Clerk Superior Court**

FILED
GLYNN CO. CLERK'S OFFICE

2006 AUG 22 ₽ 3: 40

RETURN TO:
WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

Prepared By:

*Lola B. Jamsky*

**CLERK SUPERIOR COURT**

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham,AL 35209

GA. INTANGIBLE TAX PAID
_5,302.50_ DATE _8-22-06_
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

————————[Space Above This Line For Recording Data]————————

## SECURITY DEED

MIN 100085600024184247

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 7, 2006
together with all Riders to this document.
(B) "Borrower" is MARVIN B SMITH, III & SHARON H SMITH

610 130050693 D2 001 001

Borrower is the grantor under this Security Instru
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the grantee under
this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02418424

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3011 1/01

VMP-6A(GA) (0005).03
Page 1 of 14
VMP Mortgage Solutions, Inc.

Initials: hBS

BK 2 0 2 6 PG 1 7 5

(D) "Lender" is Synovus Mortgage Corp.

Lender is a Corporation
organized and existing under the laws of Alabama
Lender's address is 2204 Lakeshore Drive, Suite 325, Birmingham, AL 35209

(E) "Note" means the promissory note signed by Borrower and dated August 7, 2006
The Note states that Borrower owes Lender one million seven hundred sixty-seven
thousand five hundred and 00/100                                                    Dollars
(U.S. $1,767,500.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2036    .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider   [x] Condominium Rider          [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider     [x] Other(s) [specify]
                                                           GA Waiver of Borr's Rights

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials: _____                                          02418424

(vmp)-BA(GA) (0005).03                Page 2 of 14            Form 3011 1/01

BK 2 0 2 6 PG 1 7 6

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County

|  | of | Glynn, GA | : |
| --- | --- | --- | --- |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

Parcel ID Number:                                        which currently has the address of
311 10th Street, Unit B                                              [Street]
Saint Simons Island                          [City] , Georgia  31522        [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: _____                                                    02418424

-6A(GA) (0005).03                          Page 3 of 14                          Form 3011  1/01

## BK 2 0 2 6 PG 1 8 7

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_Marvin B. Smith_____(Seal)           _Sharon H. Smith_____(Seal)
MARVIN B SMITH, III          -Borrower      SHARON H SMITH           -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                -Borrower

_____(Seal)           _____(Seal)
                        -Borrower                                -Borrower

STATE OF GEORGIA,                               County ss:
    Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,
State of Georgia

02418424

BK 2 0 2 6 PG 1 8 8

## EXHIBIT "A"

All that tract or parcel of land lying and being in the Land Lot One-hundred Sixty-Three (163) of the 25th GMD District, of Glynn County, Georgia, being Unit B, of Enchantment by the Sea Condominium as shown on plat of survey, which plat is recorded in Condominium Plat Book 1, Page 48-B, Glynn County records and Floor Plans filed in Condominium Cabinet IV, Folder 3A-3H, aforesaid records, together with all right, title and interest contained in the Declaration of Enchantment By the Sea, a condominium, recorded in Deed Book 1380, Page 35, aforesaid records, together with the appurtenant percentages of undivided interests in the common element as described in said Declaration. This conveyance is made subject to the following matters:

1. 2006 ad valorem taxes and subsequent years which are liens not now due and payable;
2. Easements, Restrictions and Right of Ways of record;
3. Condominium Declaration of record and any amendments thereto; and
4. All matters of survey as shown on recorded plat.

**Parcel ID# 04-12897**

Form B10 (Official Form 10) (Rev. 04/05)

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF GEORGIA | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>MARVIN B. SMITH, III and SHARON H. SMITH | Case Number<br>07-20244-JSD | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>COUNTRYWIDE HOME LOANS, INC.<br>Name and address where notices should be sent:<br>COUNTRYWIDE<br>7105 Corporate Drive<br>PTX-B-209<br>Plano, TX 75024 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | |
|---|---|---|
| Telephone number:     805-520-5100 | | THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor:<br>130050693 | Check here ☐ replaces<br>if this claim ☐ amends | a previously filed claim, dated: |

| 1.  **Basis for Claim**<br>  ☐ Goods sold<br>  ☐ Services performed<br>  ☒ Money loaned<br>  ☐ Personal injury/wrongful death<br>  ☐ Taxes<br>  ☐ Other | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (fill our below)<br>Last four digits of SS #:<br>Unpaid compensation for services performed<br>from ___ to<br>       (date)         (date) |
|---|---|

| 2.  **Date debt was incurred: August 7, 2006** | 3.   If court judgment, date obtained: |
|---|---|

| 4.   **Total Amount of Claim at Time Case Filed:$**<br>**1,858,535.38** | $ | $1,858,535.38<br>(unsecured)     (secured) | $ | $1,858,535.38<br>(priority)     (Total) |
|---|---|---|---|---|

If all part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5.   **Secured Claim.**<br>  ☒ Check this box if your claim is secured by collateral (including a right of setoff).<br>  **Brief Description of Collateral:**<br>  ☒ Real Estate     ☐ Motor Vehicle<br>      ☐ Other<br>  Value of Collateral: $<br>  Amount of arrearage and other charges <u>at time case filed</u> included in secured claim, if any **$0.00**<br><br>6.  **Unsecured Nonpriority Claim.**     $<br>  ☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority. | 7.   **Unsecured Priority Claim.**<br>  ☐ Check this box if you have an unsecured priority claim.<br>  Amount entitled to priority $<br>  Specify the priority of the claim:<br>  ☐ Domestic Support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>  ☐ Wages, salaries, or commissions (up to $10,000), *earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).<br>  ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>  ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>  ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8)<br>  ☐ Other – Specify applicable paragraph - 11 U.S.C. § 507(a)(__).<br>  *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

| 8.   **Credits:**     The amount of all payments of this claim has been credited and deducted for the purpose of making this proof of claim | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| 9.   **Supporting Documents:**     *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | |

| Date<br>11/18/07 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br>          /s/Lisa F. Caplan          GA State Bar No. 001304 |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

*B* 117

**In Re: MARVIN B. SMITH, III and**
**SHARON H. SMITH**                          **Case No. 07-20244-JSD**

Payoff*:

| | |
|---|---:|
| Principal balance as of 11/16/2007 | $ 1,767,500.00 |
| Accrued Interest | 90,695.38 |
| Expedited Payoff Fee | 10.00 |
| Recording Fees | 10.00 |
| Miscellaneous Fees | 70.00 |
| Bankruptcy Fees & Costs | 250.00 |
| | ------------------- |
| **Total Debt:** | **$ 1,858,535.38** |

*Claimant holds a first priority Security Deed on property located at 311 10th Street, Unit# B, Saint Simons Island, Georgia 31522. This claim is intended to represent sums due and owing as of the date of its filing. Interest, fees, and other costs will continue to accrue pursuant to the Note and Security Deed. **The current interest rate on the loan is 7.250%.** Prior to payment of claim, please obtain an up to date payoff.

**This claim may include certain post-petition, pre-confirmation charges that have been posted to the account based upon the contract with this creditor and applicable law.

Debtor(s)' ongoing regular monthly payment is $10,678.65.

All payments should reference loan number 130050693 and be sent to COUNTRYWIDE, 7105 Corporate Drive PTX-B-209 , Plano, TX 75024.

BK 2 0 2 6 PG 1 7 4.    *ECIO 5/1 Reduce*
*cw*

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL  35209

Recorded  *8/23/06*
*Lola B. Jamsky*
Clerk Superior Court

FILED
GLYNN CO. CLERK'S OFFICE

2006 AUG 22  P 3: 40

*Lola B. Jamsky*
CLERK SUPERIOR COURT

Prepared By:

RETURN TO:
WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham, AL  35209

GA. INTANGIBLE TAX PAID
*5302.50* DATE *8-22-06*
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

───────────────────[Space Above This Line For Recording Data]───────────────────

# SECURITY DEED

MIN 100085600024184247

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated August 7, 2006
together with all Riders to this document.
(B) "Borrower" is MARVIN B SMITH, III & SHARON H SMITH



610  130050693  D2  001  001

Borrower is the grantor under this Security Instru
(C) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the grantee under
this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

02418424

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Form 3011  1/01

-6A(GA) (0005).03
Page 1 of 14

Initials:

VMP Mortgage Solutions, Inc.

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

IN RE:                                          :        **CASE NO. 07-20244-JSD**
                                                :
**MARVIN B. SMITH, III and**                    :
**SHARON H. SMITH,**                            :        **CHAPTER 11**
                                                :
     **Debtors.**       :
                                                :

## CERTIFICATE OF SERVICE

    I, Lisa F. Caplan of Adorno & Yoss, LLC certify that on the <u>18th</u> day of November, 2007,

I caused a copy of the within Proof of Claim to be served by depositing a copy of the same in the

United States Mail in a properly addressed envelope with adequate postage thereon to the said

parties as follows:

U.S. Trustee, Trustee
Office of the U.S. Trusete
222 West Oglethorpe Ave., Suite 302
Savannah, GA 31401

William S. Orange, III
1419 Newcastle Street
Brunswick, GA 31520


      This <u>18th</u> day of November, 2007

                                /s/ Lisa F. Caplan
                                Lisa F. Caplan
                                GA State Bar No. 001304

Adorno & Yoss, LLC
Attorney for COUNTRYWIDE,
its successors or assigns
Two Midtown Plaza, Suite 1500
1349 W. Peachtree St.
Atlanta, GA 30309
(888) 890-5309
lcaplan@adorno.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | Chapter 7 |
| Sharon H. Smith, | ) | |
| Debtors, | ) | Case No. 07-20244-JSD |
| | ) | |
| Countrywide Home Loans, Inc. | ) | |
| As Servicing Agent for | ) | |
| HSBC Bank USA, | ) | |
| National Association as | ) | |
| Trustee for the Holders of | ) | CONTESTED |
| BCAP LLC Trust 2006-AA2 | ) | MATTER |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Marvin B. Smith, III and | ) | |
| Sharon H. Smith, | ) | |
| R. Michael Souther, Trustee, | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that we have this day served all parties in the foregoing matter with a copy of the **Supplemental Brief in Support of Motion to Vacate Consent Order Modifying Automatic Stay and Amended Motion to Vacate Consent Order Modifying Automatic Stay**

by hand delivering a true and correct copy of same to the following parties:

R. Michael Souther
P.O. Box 978
Brunswick, GA 31521
*Trustee*

Lisa F. Caplan
Adorno & Yoss LLC
Two Midtown Plaza, Suite 1500
1349 West Peachtree Street
Atlanta, GA 30309
*Attorney for Movant*

121

William S. Orange, III
1419 Newcastle Street
Brunswick, GA  31520

And by addressing a true and correct copy of same to

Matt Mills
U.S. Trustee
222 W. Oglethorpe Ave., Ste. 302
Savannah, GA  31401

and placing the same in the United States Mail with sufficient postage affixed thereon to
assure delivery.

> Respectfully submitted this 28th day of May, 2009.

Marvin B. Smith, III
Defendant/Debtor

Sharon H. Smith
Defendant/Debtor

P.O. Box 31306
Sea Island, GA  31561
Telephone:  912-638-0528

122

FILED

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| MARVIN B. SMITH, III | ) | NUMBER 07-20244 |
| SHARON H. SMITH | ) | |
| | ) | |
|     Debtors | ) | |
| _____ | ) | |
| COUNTRYWIDE HOME LOANS, INC. | ) | |
| AS SERVICING AGENT FOR | ) | |
| HSBC BANK USA, | ) | |
| NATIONAL ASSOCIATION AS | ) | |
| TRUSTEE FOR THE HOLDERS OF | ) | |
| BCAP LLC TRUST 2006-AA2 | ) | |
| | ) | |
|     Creditor/Movant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MARVIN B. SMITH, III | ) | |
| SHARON H. SMITH | ) | |
| | ) | |
| and | ) | |
| | ) | |
| R. MICHAEL SOUTHER | ) | |
| Chapter 7 Trustee | ) | |
| | ) | |
|     Respondents | ) | |

## ORDER DENYING MOTION TO VACATE CONSENT ORDER

    This matter is before me on the Motion to Vacate
Consent Order Modifying Automatic Stay ("Motion") filed pro se by
Debtors Marvin B. Smith, III, and Sharon H. Smith. The Smiths

seek to undo an agreement they negotiated, through counsel, with the case trustee and Countrywide Home Loans, Inc., concerning the Smiths' condominium at 311 10th Street, Unit #B, St. Simons Island, Georgia ("Condominium"). The Motion is denied, because the Smiths failed to establish any basis for a grant of relief.

## BACKGROUND

The Smiths are a retired couple whose livelihood once consisted of the buying and re-selling of exclusive residential properties. The Smiths borrowed millions of dollars to finance these speculative purchases; and when the real estate market began its now-record-breaking plunge, the Smiths were left holding properties they were unable to sell, securing promissory notes they were unable to pay. Accordingly, the Smiths engaged counsel and on April 2, 2007, filed this bankruptcy case under chapter 11 of the Bankruptcy Code.

In addition to the petition, the Smiths filed required documents that included a schedule of creditors holding secured claims. (See Dkt. # 1, Schedule D, 32.)[1] This schedule listed Countrywide as the holder of two secured claims totaling almost $2.1 million for first and second mortgages on the Condominium.

---

[1] All docket and claims register citations refer to the record in this case.

(Id.) Countrywide later filed two proofs of claim as holder of the security deeds for the claims the Smiths had scheduled. (See Claims Register # 9-1; # 10-1.) Attached to each proof of claim was one page showing an itemized payoff balance and one photocopied page from a security instrument that did not reference Countrywide in any capacity. The Smiths did not object to either of the proofs of claim; and their schedules indicate that they did not dispute the debt.

Months passed, and it became clear that the Smiths could not maintain a case under chapter 11. Accordingly, a hearing was set for May 8, 2008, to show cause why the case should not be converted to a case under chapter 7, "due to [D]ebtors' failure to file a disclosure statement and plan and continued diminution of the estate." (Dkt. # 106, Order and Notice to Show Cause Why Case Should Not Be Converted.) At the close of the hearing, I ordered the case converted to a case under chapter 7. (Dkt. # 109, Order.)

Four months after the conversion, in September 2008, Countrywide filed a motion for relief from the automatic stay, 11 U.S.C. § 362, asserting a lack of adequate protection based on approximately eighteen months of missed payments and the fact that the Smiths appeared to have little to no equity in the

Condominium. (Dkt. # 154, Mot. for Relief from Automatic Stay.) In its motion for relief, Countrywide represented itself both generally and in connection specifically with the first-priority lien "as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors or assigns." (Id. introductory paragraph; ¶ 3.) The second-priority lien was referred to as "a second mortgage held by Countrywide Home Loans." (Id. ¶ 5.)

Attached to the motion for relief were copies of (1) the first three pages of a fourteen-page security instrument (the first page of which was also attached to the proof of claim for the first-priority lien) file-stamped by the Glynn County Clerk's Office, referencing a promissory note in the amount of $1,767,500, showing Marvin B. Smith, III, and Sharon H. Smith as "Borrower" and Synovus Mortgage Corporation as "Lender"; (2) the final page of what appears to be the same security instrument, showing the signatures of Marvin B. Smith, III, and Sharon H. Smith; and (3) an "Exhibit A," again apparently part of the same security instrument, describing a parcel of real property in part as "Unit B, of Enchantment by the Sea Condominium." (Id.)

Countrywide's motion for relief was set for hearing on November 6, 2008. By then, however, the parties had agreed to

submit a negotiated resolution; and on November 10, 2008, I signed the Consent Order that the Smiths now seek to have vacated. (Dkt. # 174, Consent Order Modifying Automatic Stay.)

According to the Consent Order, the Trustee could market the Condominium for a period of 180 days—roughly, six months. (Id.) If the Trustee could not find a buyer for the Condominium by May 5, 2009, the automatic stay would be lifted without further hearing, and Countrywide could proceed with its state law remedies, including conducting a foreclosure sale. (Id.) Counsel for Countrywide prepared and submitted the Consent Order, which was consented to by the Smiths through their attorney and was unopposed by the chapter 7 Trustee. (Id.)

Three weeks before May 5, 2009, no buyer had materialized. The Smiths, acting pro se, moved for relief under F.R.C.P. 60(b).


## DISCUSSION

Rule 60 of the Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides the following grounds for relief from a final judgment, order, or proceeding:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud . . . , misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

F.R.C.P. 60(b)(1)-(6). The extraordinary remedy provided under Rule 60(b) is reserved for litigants who show exceptional circumstances that outweigh the federal courts' deep-rooted policy favoring the finality of judgements. McHale v. Huff (In re Huff), 118 B.R. 146, 148 (Bankr. S.D. Fla. 1990) (citing Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985); Tucker v. Commonwealth Land Title Ins. Co., 800 F.2d 1054, 1056 (11th Cir. 1986)).

In addition to favoring finality, the law generally favors settlement. Schering-Plough Corp. v. FTC, 402 F.3d 1056, 1072 (11th Cir. 2005). Settlements are favored especially in bankruptcy cases, because "the prompt resolution of claims and disputes makes the compromise of claims of particular importance." Huff, 118 B.R. at 148 (citation omitted).

6

Rule 60(b) is not designed to afford relief to a party who has voluntarily submitted to a negotiated agreement. See Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986). Accordingly, "courts have repeatedly denied efforts by litigants to sidestep consensual resolutions by resort to Rule 60(b)." In re AMC Realty Corp., 270 B.R. 132, 145 (Bankr. S.D.N.Y. 2001). When a party has agreed to a settlement, the burden required for relief under Rule 60(b) is heavier than if the dispute had been litigated on the merits. Nemaizer, 792 F.2d at 63.

A consent order is a negotiated agreement and thus should be construed as a contract. United States v. ITT Cont'l Baking Co., 420 U.S. 223, 236 (1975). A party who enters into a consent order has waived the right to litigate the issues; and consistent with the law of contracts, the conditions under which that waiver was given must be respected. United States v. Armour & Co., 402 U.S. 673, 682 (1971). A settlement "will rarely be set aside absent fraud, collusion, mistake or other such factors as would undo a contract." Bradlees Stores, Inc. v. St. Paul Fire & Marine Ins. Co. (In re Bradlees Stores, Inc.), 291 B.R. 307, 311 (Bankr. S.D.N.Y. 2003). Clear and convincing evidence is required to prove fraud, misrepresentation, or other misconduct under Rule 60(b)(3). Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287

⁊ₒAO 72A
(Rev. 8/82)

(11th Cir. 2000).

Here, the Smiths argue that the Consent Order should be vacated under Rule 60(b)(1), (3), (4), and (6). None of their arguments, however, demonstrate any ground for the extraordinary relief that they seek. The Smiths in essence agreed to a contract, and they are bound by its terms.

### Rule 60(b)(1) — Mistake.

The Smiths assert two mistakes under Rule 60(b)(1). First, they argue mistake of counsel, stating that they were not aware that the Consent Order granted stay relief. Second, they argue my mistake in signing the Consent Order.[2] Neither of these arguments establishes any basis for relief under Rule 60(b)(1).

"Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." Nemaizer, 793 F.2d at 62 (citations omitted). Here, the Smiths say they did not know "until after the fact" that they had agreed to stay relief as part of the Consent Order. (Dkt. # 203, Smiths' Supplemental Br. 8.) Whether the

---

[2] The Smiths refer to the "entry" of the Consent Order as a mistake. (Dkt. # 192, Mot. 5.) It is clear, however, that they intended to reference my judicial act, not the ministerial act of the Clerk's office in docketing or "entering" the Consent Order.

Smiths even read the Consent Order, however, is immaterial; they still are bound by the agreement their attorney signed.

Relief was similarly denied to debtors who sought to have a settlement order set aside in an adversary proceeding. See McHale v. Huff (In re Huff), 118 B.R. 146 (Bankr. S.D. Fla. 1990). The debtors there argued that their attorney had misrepresented to them that certain criminal matters were resolved by the settlement agreement. Id. at 147. The court concluded that the settlement agreement was binding and enforceable, noting that "Debtors freely chose their counsel and cannot thereafter avoid the consequences of their attorney's acts or omissions." Id. at 148. Likewise here, the Smiths freely chose their counsel. The Consent Order is thus binding and enforceable against them.

Moreover, no basis exists to vacate the Consent Order due to my purported mistake in signing it. The Smiths argue that this "mistake" was a result of Countrywide's alleged misrepresentations under Rule 60(b)(3). The Smiths failed, however, to establish a basis for relief under Rule 60(b)(3), as fully discussed immediately below. Consequently, there also is no basis on which to conclude that my signing of the Consent Order was a mistake under Rule 60(b)(1).

## Rule 60(b)(3) - Fraud, Misrepresentation.

The Smiths' primary argument under Rule 60(b) is that Countrywide fraudulently misrepresented itself as the real party in interest, both in its proofs of claim and its motion for relief from stay. This assertion is wholly without merit. First, when the Smiths agreed to the Consent Order, they waived the right to litigate the question of whether Countrywide is the real party in interest. Second, misrepresentation alone is not an adequate basis for relief.

### The Smiths Waived the Right to Object to Countrywide's Status as the Real Party in Interest.

Rule 17 of the Federal Rules of Civil Procedure requires that an action "be prosecuted in the name of the real party in interest." F.R.C.P. 17(a)(1).[3] "[T]he designation of the real party in interest entails identifying the person who possesses the particular right sought to be enforced." Williams v. United Techs. Carrier Corp., 310 F. Supp. 2d 1002, 1009 (S.D. Ind. 2004). This defense is not jurisdictional and may be deemed waived. Steger v. Gen. Elec. Co., 318 F.3d 1066, 1080 (11th Cir. 2003).

---

[3] Rule 17 of the Federal Rules of Civil Procedure is made applicable in bankruptcy adversary proceedings by Rule 7017 of the Federal Rules of Bankruptcy Procedure, which in turn is made applicable in contested matters by F.R.B.P. 9014(c).

Here, the Smiths argue that under Rule 17(a)(1), Countrywide was required to prove its status as the real party in interest with standing to move for relief from the automatic stay, whether as the owner of the notes or as the servicing agent;[4] and that because Countrywide "presented no note, no assignment, and no servicing agreement" (Dkt. # 201, Smiths' Br. 8), Countrywide was not entitled to move for stay relief.

The Smiths are incorrect. Countrywide was not required to present any proof as to its status as the real party in interest, because the Smiths waived the right to demand proof when they agreed to the Consent Order. The Smiths could have objected to Countrywide's proofs of claim, but they did not. The Smiths also could have objected under Rule 17(a)(1) to the motion for relief from stay, but they did not. Instead, the Smiths agreed to the Consent Order, thereby waiving any objection under Rule 17(a)(1) to Countrywide's substantive right to enforce its claim.

**The Smiths Failed to Rely on the Alleged Misrepresentations.**

The Smiths further argue that because Countrywide

---

[4] The Smiths initially argued that only the owner of a note could be the real party in interest on a motion for relief from stay, citing In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. 2008). They appeared to abandon this argument, however, in light of the binding authority of Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) (holding that a loan servicer is a real party in interest "with standing to conduct . . . the legal affairs of the investor relating to the debt that it services").

first represented itself in the proofs of claim as the holder of the security deed and later represented itself in the motion for relief as the servicing agent for the loan, one of these representations must be false. (Dkt. # 203, Smiths' Supplemental Br. 7.) Misrepresentation alone, however, will not undo a contract; nor can misrepresentation alone establish a basis on which to vacate the Consent Order.

A party challenging a contract on the ground of fraud or misrepresentation must establish not only the fact of a misrepresentation, but also the party's reliance on the misrepresentation. <u>Fin. Sec. Assurance, Inc. v. Stephens, Inc.</u>, 500 F.3d 1276, 1289 (11th Cir. 2007) (applying Georgia law). To establish reasonable reliance, the party alleging fraud or misrepresentation must show that it exercised due diligence. <u>Id.</u>

The Smiths cannot establish that they exercised due diligence before agreeing to the Consent Order. Because every alleged misrepresentation was readily apparent on the face of the respective documents, due diligence required the Smiths to simply examine Countrywide's proofs of claim and motion for relief before agreeing to stay relief under the terms of the Consent Order. The Smiths' failure to object to Countrywide's proofs of claim or to its motion for relief indicates that the Smiths did not exercise

the due diligence that would have revealed the obvious contradictions among these documents. The Smiths thus cannot show the reliance necessary to establish fraud or misrepresentation as a basis on which to vacate the Consent Order.

### Rule 60(b)4) — Void Judgment.

"Rule 60(b)(4) is the appropriate vehicle by which to attack jurisdictional defects of purported judgments." Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1130 (11th Cir. 1994) (citing 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2862). A judgment is void only if it was rendered by a court that lacked jurisdiction or "acted in a manner inconsistent with due process of law." Arthur Andersen & Co. v. Ohio (In re Four Seasons Securities Laws Litigation), 502 F.2d 834, 842 (10th Cir. 1974) (citing 11 Wright & Miller § 2862).

The Smiths argue that the Consent Order is void because Countrywide did not have standing to request relief from the automatic stay. (Dkt. # 192, Mot. 5.) It is unclear, however, whether the Smiths meant to argue that the Consent Order is void because Countrywide is not the real party in interest with standing under Rule 17; or whether the Consent Order is void because Countrywide lacks standing under the U.S. Constitution. In

either event, the argument is without merit.

As discussed above, an objection based on the "real party in interest" requirement under Rule 17 does not implicate the court's jurisdiction. Steger v. Gen. Elec. Co., 318 F.3d at 1080. From a constitutional standpoint, however, "standing imports justiciability: whether the plaintiff has made out a case or controversy between himself and the defendant." In re Hwang, 396 B.R. 757, 768 (Bankr. C.D. Cal. 2008) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975) (internal quotation marks omitted). Countrywide meets this "minimum constitutional mandate," id., in the motion for relief from stay. Consequently, the Consent Order is not void on the basis that Countrywide lacks standing.

Moreover, the Smiths cannot successfully argue that they were denied due process. A party who settles a dispute makes "a conscious choice, based on an informed weighing of the risks and benefits of further litigation, to forego the very procedures afforded to protect his right to due process." Schwartz v. United States, 976 F.2d 213, 217 (4th Cir. 1992). The Smiths, through their attorney, agreed to the terms of the Consent Order, and they must now live with the consequences of that choice.

## Rule 60(b)(6) - Any Other Reason that Justifies Relief.

Rule 60(b)(6) is known as the "catch-all" provision, under which a movant may seek relief for a reason not included under the other subsections of the rule. Rice v. Ford Motor Co., 88 F.3d 914, 918 (11th Cir. 1996). Here, the Smiths argue that they will suffer irreparable injury if Countrywide is allowed to proceed with a foreclosure sale. (Dkt. # 203, Smiths' Supplemental Br. 8.) The Consent Order, however, only provided for the lifting of the automatic stay. The "irreparable injury" of foreclosure, as asserted by the Smiths, would flow from Countrywide's subsequent pursuit of its state law remedies, not from enforcement of the Consent Order.    The Smiths thus have established no basis for relief under Rule 60(b)(6).

### CONCLUSION

In keeping with judicial policy favoring finality of judgments, I am reluctant to set aside orders generally. In keeping with judicial policy favoring settlements, I am especially reluctant to set aside consent orders.

Moreover, in bankruptcy cases particularly, the effects of a consent order extend beyond the parties who signed the agreement; other parties in interest adjust their expectations and strategies around prior orders to maximize their own return

in the case. For this reason, a party seeking to vacate a consent order entered into through counsel in a bankruptcy case bears an exceptionally heavy burden under Rule 60(b). The Smiths have failed to carry this burden.

Additionally, the Smiths acting pro se have missed the point of the Consent Order. The Consent Order merely grants Countrywide relief from the automatic stay imposed in bankruptcy cases under 11 U.S.C. § 362. In agreeing to the Consent Order, the Smiths did not waive any rights that they may have under nonbankruptcy law.

**IT IS THEREFORE ORDERED** that the Motion to Vacate Consent Order Modifying Automatic Stay is **DENIED**. Countrywide Home Loans, Inc., as servicing agent for HSBC Bank USA, National Association as Trustee For The Holders of BCAP LLC Trust 2006-AA2, its successors, and assigns may proceed immediately with its state law remedies as to the property at 311 10th Street, Unit #B, St. Simons Island, Georgia; and by consenting to stay relief, the Smiths have not waived any state law remedies available to them.

Dated at Brunswick, Georgia,
this ____ day of July, 2009.

_____
JOHN S. DALIS
United States Bankruptcy Judge

*AO 72A
(Rev. 8/82)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

IN RE:
CHAPTER 13 BANKRUPTCY PETITION  :  **TRANSCRIBED FROM**
                                :  **ELECTRONIC RECORDING**
                                :  CASE NUMBER: 07-20244-JSD
MARVIN B. SMITH, III and        :
SHARON H. SMITH, Debtors        :
                                :  Waycross, Georgia
                                :  May 28, 2009
                                :

---

**MOTION TO VACATE CONSENT ORDER**

**BEFORE THE HONORABLE JOHN S. DALIS**

**UNITED STATES BANKRUPTCY JUDGE**

---

APPEARANCES:

FOR THE DEBTORS:
    SHARON H. SMITH (Pro Se)
    MARVIN B. SMITH
    P.O. Box 31306
    Sea Island, Georgia   31561

BANKRUPTCY TRUSTEE:
    R. MICHAEL SOUTHER
    P.O. Box 978
    Brunswick, Georgia   31521
    (912) 265-5544

TRANSCRIBED BY:
    C. Joan Mobley
    Official Court Reporter, CCR-B1678, CVR
    801 Gloucester Street, Suite 207
    Brunswick, Georgia   31520
    (912) 280-1348

FILED
Sept. 1st
2009 AUG 22 AM 8: 14
U.S. BANKRUPTCY COURT
BRUNSWICK, GA
SAMUEL L. KAY, CLERK

# I N D E X

Argument                          Page Number


   1.  Mr. Souther                   3
   2.  Mrs. Smith                    5
   3.  Mr. Strickland             16, 31
   4.  Mr. Smith                    29

Ruling of the Court              33

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 85 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:3 of 38

3

$$P \; R \; O \; C \; E \; E \; D \; I \; N \; G \; S$$

1

2      THE COURT:  The next matter is 07-20244, Marvin and

3  Sharon Smith.  This is a Motion To Vacate Consent Order

4  Modifying Automatic Stay filed by the Debtors Pro Se with

5  response by Countrywide Home Loans.

6      Let me note appearances.

7      MR. STRICKLAND:  Dennis Strickland for Countrywide,

8  Your Honor.

9      MR. SOUTHER:  Your Honor, Mike Souther for the

10  Trustee.

11      MRS. SMITH:  Sharon Smith, Pro Se for the Debtor.

12      THE COURT:  All right.  Mrs. Smith, why should I

13  vacate this order?

14      MRS. SMITH:  May I give you this?

15      THE COURT:  Yes, yes.

16      Do you have copies for the lawyers here?

17      MRS. SMITH:  Yes, I do.

18      THE COURT:  Let me ask you, Mr. Souther, on behalf of

19  the Trustee, do you have any interest one way or another in this

20  matter, the outcome of this?

21      MR. SOUTHER:  Your Honor, not really.  Let me just

22  explain my position very briefly.

23      My position, I have a different perspective or

24  different interest, I believe, to protect than the Smiths so we

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 86 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:4 of 38

4

1    are not exactly in unison in this matter.  I signed off on this

2    order consenting to relief from stay at a date certain.

3              THE COURT:  Which has happened.

4              MR. SOUTHER:  Which has happened.  And the idea was to

5    give us time to try to sell the property.  And the reason I did

6    that, the reason I signed off on that at that point in time was

7    this: I was presented with two proofs of claim, a first mortgage

8    for about $1,858,000, a second mortgage for $330,000.  I had

9    copies of the security deeds and copy of the notes so in my

10   estimation there was very little equity in the property,

11   although it appeared on paper there may be a little bit of

12   equity and signing off on that order gave us an opportunity to

13   try to sell that property.  That has not happened.  The time has

14   come under the terms of that order that relief from stay would

15   be granted.  I still do not think there is any equity in the

16   property.  The way that I was looking at this was even if I sold

17   that property, the Smiths are arguing as to whether or not

18   Countrywide has standing, et cetera, et cetera.  From my

19   perspective, if I tried to sell that property, at some point in

20   time I was going to have to pay off whoever held the note.

21             THE COURT:  In order to transfer title you are going

22   to have to pay somebody.

23             MR. SOUTHER:  Exactly, someone.

24             THE COURT:  I understand.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 87 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:5 of 38

5

1          MR. SOUTHER:  Countrywide or whomever.  So, again,

2     from my perspective, there is no equity in the property.  There

3     are some valid liens on the property evidenced by two security

4     deeds, so I have no interest in the outcome today.

5          THE COURT:  Thank you.

6          MRS. SMITH:  Basically, Your Honor, it is about

7     standing.  I do not think that Countrywide does have standing

8     and I do not --

9          THE COURT:  Why not?

10          MRS. SMITH:  Okay.  First, Countrywide misrepresented

11     its identity ab initio.  If you will look at Exhibit B that I

12     just gave you.

13          THE COURT:  All right.

14          MRS. SMITH:  It is on November 18, 2008.  Countrywide

15     Homes filed the proof of claim, and if you will look at the

16     attachment to it, page 2, it says, and I quote, "Claimant holds

17     a first priority security deed on property located at 311 Tenth

18     Street, Unit Number B, St. Simons Island, Georgia."  The

19     security deed attached to the motion for relief - I mean, this

20     was for the proof of claim, names MERS as Grantee and the second

21     page was omitted, thereby concealing from the Trustee debtor's

22     counsel and this Court the fact that Movant is not the secured

23     creditor of record.  The note is missing and no documentation

24     whatsoever was presented to indicate that debtor's note or deed

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 88 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:6 of 38

6

1    had been transferred to Countrywide.  There is no assignment

2    whatsoever presented with that.

3         But then, now look at Exhibit A.  On November 25th,

4    2008, Countrywide Homes, Inc. became Countrywide Home Loans,

5    Inc., as servicing agent for HSBC Bank USA National Association

6    as Trustee for the holders of BCAP, LLC Trust 2006AA2 and then

7    filed the motion for relief.  Paragraph three of the motion says

8    Countrywide Home Loans, Inc., as servicing agent for HSBC Bank

9    USA National Association as Trustee for the holders of, the

10   whole thing, its successors or assigns hereafter known as Movant

11   is a secured creditor of debtors pursuant to a note and deed to

12   secure debt.  The mortgage is evidenced by a promissory note

13   executed by Marvin S. Smith, III.  It is supposed to be B.

14   Smith, III and Sharon H. Smith, dated August 7, 2006 in the

15   original principal amount of $1,767,500.  The mortgage

16   promissory note is secured by a deed to secure debt executed by

17   Marvin B. Smith, III and Sharon H. Smith, dated August 7, 2006,

18   which conveys certain property located in Glynn County, Georgia,

19   now or formerly known as 311 Tenth Street, Unit B, St. Simons

20   Island, Georgia  31522.  Said deed to secure debt is recorded in

21   the Deed Book 2026.

22        Although Movant claims to be a secured creditor of

23   debtors pursuant to a note and deed to secure debt, no note was

24   attached.  Security deed attached names MERS as Grantee and

25   Synovis as Lender.  No documentation was presented to indicate

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 89 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:7 of 38

7

1   debtor's note or deed had been transferred.   No documentation

2   was presented to indicate a servicing agreement with any

3   principle.   Movant states in their brief that we just got that

4   debtor's brief is illogical and unintelligent and that

5   Countrywide is a servicing agent and not required to prove up

6   the original note.   Number one, Country wide is the one who

7   claimed ab initio that it holds the first priority security deed

8   according to the claim.   It claimed it was a holder.   And then

9   when it came for the relief of stay, it claims it is a servicer,

10   thereby, requiring proof of such claim.   If Countrywide was a

11   servicing agent, it must have proved agency status and that the

12   principle was the holder of the debtor's note.   Even though it

13   seems illogical and unintelligent to Movant, it is the law.

14   Bankruptcy courts have followed the Uniform Commercial Code in

15   regarding investors and lenders bankruptcy New Jersey 1994.

16   Under the New Jersey Uniform Commercial Code promissory note is

17   the instrument, security instrument which must be perfected by

18   possession.   Quoting the United States Bankruptcy Judge Samuel

19   Buford, Article 3 governs negotiable instruments.   It defines

20   what a negotiable instrument is and defines how ownership of

21   those pieces of paper is transferred.   For the precise

22   definition Code 3104A, an unconditional promise or order to pay

23   a fixed amount of money with or without interest.   The

24   instrument may be either payable to order or bearer and payable

25   on demand at a definite time with or without interest.   Ordinary

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 90 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:8 of 38

8

1   negotiable instruments include notes and drafts.   Negotiable

2   paper is transferred from the original payer by negotiation,

3   Code 3-301, order paper must be endorsed.   Bearer paper need

4   only be delivered, 3-305.   However, in either case the note to

5   be endorsed, the person who asserts the status of the holder

6   must be in possession of the instrument.   Code 1-201, the

7   original and subsequent transferees are referred to as holders.

8   Holders who take with no notice of defect or default are called

9   holders in due course and take free of many defenses.   The

10  U.C.C. says that a payment to a party entitled to enforce the

11  instrument is sufficient to extinguish the obligation of the

12  person obligated on the instrument.   Clearly then, only a

13  holder, a person in possession of a note, endorsed to it, or a

14  holder of bearer paper may seek satisfaction or enforce rights

15  in collateral such as real estate.

16          Countrywide has failed to show a real party in

17  interest and standing.   Federal Rules of Civil Procedure 17, an

18  action must be prosecuted in the name of the real party in

19  interest.   This rule is incorporated into the rules governing

20  bankruptcy procedure in several ways.   In regarding Wang

21  [phonetic] Bankruptcy California 2008, Judge Buford has pointed

22  out, for example, in a motion for relief of stay filed under

23  federal rules of bankruptcy procedure, 4001, is a contested

24  matter governed by federal rules of bankruptcy procedure 9014,

25  which makes bankruptcy procedure 7017 applicable to such

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 91 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:9 of 38

9

1  motions.  Bankruptcy procedure 7017 is, of course, a restatement

2  of 17.  In regarding Wang,[phonetic] 396 Bankruptcy at 766, the

3  real party in interest in a federal action to enforce a note,

4  whether in bankruptcy court or federal district court, is the

5  owner of the note.  When the actual holder of the note is

6  unknown, it is impossible, not difficult, but impossible to

7  plead a cause of action in a federal court unless the Movant

8  simply lies about the ownership of the note.  Unless the name of

9  the actual note holder can be stated, the very pleadings are

10  defective, and I am quoting Judge Buford on that.

11         No legal documentation presented at the time of the

12  proof of claim was filed November 18, 2007 showed HSBC Bank USA

13  or Countrywide as lender, grantee, or serving agent.  There was

14  no note presented on November 18, 2007.  The security deed

15  presented on November 18, 2007 showed MERS as grantee.  The

16  second page was missing and would have shown Synovus as lender.

17  There was no assignment presented on November 18, 2008.

18  Although it is irrelevant in light of the fact that Movant

19  represented itself as holder ab initio, there was no servicing

20  agreement presented on September 25, 2008.  The servicing agent

21  may have standing if acting as an agent for the holder, assuming

22  that the agent can both show agency status and that the

23  principle is the holder of the debtor's note in regarding

24  Vargas, Bankruptcy 2008.  This simply is not true in the present

25  case.  Movant showed no documentation proving agency status on

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 92 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:10 of 38

10

1   September 25th, 2008.  Movant presented no note to prove that

2   the principle was the holder of the debtor's note on September

3   25th, 2008.  There was no assignment presented on September

4   25th, 2008 that might even show a possibility that HSBC Bank USA

5   or Countrywide had standing to request relief of stay or enter

6   into a consent order.  They quote *James H. Green, et al versus*

7   *O'Dell*, an 11th Circuit case, but it does not help the Movant.

8   In *Greer* the loan servicer did show agency status and the

9   principle was the proven holder of the debt.  Such is not true

10  in the present case, as shown above.

11          Contrary to Movant's claim debtor cited numerous

12  bankruptcy - they said that I had not cited one bankruptcy case,

13  and I cited numerous cases.  In the motion to vacate consent

14  order modifying automatic stay, I cited *in regarding McGhee*.

15  Maryland bankruptcy court Judge Catliota ruled that since the

16  loan was not owned by AmeriCredit, it needed to file the motion

17  for relief of stay in the name of the actual note holder and

18  denied the motion for relief of stay pursuant to bankruptcy Rule

19  7017, incorporating federal rules of civil procedure, 171A, an

20  action must be prosecuted in the name of the real party in

21  interest.  *In regarding Investors and Lenders*, also presented in

22  the motion to vacate, Bankruptcy 1994, the one I just quoted a

23  minute ago, the instrument security in which must be perfected

24  by possession.  Cited in the amendment to motion to vacate

25  consent order modifying automatic stay in regarding *K. Jing*

1   ***Wang,*** [phonetic] a Central District of California bankruptcy case

2   IndyMac was the only entity with the actual legal ability to

3   proceed with foreclosure, yet it admitted it was not the actual

4   owner of the note.  In Wang, even though IndyMac had the rights

5   to foreclose on the note, it had possession and a valid

6   endorsement, the Court stated nobody knew who the owner of the

7   note was.  Indeed it is doubtful that IndyMac could make such a

8   claim because IndyMac does not know who owns the note.  In that

9   case the judge denied IndyMac the ability to obtain relief of

10   automatic stay to pursue the foreclosure solely because no one

11   seemed to know who was the actual owner of the note.  In

12   regarding ***Peter A. Jacobson and Maria E. Jacobson*** bankruptcy

13   case, the court denied UBSAG's motion to lift the stay on the

14   basis of lack of standing and lack of a real party in interest.

15   The Court wrote, nothing in the record establishes UBSAG's

16   authority to enforce the debtor's note for whomever holds it and

17   thus to enforce the deed of trust.  The declaration states that

18   UBSAG is servicing agent, a term with no uniform meaning and no

19   definition cited.  At a minimum, there must be an unambiguous

20   representation or declaration setting forth the servicer's

21   authority from the present holder of the note to collect on the

22   note and enforce the deed of trust.  If questioned, the servicer

23   must be able to produce and authenticate that authority.  UBSAG

24   has not shown that it has standing to bring the motion for

25   relief of stay or authority to act as the motion was not brought

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 94 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:12 of 38

12

1  in the name of the real party in interest nor has standing to
2  bring it been established, it will be denied, Phillip H. Brant,
3  [phonetic], United States Bankruptcy Judge.
4          Cited in the brief in support of motion to vacate
5  consent order modifying automatic stay, *Schwartz*, 366 Bankruptcy
6  Massachusetts 2007.  Schwartz concerns a motion for relief to
7  purse an eviction.  Movant asserted that the property had been
8  foreclosed upon prior to the date of the bankruptcy petition.
9  The Pro Se debtor asserted that the Movant was required to show
10 that it had authority to conduct the sale.  Movant and the
11 party, which appears to be the current mortgagee, provided
12 documents for the Court to review but did not ask for an
13 evidentiary hearing.  Judge Rosenthal sifted through the
14 documents and found that the Movant and the current mortgagee
15 had failed to prove that the foreclosure was properly conducted.
16 Specifically, Judge Rosenthal found that there was no evidence
17 of proper assignment of the mortgage prior to foreclosure.  The
18 Court also finds that there is no evidence that the note itself
19 was assigned and no evidence as to who the current holder might
20 be.
21          In *Nozak versus AmeriQuest Mortgage Company*,
22 Bankruptcy Massachusetts 2008, almost a year to the date after
23 *Schwartz* was signed, Judge Rosenthal issued a second opinion.
24 This is an opinion in order to show cause.  Judge Rosenthal
25 specifically found that although the note and mortgage involved

1    in the case had been transferred from the originator to another

2    party within five days of closing, during the five years in

3    which the chapter was pending, the note and mortgage and

4    associated claims had been prosecuted by AmeriQuest, which has

5    represented itself to be the holder of the note mortgage.  Not

6    until September of 2007 did AmeriQuest notify the Court that it

7    was merely a servicer.

8            And there is a similarity here, Your Honor, because

9    they first said that they were holder and then they came back in

10   and said, Countrywide did, and said they were servicer when they

11   got to the relief of stay.  In fact, only after Chapter 13

12   bankruptcy had been pending for about three years was even an

13   assignment of the servicing rights.  Because these

14   misrepresentations were not simple mistakes, as the Court has

15   noted on more than one occasion, those parties do not hold the

16   note and mortgage, do not service the mortgage, do not have

17   standing to pursue motions for leave or other actions arising

18   from the mortgage obligation.  As a result, the Court sanctioned

19   the law firm that had been prosecuting the claim $25,000.  It

20   sanctioned a partner at that firm an additional $25,000.  Then

21   the Court sanctioned the National law firm, involved $100,000,

22   and ultimately sanctioned Wells Fargo $250,000.

23           In regarding *Hayes*, Bankruptcy Massachusetts 2008,

24   like Judge Rosenthal, Judge Feeney has attacked the problem of

25   standing and authority head on.  She has also held that standing

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 96 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:14 of 38

14

1   must be established before either a claim can be allowed or a

2   motion for relief granted.

3           In regarding *Vargas*, Bankruptcy California 2008, the

4   servicing agent may have standing if acting as an agent for the

5   holder, assuming the agent can both show agency status and that

6   the principle is the holder.   This Court should vacate the

7   consent order modifying an automatic stay pursuant to bankruptcy

8   rule 9024.   As shown above, Movant misrepresented its identity

9   ab initio.   On November 18, 2007, Countrywide represented itself

10  as holder.   On September 25th, 2008, Movant represented itself

11  as servicer.   Obviously, one of the two representations is

12  false.   In fact, both are probably false by virtue of the fact

13  that no evidence was presented to support either representation.

14  As Movant has knowledge of the material misrepresentation which

15  was presented to this Court, Movant has perpetuated a fraud

16  against the Court to the detriment of the debtors.   As Movant

17  had knowledge and the material misrepresentation which is

18  presented to the trustee, debtor's attorney, Movant, has

19  perpetuated additional fraud in obtaining the consent order.

20  Any false representation or material facts made with knowledge

21  of falsity and with intent that it shall be acted upon by

22  another in entering into contract and which is so acted upon

23  constitutes fraud and entitles party to save to avoid contract

24  or recover damages.   Bankruptcy Rule 9024 incorporating federal

25  rules of civil procedure 60(b), grounds for relief from a final

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 97 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:15 of 38

15

1  judgment order or proceeding.  On motion in just terms the Court

2  may relieve a party or its legal representative from a final

3  judgment, order or proceeding for the following reasons:  One,

4  mistake, inadvertence, surprise, or excusable neglect.  Two,

5  newly discovered evidence that with reasonable diligence could

6  not have been discovered in time.  Three, fraud, whether

7  previously called intrinsic or extrinsic, misrepresentation or

8  misconduct by an opposing party.  Four, the judgment is void.

9  Five, the judgment has been satisfied, released or discharged.

10 And, six, any other reason that justifies relief.  Although,

11 Movant perpetuated a fraud as shown above, it is not necessary

12 to prove said fraud.  Rule 9024 permits vacation of the consent

13 order for the reasons cited above.  At the very least, a mistake

14 was made to allow the unauthorized Movant to request relief of

15 stay ab initio.  Debtors had no knowledge until after the fact

16 that relief of stay would be a part of the agreement to sell the

17 debtor's property.  And I found out about it afterward.  I just

18 did not know what to do, Your Honor, until I saw somewhere that

19 I could ask you to vacate an order.  No documentation whatsoever

20 was -- you know that I would have been looking from past - I

21 would have been looking at documentation.  No documentation

22 whatsoever was presented to prove that Movant was a real party

23 in interest to have requested relief of stay or to have entered

24 into the consent order.  In regarding *Wang*, the real party in

25 interest in a federal action to enforce a note, whether in

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 98 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:16 of 38

16

1   Bankruptcy Court or Federal, is the owner of the note.  When the

2   actual holder of the note is unknown, it is impossible, not

3   difficult but impossible to plead a cause of action in federal

4   court unless the Movant simply lies about the ownership of the

5   note.  Unless the name of the actual note holder can be stated,

6   the very pleadings are defective.  The allowance of a Movant to

7   foreclose on a debtor's home results in the debtor suffering

8   irreparable injury and the threatened injury to the debtor from

9   a foreclosure is greater than any damage which the Movant may

10  claim to suffer in regarding **Ricky, _Linda Thomas_**, Bankruptcy

11  Alabama Southern Division 2007.

12          Under these circumstances the entry of this Court's

13  November 10, 2008 order granting Movant's motion for relief from

14  the automatic stay was a mistake based on misrepresentations of

15  Movant ab initio, thus justifying the vacation of the subject

16  order pursuant to federal rules of civil procedure 60(b)1.  The

17  material misrepresentations of Movant constitute fraud,

18  misrepresentation and misconduct by Movant, thus, warranting the

19  vacation of this Court's November 10 order pursuant to federal

20  rules of civil procedure 60(b)3.  As this Court's order of

21  November 10, 2008 was based on a premise which is conclusively

22  false legal standing and a real party in interest of Movant, the

23  subject order granting relief from the automatic stay for Movant

24  to pursue foreclosure is void, warranting the vacation of the

25  subject order pursuant to federal rules of civil procedure

1    60(b)4.  As the injustice resulting from the entry of this

2    Court's November 10, 2008 order is extraordinary and as such

3    harm is substantial and represents irreparable injury to the

4    debtor which greatly outweighs any alleged harm to the Movant

5    who had no proven interest in the subject security deed and

6    promissory note.  This Court's November 10, 2008 order should be

7    vacated pursuant to federal rules of civil procedure 60(b)6;

8    wherefore, pursuant to bankruptcy rule 9024 incorporating

9    federal rules of civil procedure 60(b), debtors pray unto this

10   Court to vacate the consent order modifying automatic stay, to

11   deny the relief of automatic stay requested by the unauthorized

12   Movant, and for any other relief this Court deems just improper.

13            THE COURT:  Anything else at this point?  Anything

14   else?

15            MRS. SMITH:  No, sir, not right now.

16            THE COURT:  Thank you.

17            Mr. Strickland.

18            MR. STRICKLAND:  Your Honor, there are several things

19   involved here.  Number one, this was a consent order signed by

20   her attorney at the time when it was entered in, I believe,

21   November of last year.  Also, a lot of the cases she cites were

22   involuntary foreclosures that were filed by a lender against the

23   debtors.  The debtors filed a Chapter 7 or entered voluntarily

24   into this Court putting themselves to the jurisdiction of this

25   Court.  They are not going to irreparably harmed.  Their house

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 100 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:18 of 38

18

1  was gone when they filed. They may still be in there far as that

2  goes right now.

3        The *Greer* case, which is 11th Circuit case, clearly

4  shows that a servicing agent is a real party in interest.  The

5  motion for relief shows that Countrywide is a servicing agent.

6  Mr. Souther was given, I think it comes out to six months to

7  sell the property and was unable to do so or at least not for

8  enough money to cover the debts on the property.  The debtors

9  have basically been getting into the house for the last however

10 long because it was -- they should not be allowed to milk the

11 system to continue to live in a 2 million dollar house or

12 whatever it is, it is probably not worth that much under the

13 current market, to abuse the system, which is what they are

14 trying to do.  They knew full well what it meant when they filed

15 a Chapter 7.  They knew full well what it meant when they were

16 served with a copy of the order in November of last year.  If

17 they did not like the order, they had 10 days to appeal that,

18 which they did not.  Nothing has been done in this case that is

19 not done in just about every motion for relief that is filed in

20 this court.  It is the same thing.

21        In addition, all the cases that she cites are in

22 states that have deeds of trusts or mortgages, which is not the

23 same thing.  Georgia has deeds to secure debts and a non-

24 judicial foreclosure which is totally different.  All these

25 other states are judicial foreclosure states.  When you sign a

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 101 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:19 of 38

19

1  deed to secure Debt, they are giving an interest in the property

2  to the lender.  Ms. Caplan and Mr. Linkowski have filed briefs

3  with the Court.  MRS. SMITH just filed one, I think earlier this

4  week, and then she gave me a supplemental brief just a few

5  minutes ago, and I see nothing that would authorize the Court to

6  vacate this order.  No mistake, inadvertence, no fraud.

7  Everybody knew what was going on when the order was signed.  If

8  the Court desires that Ms. Caplan and Mr. Linkowski further

9  brief the Court, they will be happy to do so.  They asked me to

10  advise you they would be happy to do so, but the order is

11  basically res judicata.  They have had time.  They could have

12  appealed it.  They saw it.  They are, I guess, understandably

13  upset their house cannot sell but I mean that is the market.

14  That is not the fault of the lender or anything else.  It is

15  just the way things are at this current time.  The market is

16  depressed and Mr. Souther could not sell it and I doubt if they

17  can.  But the bottom line is there is a deed to secure debt on

18  the property.  There is a debt of 1.8 million dollars on it.

19  The note has been furnished to the Court.  An assignment has

20  been furnished to the Court.  The *Greer* case, with 11th Circuit,

21  clearly shows that a servicing agent is a real party in

22  interest.  There is a lot of smoke but what happens in

23  California is not really relevant to what happens in Georgia.

24         THE COURT:  Isn't California a Deed to Secure Debt

25  state as well?  I think it is.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 102 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:20 of 38

20

1          MR. STRICKLAND:  That I do not know, Your Honor.

2          MRS. SMITH:  I think it is too.

3          THE COURT:  I think it is identical in terms of,

4    virtually identical.  I think it may have differences in terms

5    of the time it takes in order to foreclose, but I thought

6    California was deed to secure debt.

7          MR. STRICKLAND:  I thought it was a judicial

8    foreclosure state, but I may be wrong there, Your Honor.

9          THE COURT:  It may be.  I thought it was a non-

10   judicial security deed state, but I could be wrong.

11         MR. STRICKLAND:  I am not going to make that

12   representation, Your Honor, because I do not know.

13          But any event, I know that the other case she cites a

14   big one that was in District Court, I believe, in Ohio and that

15   is a judicial foreclosure state because that is what they were

16   trying to do.  We have got a voluntary Chapter 7 subjected to

17   the Court.  Had no way to protect this property other than by

18   redeem or reaffirm, which they did not do, and we would ask that

19   the Court continue and leave the motion for relief from stay.

20   It is my understanding in looking at the order it had six months

21   and if Mr. Souther could not sell it, I believe it was by May

22   5th of this month, then the stay was granted.

23         THE COURT:  The stay was lifted and that is why we are

24   here rather than waiting for next month in Brunswick because

25   under the terms of the order your client was at liberty to start

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 103 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:21 of 38

21

1    running the ad in May for a June foreclosure sale date and that

2    is why I wanted to resolve this.  But as I understand it, there

3    is no ad running at this point, is it?

4             MR. STRICKLAND:  Not to my knowledge, Your Honor.  I

5    mean, I have nothing to do with that.  If there is, I do not

6    know about it.

7             MRS. SMITH:  May I say something, Your Honor?

8             THE COURT:  Yes.

9             MRS. SMITH:  In response to what -- is he finished?

10            THE COURT:  No.  I just wanted to know is a

11   foreclosure ad running in the paper?

12            MRS. SMITH:  Not that I know of, Your Honor.

13            THE COURT:  Thank you.

14            MR. STRICKLAND:  I do not see the Brunswick paper but

15   I did not think there was.

16            THE COURT:  I do not think there is either.

17            MR. STRICKLAND:  We would just ask that the order be

18   continued as it is and that the Court deny their motion to

19   vacate.

20            And like I say, if you would like some additional

21   briefing on behalf of Ms. Caplan and Mr. Linkowski, they will be

22   happy to do so.  Thank you, sir.

23            MRS. SMITH:  Your Honor, may I respond to some things

24   he just said?

25            THE COURT:  Yes, briefly, please.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 104 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:22 of 38

22

```
 1            MRS. SMITH:  Yes, sir.

 2            The issue isn't that maybe someone should or

 3   definitely someone should be able to foreclose.  I just want it

 4   to be the real party in interest, Your Honor.  And he is

 5   absolutely wrong about the 11th Circuit because I have a court

 6   order from a Miami District Court Judge recently and he set

 7   aside a foreclosure.  He set aside sale and final judgment of

 8   disclosure, granted the plaintiff alleged and maintained

 9   throughout this proceeding that it held the note by virtue of

10   assignment as stated in the last sentence of paragraph three in

11   the complaint.  However, at the time the final judgment was

12   entered both parties agreed that no assignment had, in fact,

13   taken place.  Therefore, this Court finds that there is a

14   factual issue that exists on how the plaintiff acquired this

15   mortgage or held the mortgage at the time the final judgment was

16   entered.  Therefore, the sale is set aside and the final summary

17   judgment is also set aside.  The defendant shall respond to the

18   complaint within 20 days from the date of this order.

19            THE COURT:  But that is a State Court order.

20            MRS. SMITH:  It is the District.  It is the 11th

21   Judicial Circuit in and for Miami, Dade.

22            THE COURT:  And Florida is a judicial foreclosure

23   state and somebody was trying to foreclose --
```

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 105 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:23 of 38

23

1        MR. STRICKLAND:  Oh, it is.  He said everything was

2   not 11th Circuit, so that is why I was going to say that did not

3   --

4        THE COURT:  That is a State Court case, though.

5        MRS. SMITH:  Okay, okay.

6        But *Greer* that he keeps bringing up, 11th Circuit,

7   they absolutely had an agreement, a servicing agreement, and

8   could produce the fact that the holder, --

9        THE COURT:  That was the issue.

10       MRS. SMITH:  That was the issue, that they had a

11  servicing agreement.  But the problem here, Your Honor, is they

12  claimed to be holder ab initio, which I think they are held to

13  from the beginning.  What you come up with in the beginning from

14  what I have read with the proof of claim is what you say you are

15  and they said that they were holder.  But then when they came

16  for the relief of stay, all of a sudden they became servicer and

17  took these, you know, high-minded - you know, that they are not

18  accountable for anything, and that is why --

19       THE COURT:  Well, is it the same entity exactly by

20  name?

21       MRS. SMITH:  Well, not by the documents.  By the

22  documents they were Countrywide Homes to begin with.

23       THE COURT:  Well, I am looking at the proof of claim B

24  in in the name of Countrywide Home Loans, Inc.

25       MRS. SMITH:  Inc.

1          THE COURT:  A mailing address says where name and

2     address where notices should be sent just says Countrywide, but

3     it is the same entity, Countrywide Home Loans, Inc.

4          MRS. SMITH:  Right, but they have no claim as being a

5     servicing agent.  Look at the second page.  It says holder.  It

6     says they are holding.

7          THE COURT:  I understand.  They took that position in

8     the proof of claim.

9          MRS. SMITH:  Okay.  And then tried to turn it around

10    whenever it came to the relief of stay.  Now, what I am

11    concerned about is --

12         THE COURT:  And neither you nor your counsel

13    challenged that at that time.

14         MRS. SMITH:  No, sir.  Well, see, he -- no.

15         THE COURT:  No, you did not.

16         MRS. SMITH:  I was not, I was not --

17         THE COURT:  You were represented by a lawyer in this

18    matter.

19         MRS. SMITH:  Yes, sir.  And he did not, but he, I

20    guess, assumed just like everyone else here that they were being

21    honest in saying it, but when you look at the documents, there

22    is absolutely nothing recorded in their name, nothing.  There is

23    nothing here, so how could they be the real party in interest?

24         THE COURT:  They represent themselves to be and there

25    was no challenge to that representation made in the motion for

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 107 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:25 of 38

25

1    relief from stay.   I understand many of your arguments that have

2    now been put forth in many courts on a challenge to a motion for

3    relief from stay.

4                MRS. SMITH:  Yes, sir.

5                THE COURT:  Or in the State Court system in a

6    challenge to a foreclosure.

7                MRS. SMITH:  Yes, sir.

8                THE COURT:  A party actually foreclosing does not have

9    the right to foreclose or did not have the right to foreclose.

10   And in the bankruptcy court system, no, judge, do not grant

11   relief from stay because the party who is bringing the motion

12   does not have standing.   The problem with that is I am dealing

13   with a consent order.

14               MRS. SMITH:  Uh-huh.

15               THE COURT:  Where all of these facts that you are

16   telling me about were on the record because that is where you

17   got it.   You got all of these issues that you now raise from the

18   record in this case that existed at the time the consent order

19   on stay relief was presented to me to sign and there was no

20   challenge made then.

21               MRS. SMITH:  Well but a mistake was made, Your Honor,

22   and by 60(b) --

23               THE COURT:  Who made the mistake?

24               MRS. SMITH:  Well, I do not know.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 108 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:26 of 38

26

1    THE COURT:  Who made the mistake?  You know, I do not
2  know if there was a mistake made.  I still do not know if there
3  was a mistake made.

4    MRS. SMITH:  Well, but they have not presented one
5  shred, not one recorded instrument has anything to say that they
6  do -- so somehow --

7    THE COURT:  Had you made that argument before on a
8  contested stay relief matter you might have gotten somewhere,
9  but at this juncture where parties have entered into a consent
10  order and the basis for reviewing that is a contractual basis --

11    MRS. SMITH:  But, Your Honor, I do not want to make a
12  big -- but I really did not know anything about the relief of
13  stay being in that.  I knew, I knew that they wanted to try to
14  sell the property.

15    THE COURT:  MRS. SMITH, you were represented by
16  counsel, very good counsel in your case.

17    MRS. SMITH:  I understand.

18    THE COURT:  That counsel bought another six months in
19  an effort to sell this property.  I do not know, and it was not
20  able to sell.  The trustee was not able to sell.  This was not a
21  case where you wanted six months in order to refinance a
22  property.  The trustee wanted to sell this property to pay off
23  the debts.

24    MRS. SMITH:  Yes, sir.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 109 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:27 of 38

27

1          THE COURT:  And to generate some income for the

2   benefit of unsecured creditors.

3          MRS. SMITH:  My concern about it, Your Honor, if I

4   may, is that the Movant here, and I sent that the trustee had

5   actually brought a case against him.  I do not know if you got a

6   chance to read it, but there has been a lot of deception with

7   this Countrywide and there was an actual case that was brought

8   by the trustee himself.

9          THE COURT:  Not this trustee.

10          MRS. SMITH:  No, sir.  The United States Trustee sues

11   Countrywide for abusive practices and frivolous pleadings in a

12   case.

13          THE COURT:  That is in the Northern District of

14   Georgia.

15          MRS. SMITH:  Yes, sir.

16          THE COURT:  That is Mr. Walton, the U.S. Trustee.

17          MRS. SMITH:  But what I am saying is a lot of the

18   things that I am telling you now, it has gone on so many times

19   that he brought a bankruptcy case against them because they were

20   not who they said they were.  And I can give you another copy of

21   that, but the problem is that what they have done are

22   participants in a securitization scheme and they have devised

23   business plans to reap millions of dollars in profits at the

24   expense of debtors and other investors in certain trust funds.

25   Without the knowledge of the debtors the loan seller entered

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 110 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:28 of 38

28

1   into an assignment and assumption agreements with one or more

2   parties and pooling and service agreements with one or more

3   parties.

4           THE COURT:  Who did that?

5           MRS. SMITH:  What has gone on here.  It was MERS.  It

6   is what Countrywide is; it is what happened in this case.  And

7   so that this is the same situation, including but not limited to

8   mortgage aggregator, and then at the time of the recording the

9   source of the funding and the lender was a different entity than

10  the nominal mortgagee or beneficiary under the security deed and

11  was neither named nor disclosed in any fashion.  So it was not

12  your normal lending situation.  They have what a lot of people

13  have already found to be an illegal scheme where they just come

14  in.  Debtors do not know what version of documentation was

15  presented to the mortgage aggregator and if the mortgage

16  aggregator took one or more varying descriptions of the alleged

17  loan documents.  I mean, you can call them loan documents, but

18  it was more of a scheme into more than one pool of assets which

19  was eventually sold for the purpose of securitizing the assets

20  of the pool which included the subject loan transaction.  There

21  is no assignment of the subject mortgage in the county records.

22  The pool assets including debtor's loan transaction, if you can

23  call it that, were pledged completely to the owners of the asset

24  backed securities.  All of the securities were then transferred

25  to the seller, who in turn sold the securities in varying

1  denominations, each of which had slightly different terms,
2  depending on the segment of the pool secured which secured an
3  investment.  If there is a holder in due course of the debtor's
4  note arising from the subject loan transaction, it is the
5  investors who purchased said securities.  Some of said
6  securities are held by the original purchaser thereof.  Others
7  were sold at weekly auction markets.  Others were paid by re-
8  sales of property that were secured.  Others were paid from
9  prepayments.  Others were paid by sale at full or partial price
10 to the investment bank that originated the entire transaction,
11 some of which might be held by the Federal Reserve as a non-
12 recourse collateral and others might have been paid by one or
13 more of the insurance credit default swaps, cross-guarantees,
14 cross collateralization of the segment of the pool that secured
15 the relevant investor who owned certificates backed by a pool of
16 assets.  It is doubtful to say that Movant has any knowledge or
17 has made any effort to determine whether the putative holders in
18 due course have been paid in whole or in part.  It can only be
19 said with certainty that the Movant seeks to enforce the loan
20 documents for which they have already been paid, which a lot
21 have already considered in an illegal scheme.  Movant seeks to
22 add insult to injury by demanding ownership of the property in
23 addition to the receipt of payment in full long before there was
24 even a default.  In order for the Movant to maintain legal
25 standing and connection with the subject loan transaction they

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 112 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:30 of 38

30

1    are required to show the entire chain of title of the note and

2    the entire chain of title of the mortgage.  The fact remains

3    that any relief awarded Movant, any standing allowed to the

4    Movant would expose debtors to multiple claims and suits from an

5    unknown number of parties and entities that all claim possibly

6    correctly to the holders in due course.  Any grant of

7    certificate of title to an entity other than the debtor or the

8    nominal mortgagee creates an incurable defect in the title.

9    There is no recording of any document in the county records that

10   would authorize them to proceed.

11          We just got this yesterday and I am going to show it

12   to you.  You do not know what is happening day to day.  Here is

13   somebody else, another name of a servicing agent in this one.

14   It is regarding insurance.  You do not know who.

15          THE COURT:  Show this to Mr. Strickland, please.

16          MRS. SMITH:  Someone is entitled to do it.  I just

17   want it to be the real party in interest, Your Honor.

18          THE COURT:  Thank you.

19          Mr. Smith, do you want to say something?

20          MR. SMITH:  It will be quick.

21          THE COURT:  All right, sir.

22          MR. SMITH:  In the beginning of all of this stuff --

23          THE COURT:  I need you to stand in front of the

24   microphone, sir, to make sure the court reporter can pick up

25   your comments.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 113 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:31 of 38

31

1    MR. SMITH:  In going through all these cases and

2    listening to everything and talking with different people around

3    the country and folks with our situation on this, they said

4    Jerry, your real problem here is --

5    MR. STRICKLAND:  Your Honor, we would object to

6    whatever they say.

7    THE COURT:  I am allowing him to argue here.  This is

8    all argument.  This is not evidence.  Go ahead.

9    MR. SMITH:  We are in a bankruptcy court and the

10   trustee has the right to do and the judge - we do not own

11   anything anymore, so y'all's responsibility is to sell

12   everything we have got to get the creditors the most money you

13   can get them hopefully to pay them in full.  Okay.  That is the

14   Court.  We are here.  What we are trying to do is to make sure

15   whatever is sold and who buys it, that it goes to the right

16   people.  And the problem with us and the Court is, in my view,

17   is that they really do not have the proof.  They might have it

18   somewhere and they might be able to find it.  A lot of these

19   people have not been able to find it and the problem is they

20   foreclose, they advertise in the paper, they sell the property,

21   they get some money.  No one else gets any money.  Then all of a

22   sudden a month later, a year later, it shows up, we would like

23   for you to pay us a million seven fifty-seven and three hundred

24   and some thousand dollars and here is our note.  And, they did

25   not have the right to do it because they did not have the

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 114 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:32 of 38

32

1  agreement to the note holder, so all I am saying or asking is

2  that, yes, someone should try to sell the property.  Yes, we do

3  owe someone the money, but I really would like to request that

4  if the Court could see it, I understand all that other, but that

5  we could find out who really has that note and who the servicing

6  agent is and present it.  And then when they present it, do

7  whatever they want to, but we do not want to come for the Court

8  to have a problem, us to have a problem later on that someone

9  shows up from Pakistan or wherever they are going to show up

10  from saying look, what are you doing and they got all the money.

11  That is all.

12            THE COURT:  Any other comments?

13            MR. STRICKLAND:  Yes, Your Honor.  This case was

14  originally filed in April of '07.  It was converted.  That was

15  an 11, it was converted to a 7 a year ago and so we have been

16  rocking along for over two years as it is.  As Mr. Orange bought

17  them a little over two years, twenty-five months so far, without

18  them having to do anything and I am just saying that that is

19  long enough for this to go on.  The cases she just cited,

20  anything Florida is a state case, that is a judicial foreclosure

21  state.  There has been nothing to attach this particular loan to

22  the case she mentioned in the Northern District of Georgia and

23  we would ask that the Court deny the motion to vacate.

24            Thank you, sir.

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 115 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:33 of 38

33

1          MRS. SMITH:  Your Honor, you never got to look at

2     this.

3          THE COURT:  Any objection to my considering the

4     document as additional debtor's exhibit?

5          MR. STRICKLAND:  I do not know there is any relevance

6     to this case.

7          THE COURT:  Does it have to do with this house, this

8     property?

9          MRS. SMITH:  Yes, sir.  Yes, sir, it is the loan and

10    all of a sudden there is another home loan servicing company.

11         THE COURT:  Let her mark it as the next exhibit.

12         MRS. SMITH:  BAC Home Loan Servicing.  It is regarding

13    insurance on it but now they call it another servicing company

14    and that is the point here.  There may be zillions of other

15    people out there like this.

16         THE COURT:  Mark it as Exhibit C and it is Debtor's

17    Exhibit C.  It is admitted.  Let me see it, please.

18         Anything else?

19         MRS. SMITH:  It is in the text, Your Honor, where it

20    says BAC.  Now they are referring -- and it also says in there

21    that they contacted us many times.  This is the first time.  We

22    just got it yesterday.  It is why it was not mentioned at all in

23    what I said.  We just received it.

24         THE COURT:  Thank you.

25         Well, first, let me tell you what we are not dealing

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 116 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:34 of 38

34

1   with.  We are not dealing with a judicial foreclosure.  In other

2   words, whether or not I should enter judgment of foreclosure

3   against the owners of the property, Mr. and Mrs. Smith, in favor

4   of Countrywide Home Loans, Inc. as serving agent for HSBC Bank

5   USA National Association as Trustee for the Holders of BCAP, LLC

6   Trust 2006-AA2, its successors or assigns.  I am not dealing

7   with a motion for relief from stay in the bankruptcy court

8   brought by that entity.  What I am dealing with is a motion

9   brought by the debtors to set aside a prior consent order

10  entered into by counsel representing the debtors and the Trustee

11  and counsel representing the Movant in the named entity that I

12  recited before.

13          In order for me to set aside a consent order

14  contractual standards apply.  This is a contractual agreement

15  entered into between contesting parties in this motion in the

16  original motion for relief from stay.  The standards are those

17  standards of Rule 9024 of the bankruptcy rules, which

18  incorporate Rule 60 and applicable here is 60(b), and I must

19  determine based upon what I have before me whether there was a

20  mistake, inadvertent surprise or excusable neglect, whether

21  there was newly discovered evidence that with reasonable

22  diligence could not have been discovered in time to move for a

23  new trial under Rule 59(b), whether there was fraud,

24  misrepresentation or misconduct by the opposing party, whether

25  the judgment is void, whether the judgment has been satisfied,

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 117 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:35 of 38

35

1   released, or discharged.  It is based on an earlier judgment

2   that has been reversed or vacated or applying it prospectively

3   is no longer equitable or any other reason that justifies

4   relief.  I find none here.  The debtors who are now acting pro

5   se were represented by their counsel in their original Chapter

6   11 case and in after Chapter 7 conversion in negotiating this

7   settlement and consent order of a motion for relief from stay.

8   The representations made by the Movant in the motion for relief

9   from stay were not challenged by any party in interest and only

10  now is there a challenge that Countrywide Home Loans, Inc. has

11  failed to prove its status as servicing agent.  Well, the time

12  for proof has passed.  The time for proof was at the time of the

13  hearing on the motion for relief from stay which was resolved by

14  this consent order entered into on behalf of the debtors by

15  their counsel.  Which, by the way, I find to be perfectly

16  reasonable.

17          MRS. SMITH:  Judge, --

18          THE COURT:  We are done.  You are done, Mrs. Smith.

19          MRS. SMITH:  Oh, I am done.

20          THE COURT:  This is my turn now.

21          MRS. SMITH:  Okay.

22          THE COURT:  There was no mistake, inadvertent surprise

23  or excusable neglect.  There was no fraud here.  There is no

24  evidence of fraud.  The evidence of fraud alleged here is the

25  inability of Countrywide Home Loans, Inc. to prove its status as

```
1   servicing agent.  They do not have to prove their status as
2   servicing agent subsequent to the agreement entered into by the
3   parties as part of the consent order.  The *Greer* case as cited
4   by Countrywide Home Loans, Inc. in its opposition to the motion
5   to vacate, that is *Greer, et al versus O'Dell.*  It is 11th
6   Circuit case, which is binding precedent on this Court, found
7   that 305 Fed. 3rd, starting at page 1297, the 11th Circuit has
8   unequivocally stated as was an issue before the District Court
9   the sole issue before us is whether a loan servicer is a real
10  party in interest with standing to conduct through licensed
11  counsel the legal affairs of the investor related to the debt
12  that it services.  We answer this question in the affirmative.
13  A loan servicer has standing.  Countrywide Home Loans, Inc. in
14  the motion for relief from stay represented itself to be that
15  servicing agent.  The parties consented to that standing in the
16  consent order.
17          Additionally, I am reluctant to set aside orders
18  generally and especially consent orders in a bankruptcy case
19  because those consent orders, orders generally, affect all
20  parties to the case, not simply the parties to the order itself.
21  Other parties in interest adjust their expectations, adjust
22  their strategy in a case based upon orders entered in related
23  matters in that same case.  In this instance, a consent order
24  was entered that afforded the Chapter 7 Trustee an additional
25  six months to market this property for sale in order to generate
```

Case 2:19-cv-00073-LGW  Document 7-4  Filed 08/01/19  Page 119 of 198
Case:07-20244-MJK  Doc#:246  Filed:09/01/09  Entered:09/01/09 08:38:30  Page:37 of 38

37

1    money not for the debtors but for the benefit of unsecured

2    creditors.  What decisions those other creditors may have made

3    in terms of their conduct in this case may have and in all

4    likelihood was impacted by that agreement and I am not inclined

5    to set it aside unless there is clear evidence to support a

6    basis for the relief from this order, again, a consent order

7    entered into by the parties through counsel.

8         Therefore, having determined that the Movant here, Mr.

9    and Mrs. Smith, individually, have failed to establish by a

10   preponderance of the evidence any basis for a grant of relief

11   from the consent order now complained of under standards of Rule

12   60(b) of the Federal Rules of Civil Procedure, the motion is

13   ordered denied, and I will enter the appropriate order.

14        Thank you.

15        MR. STRICKLAND:  Thank you, Your Honor.

16        MR. SOUTHER:  Thank you, Your Honor.

17        MRS. SMITH:  Thank you, Your Honor.

18    (PROCEEDINGS CONCLUDED)

19

20

21

22

23

24

25

Case 2:19-cv-00073-LGW   Document 7-4   Filed 08/01/19   Page 120 of 198
Case:07-20244-MJK   Doc#:246   Filed:09/01/09   Entered:09/01/09 08:38:30   Page:38 of 38

38

| | |
|---|---|
| 1 | **CERTIFICATION** |
| 2 | I certify that the foregoing is a true and correct |
| 3 | transcript of the proceedings from the official electronic |
| 4 | recording of the proceedings in the above-entitled matter. |
| 5 | |
| 6 | This the 31st day of August, 2009. |
| 7 | |
| 8 | |
| 9 | |
| 10 | /s/ C. Joan Mobley |
| 11 | Official Federal Court Reporter |
| 12 | For the Honorable Anthony A. Alaimo |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

# UNITED STATES BANKRUPTCY COURT
## Southern District of Georgia

---

In re:

**Marvin B. Smith III and Sharon H. Smith**
  Debtors

Case No.:  07–20244–JSD

Judge:  John S. Dalis

Chapter:  7

---

## NOTICE OF FILING OF TRANSCRIPT AND RIGHT TO REQUEST REDACTION

Courts making electronic documents remotely available to the public, whether documents are filed electronically or converted to electronic form, shall make electronic transcripts of proceedings remotely available to the public if such transcripts are prepared.

Notice is hereby given that a transcript of the hearing on Motion to Vacate Consent Order held on May 28, 2009 , requested by Marvin B. Smith III and Susan H. Smith was filed on September 1, 2009 . Counsel for all parties and pro se litigants are advised that:

Pursuant to the Judicial Conference's privacy policy each attorney for a party (or in the case of an unrepresented party, the party should perform the tasks these procedures assign to the attorneys) is required to review a transcript for information that should be redacted under the Judicial Conference's privacy policy – social security numbers should be redacted to show only the last four digits; birth dates should contain only the year of birth; individuals known to be minors should be referred to with initials and financial account numbers should be redacted to the last four digits.

Within ten (10) days of the date of this Notice of the filing by the reporter/transcriber of the official transcript with the Clerk's Office pursuant to 28 U.S.C. § 753, each party shall inform the Court, by filing a Notice of Intent to Request Redaction of personal data identifiers from the electronic transcript of the Court proceeding. The filing of this notice triggers the procedures set out below. If no such notice is filed within the allotted time, the Court will assume redaction of personal data identifiers from the transcript is not necessary, and the transcript may be made electronically available pursuant to the Judicial Conference policy on privacy and public access to electronic case files on the ninety–first day after the date the original transcript was filed.

An attorney or pro se litigant is only responsible for reviewing for redaction, and providing any redactions to the court reporter for the opening and closing statements made on behalf of the party he represents, any statements made by the party, and the testimony of any witnesses called by the party.

If a Notice of Redaction is filed by any party, following the filing of the official transcript with the Clerk's Office, the official transcript is not to be made remotely electronically available to the general public. Within thirty (30) calendar days of the date of the Notice of Intent to Request Redaction, or longer if the Court so orders, the parties shall submit to the Court and court reporter/transcriber a Statement of Redaction indicating where the following personal data identifiers appear in the transcript.

The court reporter/transcriber shall partially redact these personal data identifiers from the electronic transcript.

During the thirty (30) day period, or longer if the Court so orders, attorneys or pro se litigants may move the Court for any additional redactions to the transcript. The transcript shall not be electronically disseminated until the Court has ruled upon any such motion.

Dated **September 1, 2009**

*Samuel L. Kay, CLERK*
United States Bankruptcy Court
PO Box 8347
Savannah, GA 31412

*GASB–65 (rev 11/07)* **AR**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF GEORIGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| MARVIN B. SMITH, III AND | ) | CASE NO. 07-20244-JSD |
| SHARON H. SMITH | ) | |
| Debtors, | ) | |
| | ) | CONTESTED MATTER |
| COUNTRYWIDE HOME LOANS, INC. | ) | |
| AS SERVICING AGENT FOR HSBC BANK | ) | |
| USA, NATIONAL ASSOCIATION AS | ) | |
| TRUSTEE FOR THE HOLDERS OF BCAP | ) | |
| LLC TRUST 2006-AA2 | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARVIN B. SMITH, III AND SHARON H. | ) | |
| SMITH, R. MICHAEL SOUTHER, TRUSTEE | ) | |
| | ) | |
| Defendants | ) | |

## MOTION TO CONTINUE HEARING

COMES NOW, BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE

HOME LOANS SERVICING, LP AS SERVICING AGENT FOR THE BANK OF NEW

YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE

CERTIFICATEHOLDERS OF CWHEQ, INC., HOME EQUITY LOAN ASSET-BACKED

CERTIFICATES, SERIES 2006-S9[1], and files this Motion to Continue Hearing showing

this Court as follows:

---

[1] During the pendency of this litigation, Marvin B. Smith and Sharon H. Smiths' loan was transferred to a new entity and Countrywide Home Loans, Inc. was purchased by Bank of America.

{215368.0020\S0273519_1}                 1

On April 15, 2009, Marvin B. Smith and Sharon H. Smith (hereinafter "Debtors") filed a Motion to Vacate Consent Order. This Court denied their Motion, at which time the Debtors appealed the decision to the District Court. On August 2, 2010 the District Court affirmed the Bankruptcy Court's decision. On or about August 5, 2010 Debtors appealed to the Eleventh Circuit. On December 14, 2010, due to clerical error by the Eleventh Circuit the Debtors' appeal was dismissed for want of prosecution for the Debtors failure to pay the filing and docketing fees. Upon the dismissal of their appeal, Debtors again filed a Motion to Reconsider incorrectly with the District Court which Debtors moved to withdrawal their filing. The Debtors then re-filed their Motion to Reconsider with this Court on December 28, 2010. On December 29, 2010, the Eleventh Circuit Court of Appeals reinstated Debtors' appeal. Please see letter from Eleventh Circuit Court of Appeals attached hereto as Exhibit "A".

A hearing is scheduled for February 10, 2011 as it relates to Debtors Motion to Reconsider. Since the issues raised in Debtors Motion to Reconsider are the same as the issues pending before the Eleventh Circuit Court of Appeals, the hearing in the Bankruptcy Court must be reset until the issues are resolved by the Eleventh Circuit Court of Appeals.

{215368.0020\S0273519_1}                              2

Respectfully submitted this 7th day of February, 2011.

/s/ Peter L. Lublin
PETER L. LUBLIN
Georgia Bar No. 460461
BRIAN LINKOWSKI
Georgia Bar No. 141403
ATTORNEYS FOR DEFENDANTS
BAC HOME LOANS SERVICING, LP f/k/a
COUNTRYWIDE HOME LOANS
SERVICING, LP AS SERVICING AGENT
FOR THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK, AS
TRUSTEE FOR THE
CERTIFICATEHOLDERS OF CWHEQ, INC.,
HOME EQUITY LOAN ASSET-BACKED
CERTIFICATES, SERIES 2006-S9.

Rubin Lublin Suarez Serrano, LLC
3740 Davinci Court, Suite 400
Norcross, GA 30092
(770) 246-3303 (Telephone)
(404) 601-5415 (Facsimile)

{215368.0020\S0273519_1}                    3

180

## CERTIFICATE OF SERVICE

This is to certify that Countrywide has this day served all parties in the foregoing

matter with a copy of the **MOTION TO CONTINUE HEARING**

by ECF and by placing same in the United States Mail with sufficient postage affixed

thereon to assure delivery to:

R. Michael Souther                          Marvin B. Smith, III
P.O. Box 978                                P.O. Box 978
Brunswick, GA 31521                         Sea Island, GA 31561
U.S. Trustee
Office of the U.S. Trustee
222 West Oglethorpe Ave., Ste. 302
Savannah, GA 31401

Sharon H. Smith
P.O. Box 31306
Sea Island, GA 31561

This 7th day of February, 2011.

                          /s/ Peter L. Lublin
                          PETER L. LUBLIN
                          Georgia Bar No. 460461
                          BRIAN LINKOWSKI
                          Georgia Bar No. 141403
                          ATTORNEYS FOR DEFENDANTS
                          BAC HOME LOANS SERVICING, LP f/k/a
                          COUNTRYWIDE HOME LOANS SERVICING, LP
                          AS SERVICING AGENT FOR THE BANK OF NEW
                          YORK MELLON FKA THE BANK OF NEW
                          YORK, AS TRUSTEE FOR THE
                          CERTIFICATEHOLDERS OF CWHEQ, INC.,
                          HOME EQUITY LOAN ASSET-BACKED
                          CERTIFICATES, SERIES 2006-S9.
                          TRUSTEE FOR THE HOLDERS OF BCAP LLC
                          TRUST 2006-AA2

{215368.0020\S0273519_1}                    4

Rubin Lublin Suarez Serrano, LLC
3740 Davinci Court, Suite 400
Norcross, GA 30092
(770) 246-3303 (Telephone)
(404) 601-5415 (Facsimile)

Case 2:19-cv-00073-LGW  Document 7-4  Filed 08/01/19  Page 127 of 198
Case:07-20244-MJK  Doc#:396  Filed:02/07/11  Entered:02/07/11 10:15:48  Page:6 of 7
Case 2:09-cv-00140-LGW-JEG  Document 37  Filed 01/03/11  Page 1 of 2

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 29, 2010

Scott L. Poff
United States District Court
801 Gloucester Street, Suite 220
Brunswick, GA 31520



Appeal Number: 10-13671-C
Case Style: Marvin Smith, III, et al v. Countrywide Home Loans, Inc.
District Court Docket No: 2:09-cv-00140-LGW-JEG
Secondary Case Number: 07-20244-BKC-JSD

The referenced appeal was dismissed on 12/14/2010.

This dismissal was issued in error and this appeal has been clerically reinstated.

The clerk of the court or agency shown above is requested to acknowledge receipt on the copy
of this letter enclosed to the clerk.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Deborah H. Hall, C
Phone #: (404) 335-6189

REINST-1 Appeal Reinstated



EXHIBIT
A
183

Case 2:19-cv-00073-LGW  Document 7-4  Filed 08/01/19  Page 128 of 198
Case:07-20244-MJK  Doc#:386  Filed:02/07/11  Entered:02/07/11 10:15:48  Page:7 of 7
Case 2:09-cv-00140-LGW-JEG  Document 37  Filed 01/03/11  Page 2 of 2

**10-13671**

Scott L. Poff
United States District Court
801 Gloucester Street, Suite 220
Brunswick, GA 31520

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| In the matter of: | ) | |
| **SMITH, MARVIN B., III and** | ) | **CHAPTER 7** |
| **SMITH, SHARON H.,** | ) | **CASE NO. 07-20244-JSD** |
| Debtor(s), | ) | |

### TRUSTEE'S ABANDONMENT OF FOUR (4) REAL PROPERTIES

**COMES NOW R. Michael Souther,** duly qualified and acting Trustee of the estate of the above-captioned Debtors, and after thorough investigation, abandons the following real property of the Debtors, to-wit:

      1) House and Lot, 121 West King Street, Edenton, NC
      2) Cottage 526 and Lot, Sea Island, Georgia
      3) Condominium 311, 10th Street, St. Simons Island, GA
      4) Lot 6, Old Seaside, St. Simons Island, GA

It is the Trustee's belief that there is no equity for the estate in the heretofore identified real property, and that the aforementioned real property is burdensome and of inconsequential value to the estate. Relief from stay has previously been granted for all of the aforementioned real properties.

_____Dated this April 18, 2012.

                                       */s/ R. Michael Souther* *_____
                                     R. MICHAEL SOUTHER
                                     Chapter 7 Trustee

P.O. Box 978
Brunswick, GA 31521
(912) 265-5544

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| In the matter of: | ) | |
| **SMITH, MARVIN B., III and** | ) | **CHAPTER 7** |
| **SMITH, SHARON H.,** | ) | **CASE NO. 07-20244-JSD** |
| Debtor(s), | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **Trustee's Abandonment of Four (4) Real Properties** by placing a copy of the same in the United States Mail with sufficient postage affixed thereto to assure delivery upon:

Marvin B. Smith, III and
Sharon H. Smith
Post Office Box 31306
Sea Island, GA  31561

Electronic service will be received by the following  parties who are entitled to receive such service in this case through the electronic filing system of this Court:

| | |
|---|---|
| Matthew Mills, Esq. | William S. Orange, III, Esq. |
| Assistant U. S. Trustee | Attorney for Debtor |
| Johnson Square Business Center | 1419 Newcastle St. |
| 2 East Bryan Street, Suite 725 | Brunswick, GA  31520 |
| Savannah, GA  31401 | orangelaw@bellsouth.net |
| Ustpregion21.sv.ecf@usdoj.gov | |

Dated this April 18, 2012.

*/s/ R. Michael Souther *
R. MICHAEL SOUTHER
Chapter 7 Trustee

P.O. Box 978
Brunswick, GA 31521
(912) 265-5544
Georgia State Bar No. 668325

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

C:\BMSW\QUIKDOCS\07-20244\__proposed abandonment of real properties.wpd

FILED

2012 SEP 17 PM 3: 26

U.S. BANKRUPTCY COURT
BRUNSWICK, GA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

IN RE:                          )      CHAPTER 7 CASE
MARVIN B. SMITH III             )      NUMBER 07-20244
SHARON H. SMITH                 )
                                )
     Debtors                    )
_____)
MARVIN B. SMITH III             )
SHARON H. SMITH                 )
                                )
     Debtors/Movants            )
vs.                             )
                                )
BAC HOME LOANS SERVICING LP     )
f/k/a COUNTRYWIDE HOME LOAN     )
SERVICING LP, AS SERVICING      )
AGENT FOR THE BENEFIT OF        )
THE BCAP 2006-AA TRUST          )
                                )
     Creditor/Respondent        )
_____)
BAC HOME LOANS SERVICING LP,    )
f/k/a COUNTRYWIDE HOME LOAN     )
SERVICING LP, AS SERVICING      )
AGENT FOR THE BENEFIT OF        )
THE BCAP 2006-AA TRUST          )
                                )
     Creditor/Movant            )
                                )
vs.                             )
                                )
MARVIN B. SMITH III             )
SHARON H. SMITH                 )
                                )
     Debtors/Respondents        )

**OPINION AND ORDER DISMISSING MOTION TO RECONSIDER WITH PREJUDICE
AND GRANTING MOTION FOR SANCTIONS**

AO 72A
(Rev. 8/82)

187

This matter is before me on the Motion to Reconsider
(ECF No. 377)[1] by pro se Debtors Marvin B. Smith III and Sharon H.
Smith, with opposition by Creditor BAC Home Loans Servicing LP,
f/k/a Countrywide Home Loan Servicing LP, as servicing agent for
the benefit of the BCAP 2006-AA Trust ("BAC"); and on the related
Motion for Sanctions (ECF No. 527) by BAC, with opposition by the
Smiths. The Smiths seek reconsideration of my Order Denying
Motion to Vacate Consent Order ("Order Denying Motion to Vacate")
(ECF No. 206), which was entered three years ago and appealed by
the Smiths to the United States District Court for the Southern
District of Georgia and then to the Eleventh Circuit Court of
Appeals, which dismissed the appeal as frivolous. The Smiths also
seek disallowance of proofs of claim filed by Countrywide Home
Loans Inc. ("Countrywide") in this bankruptcy case.

The dismissal in the Eleventh Circuit having
constituted a ruling on the merits of the appeal, the Order
Denying Motion to Vacate is now a final order not subject to
further appeal. As a final, unappealable order, the Order Denying
Motion to Vacate forecloses further litigation of all issues that
were raised or could have been raised in the Motion to Vacate.
The Motion to Reconsider is therefore dismissed on the ground of

---

[1] Unless otherwise noted, all docket citations refer to the docket in this
bankruptcy case.

res judicata. The Motion for Sanctions is granted to deter future abusive filings.

## FINDINGS OF FACT

On April 2, 2007—more than five years ago—the Smiths through counsel filed this bankruptcy case under chapter 11 of the Bankruptcy Code. Countrywide filed two proofs of claim in the case, describing both claims as secured by real property the Smiths now identify as their home at 311 10th Street, Unit #B, St. Simons Island, Georgia.[2] Approximately one year after the filing of the petition, the case was converted to a case under chapter 7.

On September 25, 2008, Countrywide filed a motion for relief from the automatic stay as to the subject real property, bringing the motion in its own name including its successors and assigns. (Dkt. No. 154.) On November 12, 2008, a **CONSENT ORDER** was entered in which the Smiths through counsel agreed to a modification of the automatic stay ("Consent Order") as to the property. (ECF No. 174.) Under the terms of the Consent Order,

---

[2] At the time the case was filed, the Smiths lived at Cottage 526, Sea Island, Georgia. (ECF No. 1.) The Sea Island property has similarly been the focus of litigation by the Smiths against another secured creditor, Atlantic Southern Bank. The history of that litigation, through three adversary proceedings and ensuing frivolous appeals over the course of more than two years, is recounted in detail in the order of dismissal with prejudice, <u>Smith v. Atlantic Southern Bank</u>, A.P. No. 09-02033, ECF No. 50 (Bankr. S.D. Ga. Jan. 31, 2011), <u>aff'd</u>, No. 2:11-cv-00057, ECF No. 31 (S.D. Ga. May 3, 2012). The Smiths' further appeal is currently pending. <u>See</u> <u>Smith v. Atlantic Southern Bank</u>, No. 12-12973 (11th Cir. filed June 6, 2012).

the chapter 7 Trustee would market the property for six months (180 days). If the Trustee could not find a buyer during that time, the automatic stay would be lifted without further hearing, and Countrywide could proceed with its remedies under state law. It is this Consent Order that the Smiths have spent the past three years attempting to undo.

### I. The Litigation: 2009 – 2012.

On April 15, 2009, five months after they agreed to the Consent Order, the Smiths, now proceeding pro se, filed a motion to vacate the Consent Order ("Motion to Vacate") (ECF No. 192) under Rule 60(b) of the Federal Rules of Civil Procedure, made applicable in bankruptcy by Rule 9024 of the Federal Rules of Bankruptcy Procedure. The Smiths' argument, then as now, was that Countrywide misrepresented itself as the owner of the Smiths' mortgage and that Countrywide did not have standing to move for relief from the automatic stay. (Id. at 2.)

I denied the Motion to Vacate from the bench at the close of the hearing on May 28, 2009. Eight days later and preceding entry of a written order, the Smiths filed a notice of appeal to the District Court. (ECF No. 207.)

The District Court affirmed the Order Denying Motion to Vacate and also denied the Smiths' request to reconsider Countrywide's claims. Smith v. Countrywide Home Loans Inc., No.

4

2:09-cv-00140, ECF No. 18 (S.D. Ga. July 30, 2010). The Smiths then filed a notice of appeal from the District Court's order to the Eleventh Circuit and a motion for leave to proceed in forma pauperis, which the District Court denied, deeming the appeal "frivolous and without merit," id. at ECF No. 26. Undeterred, the Smiths sought leave to proceed in forma pauperis by motion filed in the Eleventh Circuit, where leave was also denied because the appeal was frivolous. Smith v. BAC Home Loans Servicing LP, No. 10-13671 (11th Cir. Nov. 24, 2010) (order denying leave to proceed in forma pauperis). On December 7, 2010, the Smiths moved for reconsideration of the Eleventh Circuit's order. The next day, the Smiths submitted to the bankruptcy Clerk's office the Motion to Reconsider that is before me now.[3]

The Smiths acknowledged in the Motion to Reconsider that their appeal of the District Court's order of July 30, 2010, was still pending in the Eleventh Circuit. (ECF No. 377 at 3.) Thus began more than a year of the Smiths attacking the Order Denying Motion to Vacate simultaneously in the Eleventh Circuit and in this Court, with Countrywide forced to defend in both forums.

The Eleventh Circuit did in fact deny reconsideration of the Smiths' motion to proceed in forma pauperis, and on

---

[3] Initially, the bankruptcy Clerk's office forwarded the Motion to Reconsider to the District Court, relying on what turned out to be an error in the case caption. The Smiths filed the Motion to Reconsider with a corrected caption on December 14, 2010.

December 14, 2010, the appeal was dismissed for failure to pay the filing fee. On March 7, 2011, the Smiths paid the filing fee and the appeal was reinstated.

In the interim, between the date of dismissal in the Eleventh Circuit and the date the appeal was reinstated, the parties filed a flurry of pleadings in the bankruptcy case. (See ECF Nos. 385, 387, 398, 409.) The Motion to Reconsider was twice set for hearing (ECF Nos. 388, 420), but then was continued indefinitely by order entered April 8, 2011 (ECF No. 476), pending the Eleventh Circuit's resolution of the issues on appeal.

Among the filings during the interim period was a Motion to Continue Hearing by BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing LP as Servicing Agent for the Bank of New York Mellon f/k/a the Bank of New York, as Trustee for the Certificateholders of CWHEQ, Inc., Home Equity Loan Asset-Backed Certificates, Series 2006-S9. (ECF No. 396.) A footnote stated that Countrywide Home Loans Inc. had been purchased by Bank of America.

On April 22, 2011, Countrywide filed a Notice of Substitution of Parties ("Motion for Substitution") in the Eleventh Circuit, stating that during the pendency of the litigation, the servicer of the Smiths' loan had changed to BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing

LP. The Motion for Substitution further stated that the loan itself had been transferred, first to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWHEQ, Inc., Home Equity Loan Asset-Backed Certificates, Series 2006-09; and subsequently to the BCAP 2006-AA Trust.[4]

The Motion for Substitution was granted over the Smiths' opposition. In the same order and on the court's own motion, the Eleventh Circuit dismissed the appeal "as frivolous and entirely without merit." No. 10-13671 (11th Cir. July 20, 2011). The Smiths moved for reconsideration, arguing that the court had not ruled on the merits of the appeal. Reconsideration was denied. Id. (11th Cir. Oct. 11, 2011).

Believing that the dismissal order of July 20, 2011, had resolved with finality the issues on appeal, BAC on July 29, 2011, filed a motion in the bankruptcy case to dismiss the Motion to Reconsider. (ECF No. 500.) BAC noted in the motion that the Eleventh Circuit had granted the Motion for Substitution, and BAC attached the order to the motion as an exhibit. (Id.) More filings in the bankruptcy case followed: the Smiths' reply in opposition to BAC's motion to dismiss (ECF No. 501) and BAC's supplement to its motion to dismiss (ECF No. 508).

---

[4] Under Rule 201(b)(2) of the Federal Rules of Evidence, I take judicial notice only of the substance, not the truth, of the Motion for Substitution.

AO 72A
(Rev. 8/82)

On December 29, 2011, eleven days before the deadline to file a petition for a writ of certiorari to the United States Supreme Court, the Smiths submitted to Justice Clarence Thomas an application to extend time to March 9, 2012. The extension was granted on January 5, 2012. Smith v. Countrywide Home Loans Inc., No. 11A642 (U.S. Jan. 5, 2012) (granting application to extend time). Notwithstanding, litigation in the bankruptcy case continued unabated.

On January 3, 2012, the Smiths filed in the bankruptcy case a response to BAC's supplement to its motion to dismiss ("Response"), asserting for the first time that an exhibit attached to one of the Smiths' earlier filings raised new evidence of fraud upon the court that was not part of the record in the Eleventh Circuit. (ECF No. 512 at 2.) The attachment was a one-page printout dated January 1, 2011, from a website identified on the printout as the MERS Servicer Identification System. The printout showed BAC Home Loans Servicing LP as "servicer" and Barclays Bank PLC as "investor" for a loan the Smiths say is theirs. (ECF No. 387 at 22.)

On February 9, 2012, BAC filed a motion for sanctions against the Smiths under Bankruptcy Rule 9011 ("Motion for Sanctions") (ECF No. 527). BAC asserted that the Smiths' continued litigation in this Court, pressing arguments that the Eleventh Circuit had three times deemed frivolous on appeal,

AO 72A
(Rev. 8/82)

could only be viewed as harassment. In compliance with the 21-day safe harbor provision under Bankruptcy Rule 9011(c)(1)(A), BAC served the Motion for Sanctions on the Smiths on January 17, 2012.

The Smiths did not withdraw the Motion to Reconsider or any of the other offending filings. The Smiths instead filed a response, asserting that BAC was a fraudulent substitution for Countrywide and therefore lacked standing to bring the Motion for Sanctions; and further, that the Smiths' filings were not frivolous. (ECF No. 534.)

Meanwhile, the extended time for filing a petition for a writ of certiorari continued to run. Four days before the extended deadline and ten days before the Motion to Reconsider and the Motion for Sanctions were set to be heard in this Court, the Smiths moved for my recusal from this matter and from the bankruptcy case. (ECF No. 535.) Accordingly, on March 6, 2012, an order was entered staying all further proceedings pending resolution of the Motion for Recusal. (ECF No. 536.) The order further provided that the hearing set for March 15, 2012, on the Motion to Reconsider and the Motion for Sanctions was vacated and that the Motion for Recusal would be heard on that date instead. Three days before the hearing date, the Smiths withdrew the Motion for Recusal.

AO 72A

(Rev. 8/82)

9

By this time, the extended time to petition the Supreme Court had run, and no petition had been filed. No additional delays ensued, and the Motion to Reconsider and the Motion for Sanctions were finally heard on May 17, 2012.

## II. The Hearing on the Motion to Reconsider and the Motion for Sanctions.

At the hearing on the Motion to Reconsider, Mrs. Smith asserted the same argument she has asserted at every turn in every court over the past three years: that the Consent Order is void, because Countrywide misrepresented itself as a secured creditor when it did not have a perfected prepetition lien on the real property and thus was not a real party in interest with standing to move for relief from the automatic stay on September 25, 2008.

As purportedly new evidence of fraud upon the court, Mrs. Smith submitted printouts from Internet websites, which were admitted over the objections of BAC. Mrs. Smith first submitted two identical printouts of the MERS-related webpage that was attached to an earlier filing and referenced in the Response, one printout dated January 1, 2011, and the other dated February 9, 2011 (Exs. D6, D7). According to Mrs. Smith, the fact that BAC Home Loans Servicing LP was shown as servicer and Barclays Bank PLC as investor established that Countrywide Home Loans Inc. was

neither the servicer nor the investor for BCAP LLC Trust 2006-AA2, contrary to Countrywide's representations beginning with the proofs of claim filed in 2007. Moreover, the fact that Barclays Bank PLC was shown as investor on both the earlier and the later printout established that BAC misrepresented that the Bank of New York Mellon was the investor in the Motion to Continue Hearing filed on February 7, 2011.

As additional new evidence, Mrs. Smith submitted printouts from two other websites (Exs. D16, D17) to show that the Smiths' loan could not have been transferred from BCAP LLC Trust 2006-AA2 to the CWHEQ Trust during the pendency of the Eleventh Circuit appeal, as the Motion for Substitution represented. Arguing that Countrywide's counsel was complicit in the alleged fraud, Mrs. Smith said, "This attorney had to come up with something, and that's what he came up with, but he mistakenly came up with an impossible pathway." (Hr'g, May 17, 2012.)

Counsel for BAC declined to rebut Mrs. Smith's argument, stating that BAC stood on its briefs in the Motion to Reconsider. Accordingly, I took up the Motion for Sanctions.

In support of the Motion for Sanctions, BAC argued for imposition of only nonmonetary sanctions against the Smiths under 11 U.S.C. § 105(a), notwithstanding that the Motion for Sanctions pleaded under Bankruptcy Rule 9011 for attorney's fees as well.

AO 72A
(Rev. 8/82)

11

Specifically, BAC requested an injunction against future filings, as I have imposed in the past.[5] Mrs. Smith argued that BAC had no standing to move for sanctions and that "fraud upon the court and standing are not frivolous matters." (Hr'g, May 17, 2012.)

### CONCLUSIONS OF LAW

### I. There Is No Fraud on the Court.

A judgment may be set aside for fraud on the court. Fed. R. Civ. P. 60(d)(3).[6] Unlike a motion alleging fraud between the parties under Rule 60(b)(3), a motion to set aside a judgment for fraud on the court is not subject to a specific time limit. Sec. & Exch. Comm'n v. ESM Grp., Inc., 835 F.2d 270, 273 (11th Cir. 1988).

The Eleventh Circuit Court of Appeals defines fraud on the court as involving far more than an injury to a single litigant:

> 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery

---

[5] In re Smith, No. 07-20244 (Bankr. S.D. Ga. Mar. 24, 2011) (Order Denying Defendant's Motion for Sanctions and Imposing Sanctions Sua Sponte), aff'd sub nom. Smith v. Atlantic Southern Bank, No. 2:11-cv-00060 (S.D. Ga. Mar. 30, 2012), and recons. den., No. 2:11-cv-00060 (S.D. Ga. May 4, 2012).

[6] The Motion to Reconsider as filed did not plead for relief under Rule 60(d)(3), but rather under 11 U.S.C. § 502(j), governing reconsideration of claims. Liberally construing the Smiths' subsequent filings and based on Mrs. Smith's argument at hearing, I consider the motion under Rule 60(d)(3). See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.")

cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct.

Travelers Indem. Co. v. Gore, 761 F.2d 1549, 1551 (11th Cir. 1985) (quoting 7 Moore's Federal Practice ¶ 60.33). To prevail, the movant must show "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Gupta v. Walt Disney World Co., No. 11-14181, 2012 WL 2892398, at *1 (11th Cir. 2012) (citing Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir. 1978). Relief is warranted for only "the most egregious misconduct." Id.

Fraud on the court must be established by clear and convincing evidence. Booker v. Dugger, 825 F.2d 281, 283 (11th Cir. 1987). "[C]onclusory averments of the existence of fraud . . . unaccompanied by a statement of clear and convincing probative facts which support such belief do not serve to raise the issue of the existence of fraud . . . ." Id. at 283-84 (quoting Di Vito v. Fidelity & Deposit Co. of Maryland, 361 F.2d 936, 939 (7th Cir. 1966).

The Smiths presented no evidence of fraud on the court, whether by Countrywide or BAC. The purportedly new evidence does not show any egregious misconduct, any unconscionable plan or scheme to improperly influence this Court, or any attempt to defile this Court. Moreover, Mrs. Smith's allegation at hearing of

AO 72A
(Rev. 8/82)

13

misconduct by opposing counsel is conclusory and wholly unsupported by any facts. The Smiths have thus failed to meet the standard of clear and convincing evidence required to prevail under Rule 60(d)(3).

## II. Res Judicata Applies.

The Motion to Reconsider is barred by res judicata, which prohibits the litigation of a claim that was brought or could have been brought in an earlier proceeding. <u>Ragsdale v. Rubbermaid, Inc.</u>, 193 F.3d 1235, 1238 (11th Cir. 1999). A prior judgment is res judicata as to subsequent litigation when the following four conditions are satisfied:

> First, the prior judgment must be valid in that it was rendered by a court of competent jurisdiction and in accordance with the requirements of due process. Second, the judgment must be final and on the merits. Third, there must be identity of both parties or their privies. Fourth, the later proceeding must involve the same cause of action as involved in the earlier proceeding.

<u>Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)</u>, 898 F.2d 1544, 1550 (11th Cir. 1990) (citations omitted). A "judgment" includes "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a). Here, the prior judgment is the Order Denying Motion to Vacate, which satisfies all four conditions for claim preclusion.

## A. The Order Denying Motion to Vacate Is Valid.

### 1. The Order Denying Motion to Vacate Was Rendered by a Court of Competent Jurisdiction.

This Court was vested with the authority to hear and determine the Motion to Vacate. Subject matter jurisdiction of motions filed in bankruptcy cases derives from 28 U.S.C. § 1334, which provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The district court may refer any or all such cases and proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). A referral order was entered in the United States District Court for the Southern District of Georgia on July 13, 1984.

Bankruptcy judges may hear and determine all bankruptcy cases and "all core proceedings arising under [the Bankruptcy Code], or arising in a case under [the Bankruptcy Code]." 28 U.S.C. § 157(b). Core proceedings include proceedings affecting the liquidation of assets of the bankruptcy estate or the adjustment of the debtor-creditor relationship. 28 U.S.C. § 157(b)(2)(O).

Here, the subject real property was an asset of the bankruptcy estate. The Motion to Vacate sought to delay the liquidation of that asset and to "reset" the relationship between

AO 72A

(Rev. 8/82)

the Smiths and Countrywide to its status before the Smiths agreed to the Consent Order. Thus the Motion to Vacate was a core proceeding under 28 U.S.C. § 157(b)(2)(O). Accordingly, this Court had subject matter jurisdiction to render the Order Denying Motion to Vacate.

### 2. The Order Denying Motion to Vacate Was Rendered in Accordance with the Requirements of Due Process.

Due process requires at a minimum "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 313 (1950). Here, the Motion to Vacate was heard on May 28, 2009. During its pendency, the Smiths in addition filed an amendment to the Motion to Vacate (ECF No. 194), a brief in support (ECF No. 201), and a supplemental brief (ECF No. 203). The Smiths thus were fully heard before entry of the Order Denying Motion to Vacate, thereby satisfying the requirement of due process.

### B. The Order Denying Motion to Vacate Is Final and on the Merits.

A judgment on the merits "reaches and determines the real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction, or form." <u>Saylor v. Lindsley</u>, 391 F.2d 965, 968 (2d Cir. 1968). A final

AO 72A
(Rev. 8/82)

judgment is a decision that ends the litigation, adjudicating all rights between the parties. <u>Martin Bros. Toolmakers, Inc. v. Indus. Dev. Bd. (In re Martin Bros. Toolmakers, Inc.)</u>, 796 F.2d 1435, 1437 (11th Cir. 1986) (citing <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945)). When a final judgment on the merits is appealed, the judgment's ultimate preclusive effect is determined by the appellate court's decision. <u>Jaffree v. Wallace</u>, 837 F.2d 1461, 1466 (11th Cir. 1988).

Here, the Order Denying Motion to Vacate was on the merits and final, having reached the grounds of the Motion to Vacate and having adjudicated all related rights between the Smiths and Countrywide. Further, the Order Denying Motion to Vacate was affirmed on appeal to the District Court, and the Smiths' appeal of the District Court order was dismissed by the Eleventh Circuit. The time having run for seeking review by the United States Supreme Court, the finality requirement of preclusion is satisfied.

## C. There Is Identity of the Parties.

The parties bound by the Order Denying Motion to Vacate are the Smiths and Countrywide. The parties before me in the Motion to Reconsider are the Smiths and BAC. Under the principle of privity, there is identity between Countrywide and BAC.

17

"Privity" describes a relationship between a party and a nonparty in which their individual interests are so closely aligned that the nonparty could be "fairly considered to have had his day in court." United States v. Perchitti, 955 F.2d 674, 676 (11th Cir. 1992). Federal courts recognize several circumstances that create privity, including when a nonparty succeeds to a party's interest in property. Sw. Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977).[7]

Here, the Smiths argue that BAC was fraudulently substituted as a successor in interest to Countrywide. The Smiths' argument is without merit. The Motion for Substitution was granted by the Eleventh Circuit and that order is of record in the Motion to Reconsider. Thus there is identity of the parties in the Order Denying Motion to Vacate and the Motion to Reconsider.

## D. The Motion to Reconsider Involves the Same Cause of Action.

"[I]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate as a former action . . . the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft

---

[7] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

Corp.), 244 F.3d 1289, 1297 (11th Cir. 2001) (internal quotation marks omitted). The focus is on commonality of facts between the prior and subsequent actions, not on the type of relief requested. Id. at 1295.

The claim adjudicated under the Order Denying Motion to Vacate arose from the following facts: Countrywide Home Loans Inc. filed two proofs of claim in this bankruptcy case, both claims described as secured by the real property at 311 10th Street, Unit #B, St. Simons Island, Georgia. Countrywide Home Loans Inc. filed a motion for relief from stay as to the real property. The Smiths through counsel agreed to a resolution of the motion for relief by a consent order that provided a period of time during which the chapter 7 Trustee would market the property. The consent order also provided that if the Trustee did not produce a contract for sale during that time, the automatic stay would be deemed modified to allow Countrywide Home Loans Inc. to proceed with its state law remedies, including a foreclosure sale.

The Motion to Reconsider is based on these same facts. (See Dkt. # 377 at 1-3.) It is immaterial that the Motion to Reconsider seeks an additional remedy: disallowance of Countrywide's proofs of claim. The Order Denying Motion to Vacate determined that the Smiths waived the right to litigate the proofs of claim when they signed the Consent Order. (See ECF No.

19

206 at 11 ("The Smiths could have objected to Countrywide's proofs of claim, but they did not.").) Thus the Motion to Reconsider and the claim adjudicated in the Order Denying Motion to Vacate are based upon the same factual predicate and accordingly are the same claim. The fourth and final condition for claim preclusion is therefore satisfied.

### III. Sanctions Are Warranted.

BAC having orally withdrawn its request for sanctions under Bankruptcy Rule 9011, I instead consider sanctions under 11 U.S.C. § 105(a) and under the inherent powers of the federal courts. The Smiths' argument that BAC has no standing to move for sanctions is without merit. BAC is a party to this litigation, and parties have standing to move for sanctions. See New York News, Inc. v. Kheel, 972 F.2d 482, 488 (2d Cir. 1992).

Under § 105(a), the bankruptcy court may take any action "necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Abuse of process includes "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." Official Comm. of Injury Claimants v. Official Comm. of Unsecured Creditors (In re Eagle-Picher Indus., Inc.), 169 B.R. 135 at 138 n.1 (Bankr. S.D. Ohio 1994).

AO 72A
(Rev. 8/82)

20

Here, the Smiths have undermined the integrity of the bankruptcy system in at least two ways, first by methodically and deliberately impeding a secured creditor's rightful action against its collateral and second by diverting the finite resources of the Court. The Smiths' unfounded and unrelenting attacks on the Consent Order over a three-year period indicate a calculated plan to harass, hinder, frustrate, and delay any action by Countrywide, now BAC, against the collateral securing its claims. Further, every filing, no matter how frivolous or redundant, requires the time and attention of court staff. The prolific and baseless filings of the past three years have consumed countless hours of staff time both in the Clerk's office and in chambers. The Smiths' ongoing actions thus constitute an abuse of process, and sanctions are warranted under § 105(a) to prevent further abuse.

In addition to its powers under § 105(a), the bankruptcy court, like every federal court, has the inherent authority to impose sanctions against attorneys and parties. Ginsberg v. Evergreen Security, Ltd. (In re Evergreen Security, Ltd.), 570 F.3d 1257, 1263 (11th Cir. 2009). Imposition of sanctions under the court's inherent powers requires a finding of bad faith. Id. at 1273. Demonstrations of bad faith include hampering the enforcement of a court order and "continually

advancing groundless and patently frivolous litigation." Id. at 1274.

Here, enforcement of the Consent Order has been not just hampered, but completely thwarted by the Smiths' continual and meritless appeals. The most egregious churning in this litigation, however, has been the Smiths' filing of the Motion to Reconsider in the bankruptcy court when they knew the same claim was pending in the Eleventh Circuit. The Smiths have thus demonstrated bad faith that warrants the imposition of sanctions under the Court's inherent powers.

In summary, the Smiths have advanced groundless and patently frivolous litigation over the past three years solely to harass a secured creditor and to prevent the enforcement of an order of this Court. Further, the Smiths give no indication that this behavior will change, absent judicial action.

An individual's constitutional right of access to the courts is "neither unconditional nor absolute." Smith v. United States, 386 F. App'x 853, 857 (11th Cir. 2010) (quoting Procup v. Strickland, 792 F.2d 1069 (11th Cir. 1986)). Moreover, courts have "a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others." Id. at 858. The Smiths as pro se litigants are not subject to the financial considerations that deter other litigants from frivolous filings. Similarly, they will not be deterred by the imposition of

22

208

monetary sanctions. See Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1295 (11th Cir. 2002) (upholding filing injunction when monetary sanction would not sufficiently deter party who could not pay sanction).

The Smiths will not be foreclosed from all access to this Court, but they will be foreclosed from challenging the Consent Order and any actions of Countrywide or BAC related to the Consent Order or to the collateral. See Traylor v. City of Atlanta, 805 F.2d 1420, 1422 (11th Cir. 1986) (upholding filing injunction to prevent pro se litigant from attempting to relitigate claims that were previously adjudicated). Accordingly, I impose the following sanction under § 105(a) of the Bankruptcy Code and under the inherent sanctioning powers of this Court:

The Smiths are barred from filing any pleadings or motions in this Court wherein they name Countrywide Home Loans Inc., Countrywide Home Loan Servicing LP, or BAC Home Loans Servicing LP. The Smiths are instead directed to submit any such pleading to the Clerk of Court. The Clerk will then submit the pleading to me, and I will determine whether the pleading asserts a meritorious claim or simply reasserts the claim that I dismiss in this Order. If a pleading is appropriate, it will be docketed. If a pleading is inappropriate, it will be docketed as stricken, but will not be publicly viewable.

## ORDER

It is therefore ordered that the Motion to Reconsider is **DISMISSED WITH PREJUDICE;** and

**FURTHER ORDERED** that a sanction requiring pre-filing authorization is imposed on any filing by the Smiths that names Countrywide Home Loans Inc., Countrywide Home Loan Servicing LP, or BAC Home Loans Servicing LP.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _____ day of September, 2012.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

**In the matter of:**

| | | |
|---|---|---|
| **SMITH, MARVIN B., III and** | ) | **CHAPTER 7** |
| **SMITH, SHARON H.,** | ) | **CASE NO. 07-20244-JSD** |
| Debtor(s). | ) | |
| ――――――――――――――― | ) | |
| | ) | |
| **R. MICHAEL SOUTHER, TRUSTEE,** | ) | |
| Movant, | ) | |
| **v.** | ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ) | |
| Respondent. | ) | |

## NOTICE OF OBJECTION TO CLAIM NO. 10

Movant has objected to your claim filed in this bankruptcy case.

<u>Your claim may be reduced, modified or eliminated.</u>  You should read these papers carefully and discuss them with your attorney.  If you do not have an attorney, you may wish to consult one.

If you have legal grounds to oppose the objection, or if you wish the Court to consider your views on the objection, you must file a written request for a hearing with the Clerk of the Bankruptcy Court before the expiration of thirty (30) days from the date stated in the certificate of service.

If you mail your request for a hearing to the Court, you must mail it early enough so that it will be received within the time referenced above.

Any request for a hearing must also be mailed to the moving party and all other persons indicated in the certificate of service attached to these pleadings.

If a timely request for hearing is filed, you will receive a notice of the date, time and place of hearing.

If you or your attorney do not take these steps, the Court will decide that you do not oppose the objection to your claim.

*Claimant has been served with a copy of the objection and a copy of this notice, and if claimant is a U.S. government agency, the U.S. Attorney, P.O. Box 8970, Savannah, GA 31412, and the Attorney General in Washington, D.C. 20530, have also been served.*

Dated:  January 7, 2013

R. Michael Souther, P.C.

By: <u>/s/  R. Michael Souther **</u>
R. MICHAEL SOUTHER
Attorney for Chapter 7 Trustee
Georgia State Bar No. 668325

Ms. Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Southern District of Georgia

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| **In the matter of:** | | |
| **SMITH, MARVIN B., III and** | ) | |
| **SMITH, SHARON H.,** | ) | **CHAPTER 7** |
| Debtor(s). | ) | **CASE NO. 07-20244-JSD** |
| | ) | |
| | ) | |
| **R. MICHAEL SOUTHER, TRUSTEE,** | ) | |
| Movant, | ) | |
| **v.** | ) | |
| | ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ) | |
| Respondent. | ) | |
| | ) | |

## OBJECTION TO CLAIM NO. 10 OF
## COUNTRYWIDE HOME LOANS, INC.

**TO:** **THE HONORABLE JOHN S. DALIS,** United States Bankruptcy Judge:

The undersigned, duly qualified and acting Trustee herein objects to the below listed claim(s) which has been filed herein and as for his objections thereto alleges as follows:

Objection to Claim No. 10 of Countrywide Home Loans, Inc., in the amount of $1,858.535.38 on the grounds that same is secured by property either abandoned or not administered by the Trustee and, therefore, Creditor should look to its collateral for satisfaction of the debt.

**WHEREFORE**, the Trustee prays that the Court will, after notice:

(a)      Disallow Claim No. 10 of Countrywide Home Loans, Inc., in its entirety;

(b)      Make such other orders as are appropriate in the premises.

Submitted: January 7, 2013          R. Michael Souther, P.C.

                                       */s/ R. Michael Souther* **\*\***
                                        R. MICHAEL SOUTHER
                                        Attorney for Trustee

P.O. Box 978
Brunswick, GA 31521
(912) 265-5544
Georgia State Bar No. 668325

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

In the matter of:

| | |
|---|---|
| SMITH, MARVIN B., III and ) | |
| SMITH, SHARON H., ) | **CHAPTER 7** |
| Debtor(s). ) | **CASE NO. 07-20244-JSD** |
| ───────────────── ) | |
| ) | |
| R. MICHAEL SOUTHER, TRUSTEE, ) | |
| Movant, ) | |
| v. ) | |
| ) | |
| COUNTRYWIDE HOME LOANS, INC., ) | |
| Respondent. ) | |

---

### CERTIFICATE OF SERVICE FOR
### NOTICE OF OBJECTION TO CLAIM AND OBJECTION TO
### CLAIM NO. 10 OF COUNTRYWIDE HOME LOANS, INC.

---

This is to certify that I have this day served a copy of the foregoing **Notice of Objection to Claim** and **Objection to Claim** by placing a copy of the same in the United States Mail with sufficient postage affixed thereto to assure delivery upon:

Countrywide Home Loans, Inc.
Attn: Managing Agent
7105 Corporate Dr., PTX-B-209
Plano, TX 75024

Marvin B. Smith, III and Sharon H. Smith
Post Office Box 31306
Sea Island, GA 31561

Lisa F. Caplan, Esq.
Attorney for Countrywide Home Loans
Two Midtown Plaza, Suite 1500
1349 W. Peachtree Street
Atlanta, GA 30309

Electronic service will be received by the following parties who are entitled to receive such service in this case through the electronic filing system of this Court:

Matthew Mills, Esq.
Assistant U. S. Trustee
Johnson Square Business Center
2 East Bryan Street, Suite 725
Savannah, GA 31401
Ustpregion21.sv.ecf@usdoj.gov

William S. Orange, III, Esq.
Attorney for Debtor
1419 Newcastle St.
Brunswick, GA 31520
orangelaw@bellsouth.net

Submitted: January 7, 2013

R. Michael Souther, P.C.

By:     /s/ R. Michael Souther **
         R. Michael Souther
         Attorney for Ch. 7 Trustee

P.O. Box 978
Brunswick, GA 31521
(912) 265-5544
Georgia State Bar No. 668325

---

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| **In the matter of:** | | |
| **SMITH, MARVIN B., III and** | ) | |
| **SMITH, SHARON H.,** | ) | **CHAPTER 7** |
| Debtor(s). | ) | **CASE NO. 07-20244-JSD** |
| | ) | |
| | ) | |
| **R. MICHAEL SOUTHER, TRUSTEE,** | ) | |
| Movant, | ) | |
| **v.** | ) | |
| | ) | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ) | |
| Respondent. | ) | |
| | ) | |

## ORDER ON OBJECTION TO CLAIM NO. 10 OF
## COUNTRYWIDE HOME LOANS, INC.

THE TRUSTEE'S OBJECTION to Claim No. 10 filed by Countrywide Home Loans, Inc., having been considered and, after notice and opportunity for a hearing, and no responses or objections having been filed,

IT IS HEREBY ORDERED that the Trustee's position is sustained as follows:

Claim No. 10 filed in the amount of $1,858,535.38 by Countrywide Home Loans, Inc., shall be disallowed in its entirety.

This _____ day of _____, 2013.


_____
HONORABLE JOHN S. DALIS
United States Bankruptcy Court Judge

Prepared by:

R. Michael Souther
P. O. Box 978
Brunswick, GA 31521
Telephone: (912) 265-5544
Georgia State Bar No.: 668325

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By jbergen at 9:23 am, Mar 11, 2013

In the matter of:

SMITH, MARVIN B., III and
SMITH, SHARON H.,
      Debtor(s).

)
)
)
)
)
)
)
)
)
)
)
)
)

**CHAPTER 7**
**CASE NO. 07-20244-JSD**

R. MICHAEL SOUTHER, TRUSTEE,
      Movant,

v.

COUNTRYWIDE HOME LOANS, INC.,
      Respondent.

## ORDER ON OBJECTION TO CLAIM NO. 10 OF
## COUNTRYWIDE HOME LOANS, INC.

THE TRUSTEE'S OBJECTION to Claim No. 10 filed by Countrywide Home Loans, Inc., having been considered and, after notice and opportunity for a hearing, and no responses or objections having been filed,

IT IS HEREBY ORDERED that the Trustee's position is sustained as follows:

Claim No. 10 filed in the amount of $1,858,535.38 by Countrywide Home Loans, Inc., shall be disallowed in its entirety.

This 5th day of _____March_____, 2013.

_____
HONORABLE JOHN S. DALIS
United States Bankruptcy Court Judge

Prepared by:

R. Michael Souther
P. O. Box 978
Brunswick, GA  31521
Telephone:  (912) 265-5544
Georgia State Bar No.:  668325

*The signature represented by "/s/" on this document conforms to original signature on the paper version of this document maintained by the filing user.*

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| In the matter of:<br>Marvin B Smith III and Sharon H Smith,<br><div align="right">Debtors.</div> | Chapter 7<br><br>Case No. 07-20244-JSD |
| Nationstar Mortgage as a servicer for HSBC<br>BANK USA, NATIONAL ASSOCIATION,<br>AS TRUSTEE FOR HOLDERS OF THE<br>BCAP LLC TRUST 2006-AA2, its<br>successors or assigns,<br><br><div align="center">Movant,</div><br>V.<br><br>Marvin B Smith III and Sharon H Smith,<br>Debtors, and R. Michael Souther, Trustee,<br><div align="right">Respondents.</div> | Contested Matter |

### MOTION FOR RELIEF FROM STAY AND
### REQUEST FOR WAIVER OF RULE 4001(a)(3)

COMES NOW the Movant, Nationstar Mortgage as a servicer for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOLDERS OF THE BCAP LLC TRUST 2006-AA2, its successors or assigns, a secured creditor and party in interest in this case, and moves this Court for Relief from the Automatic Stay with regard to the hereinafter described property, and shows this Court the following:

<div align="center">1.</div>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151 and 157 and Local Rules of the District Court.

<div align="center">2.</div>

Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

3.

This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G).

4.

Marvin B Smith III and Sharon H Smith (hereinafter "Respondents") filed this proceeding under Chapter 7 of the Bankruptcy Code on or about April 2, 2007 and an Order for Relief was entered by this Court.

5.

Pursuant to 11 U.S.C. § 362(a), the entry of said Order for Relief operated as an Automatic Stay against the rights of Movant as a secured creditor to proceed against the collateral securing Respondent's indebtedness to Movant.

6.

The bankruptcy estate includes real property, located at 311 10TH STREET UNIT B, Saint Simons Island, Georgia 31522, which is owned by the Debtors and on which Movant holds a priority security interest pursuant to the grant thereof in the Deed to Secure Debt, a copy of which is attached hereto as Exhibit "A" and a copy of the Assignment(s) is attached as Exhibit "B" and is incorporated herein by this reference. Said real property is security for a promissory note held by Movant.

7.

Pursuant to 11 U.S.C. § 362(d)(1), Nationstar Mortgage as a servicer for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOLDERS OF THE BCAP LLC TRUST 2006-AA2, its successors or assigns is entitled to an Order terminating the Automatic Stay with respect to the property for cause, including inter alia, lack of adequate protection of its interest therein as heretofore described.

8.

The unpaid principal balance is approximately $1,767,500.00 with interest being due thereon at yearly rate of 2.875%.  Attached hereto as Exhibit "C" is an itemization of the estimated indebtedness due and owing.  Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase order, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements in support of right to seek a lift of the automatic stay and foreclose if necessary.

9.

Continuation of the Automatic Stay pursuant to 11 U.S.C. § 362(a) will work a real and irreparable harm to Movant and will deprive Movant of the adequate protection to which it is entitled under 11 U.S.C. §§ 362 and 363.

WHEREFORE, Movant prays as follows:

(a)     That this Court issue an Order terminating the Automatic Stay with respect to the above-referenced property effective as of the date of the hearing; including, but not limited to, gaining possession of the property and seeking to judicially confirm the sale, if appropriate.

(b)     That this Court authorize Movant to foreclose its security interest in said property in accordance with any applicable law as of the date this Court orders termination of the stay without further order of this Court;

(c)     That Movant be awarded attorney's fees and expenses pursuant to 11 U.S.C. § 506(b); and

(d)     That the Court order that Federal Rule of Bankruptcy Procedure 4001(a)(3) is not applicable so that Movant may immediately enforce and implement an order granting relief from the automatic stay;

(e) That Movant have such other and further relief as this Court deems just and proper

under the circumstances.

Dated:   December 4, 2013

Shapiro, Swertfeger & Hasty, LLP

/s/ Aimee Pulley
Aimee Pulley
Georgia Bar No. 550159
apulley@logs.com

2872 Woodcock Blvd.
Suite 100
Atlanta, GA 30341-3941
(770) 220-2535

219

BK 2 0 2 6 PG 1 7 4

Return To:

Synovus Mortgage Corp.
2204 Lakeshore Drive, Suite
325, Birmingham, AL  35209

Recorded *8/23/06*

*Lola B. Jamsky*
Clerk Superior Court

FILED
GLYNN CO. CLERK'S OFFICE

2006 AUG 22  P 3: 40

*Lola B. Jamsky*

CLERK SUPERIOR COURT

Prepared By:

RETURN TO:
WILLIAM T. LIGON, JR.
1710 GLOUCESTER STREET
BRUNSWICK, GEORGIA 31520

Ward, Cassandra
2204 Lakeshore Drive,
Birmingham,AL 35209

GA. INTANGIBLE TAX PAID
*5302.50* DATE *8-22-06*
LOLA B. JAMSKY, CLERK
SUPERIOR COURT, GLYNN COUNTY

─────────────[Space Above This Line For Recording Data]─────────────

# SECURITY DEED
MIN ████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **August 7, 2006**
together with all Riders to this document.
**(B) "Borrower"** is **MARVIN B SMITH, III & SHARON H SMITH**

████████████████████████

Borrower is the grantor under this Security Instru
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the grantee under
this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

GEORGIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3011  1/01

VMP-6A(GA) (0005).03
Page 1 of 14          Initials: M.B.S.
        VMP Mortgage Solutions, Inc.

BK 2 0 2 6 PG 1 7 5

(D) "Lender" is Synovus Mortgage Corp.

Lender is a Corporation
organized and existing under the laws of Alabama
Lender's address is 2204 Lakeshore Drive, Suite 325, Birmingham, AL  35209

(E) "Note" means the promissory note signed by Borrower and dated August 7, 2006
The Note states that Borrower owes Lender one million seven hundred sixty-seven
thousand five hundred and 00/100                                         Dollars
(U.S. $ 1,767,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than September 1, 2036              .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |
| | | GA Waiver of Borr's Rights |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used

Initials:

02418424

-6A(GA) (0005).03                    Page 2 of 14                    Form 3011  1/01

BK 2 0 2 6 PG 1 7 6

in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in the County

|  | of |  | Glynn, GA | : |
| --- | --- | --- | --- | --- |
| [Type of Recording Jurisdiction] | | | [Name of Recording Jurisdiction] | |

Parcel ID Number:                                                      which currently has the address of
**311 10th Street, Unit B**                                                                    [Street]
**Saint Simons Island**                        [City] , Georgia **31522**            [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials:

VMP -6A(GA) (0005).03                       Page 3 of 14                                     Form 3011  1/01

222

BK 2 0 2 6 PG 1 7 7

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

Initials: _____

VMP-6A(GA) (0005).03                    Page 4 of 14                    Form 3011  1/01

223

BK 2 0 2 6 PG 1 7 8

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

MBS
Initials:

-6A(GA) (0005).03
®

Page 6 of 14

Form 3011  1/01

224

BK 2 0 2 6 PG 1 7 9

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

VMP®-6A(GA) (0005).03

Initials: _MBS_

Page 6 of 14

Form 3011  1/01

BK 2 0 2 6 PG 1 8 0

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying

M.B.S.

Initials:

VMP -6A(GA) (0005).03                    Page 7 of 14                    Form 3011  1/01

226

BK 2 0 2 6 PG 1 8 1

reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials:

227

BK 2 0 2 6 PG 1 8 2

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials:

VMP®-6A(GA) (0005).03        Page 9 of 14        Form 3011  1/01

228

BK 2 0 2 6 PG 1 8 3

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials:

229

BK 2 0 2 6 PG 1 8 4

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP -6A(GA) (0005).03                     Page 11 of 14                     Initials: _____

Form 3011  1/01

BK 2 0 2 6 PG 1 8 5

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials:

BK 2 0 2 6 PG 1 8 6

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**25. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**26. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

Initials: _____

BK 2 0 2 6 PG 1 8 7

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)          _____ (Seal)
MARVIN B SMITH, III         -Borrower      SHARON H SMITH         -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                             -Borrower

**STATE OF GEORGIA,**                              County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public,
State of Georgia

-6A(GA) (0005).03              Page 14 of 14              Form 3011  1/01

233

BK 2026 PG 188

## EXHIBIT "A"

All that tract or parcel of land lying and being in the Land Lot One-hundred Sixty-Three (163) of the 25th GMD District, of Glynn County, Georgia, being Unit B, of Enchantment by the Sea Condominium as shown on plat of survey, which plat is recorded in Condominium Plat Book 1, Page 48-B, Glynn County records and Floor Plans filed in Condominium Cabinet IV, Folder 3A-3H, aforesaid records, together with all right, title and interest contained in the Declaration of Enchantment By the Sea, a condominium, recorded in Deed Book 1380, Page 35, aforesaid records, together with the appurtenant percentages of undivided interests in the common element as described in said Declaration.  This conveyance is made subject to the following matters:

1. 2006 ad valorem taxes and subsequent years which are liens not now due and payable;
2. Easements, Restrictions and Right of Ways of record;
3. Condominium Declaration of record and any amendments thereto; and
4. All matters of survey as shown on recorded plat.

**Parcel ID#** ████████

BK 2 0 2 6 PG 1 8 9

Assessor's Parcel Number:

After Recording Return To:

Prepared By:

———————— [Space Above This Line For Recording Data] ————————

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In The *Wall Street Journal*) - Rate Caps)

DOC ID #:

THIS FIXED/ADJUSTABLE RATE RIDER is made this **7th** day of, **August, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to **Synovus Mortgage Corp.**

("Lender") of the same date and covering the property described in the Security Instrument and located at:

**311 10th Street, Unit B, Saint Simons Island, GA  31522**

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

Initials:

02418424

10/08/04
Interest Only Rider
FE-4266

-1-

SMC536

BK 2 0 2 6 PG 1 9 0

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial fixed interest rate of **7.250 %**.  The Note also provides for a change in the initial fixed interest rate to an adjustable interest rate, as follows:

**4.  ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of **September, 2011** , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.  The date on which my initial fixed interest rate changes to an adjustable interest rate, and
each date on which my adjustable interest rate could change, is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **two and one-quarter** percentage points ( **2.250 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **12.250 %** or less than **2.250 %**.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying preceding 12 months.  My interest rate will never be greater than **12.250 %** or less than **2.250%.**

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

MBS

Initials:

02418424

I0/08/04
Interest Only Rider
FE-4266

-2-

SMC536

BK 2026 PG 191

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1.** UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section**

18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2.** AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section

18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (B) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

Initials: MBSM _____

**02418424**

I0/08/04
Interest Only Rider
FE-4266

-3-

SMC536

237

BK 2 0 2 6 PG 1 9 2

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

**I understand that for the Interest Only Period my monthly payments will not reduce the Principal balance on my loan. My monthly payments after the Interest Only Period will consist of both Principal and interest and will be higher unless I have made additional payments to reduce the Principal balance.**

_____ (Seal)
MARVIN B SMITH, III                              -Borrower

_____ (Seal)
SHARON H SMITH                                   -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

02418424

I0/08/04
Interest Only Rider
FE-4266                    -4-                    SMC536

BK 2 0 2 6 PG 1 9 3 1

# CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 7th          day of August, 2006          ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to Synovus Mortgage Corp.

(the
"Lender") of the same date and covering the Property described in the Security Instrument
and located at:

311 10th Street, Unit B, Saint Simons Island, GA  31522
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements
of, a condominium project known as:

Enchantment by the Sea
[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use
of its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii)
code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when
due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally
accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which
is satisfactory to Lender and which provides insurance coverage in the amounts (including
deductible levels), for the periods, and against loss by fire, hazards included within the term
"extended coverage," and any other hazards, including, but not limited to, earthquakes and
floods, from which Lender requires insurance, then: (i) Lender waives the provision in

MULTISTATE CONDOMINIUM RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT
(VMP)-8R (0411)          Form 3140 1/01
Page 1 of 3          Initials:
VMP Mortgage Solutions, Inc.
(800)521-7291

BK 2026 PG 194

Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Initials: MBS

-8R (0411)                    Page 2 of 3                    Form 3140 1/01

BK 2 0 2 6 PG 1 9 5

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

_Marvin B. Smith III_ (Seal)　　　　_Sharon H. Smith_ (Seal)
MARVIN B SMITH, III　　　　-Borrower　　SHARON H SMITH　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower

_____ (Seal)　　　_____ (Seal)
　　　　　　　　　　　　　　-Borrower　　　　　　　　　　　　　　　-Borrower

VMP®-8R (0411)　　　　　　　Page 3 of 3　　　　　　　Form 3140 1/01

GEORGIA -                    BK 2 0 2 6 PG 1 9 6              02418424
GRANTOR; MARVIN B SMITH, III; SHARON H SMITH

LENDER: Synovus Mortgage Corp.

DATE OF SECURITY DEED: August 7, 2006

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____        _Marvin B. Smith III_____ (Seal)
                                        MARVIN B SMITH, III          -Grantor

_____        _Sharon H Smith_____ (Seal)
                                        SHARON H SMITH              -Grantor

_____        _____ (Seal)
                                                                    -Grantor

_____        _____ (Seal)
                                                                    -Grantor

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_____                    _____
                        Notary Public                                Closing Attorney

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_Marvin B. Smith III_____        _Sharon H Smith_____
MARVIN B SMITH, III                    SHARON H SMITH

VMP-960(GA) (0307)          VMP Mortgage Solutions (800)521-7291

242

# A S S I G N M E N T

**FOR VALUE RECEIVED**, the undersigned, being the present owner of such secured interest by virtue of being the original Grantee or the heir, assign, transferee, or devisee of the original Grantee, hereby transfers, without recourse, to **HSBC Bank USA, National Association as Trustee for the Holders of BCAP LLC Trust 2006-AA2** whose address is 452 5th Avenue, New York, NY 10018, all right, title, interest, powers and options in, to and under that certain Deed to Secure Debt from **Marvin B. Smith, III and Sharon H. Smith** to **Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Synovus Mortgage Corp.** dated **August 7, 2006** and recorded in Deed Book **2026**, Page **174**, **Glynn** County, Georgia records, as well as the land described therein and the indebtedness secured thereby.

    **IN WITNESS WHEREOF**, the undersigned has hereunto set its hand and seal this day of _____

JAN 1 4 2011 .

         Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee
         for Synovus Mortgage Corp.

         BY:_____ (SEAL)
         Name & Title: S. Andrew Shuping, Jr., VP

Witness

Notary Public
My Commission Expires:____

SIDNEY E. COBB
NOTARY
GEORGIA
EXPIRES
NOV 10, 2012
PUBLIC
SPALDING COUNTY

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.
Corporate Seal
SEAL

Exhibit "C"

| INDEBTEDNESS: | Unpaid Principal Balance as of 12/02/13 | $1,767,500.00 |
|---|---|---|
| | Interest from 03/01/07 to 11/18/13 | $700,578.85 |
| | Escrow Balance | $0.00 |
| | Escrow Advance | $99999.99 |
| | Corporate Advance | $11523.60 |
| | Accrued Late Charges | $0.00 |
| | BPO Fees | $0.00 |
| | NSF Fees | $0.00 |
| | Property Inspections | $0.00 |
| | Property Preservation Fees | $0.00 |
| | Prior F/C Fees and Costs | $0.00 |
| | Attorney Fees | $650.00 |
| | Court Costs | $176.00 |
| | Suspense | ($0.00) |
| | Approximate Payoff | $2,580,428.30 |

244

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| In the matter of:<br>Marvin B Smith III and Sharon H Smith,<br>       Debtors. | Chapter 7<br><br>Case No. 07-20244-JSD |
| Nationstar Mortgage as a servicer for HSBC<br>BANK USA, NATIONAL ASSOCIATION, AS<br>TRUSTEE FOR HOLDERS OF THE BCAP<br>LLC TRUST 2006-AA2, its successors or<br>assigns,<br><br>       Movant,<br><br>V.<br><br>Marvin B Smith III and Sharon H Smith,<br>Debtors, and R. Michael Souther, Trustee,<br><br>       Respondents. | Contested Matter |

**WITHDRAWAL OF MOTION FOR RELIEF FROM STAY**

   COMES NOW, NATIONSTAR MORTGAGE AS A SERVICER FOR HSBC BANK USA,

NATIONAL ASSOCIATION, AS TRUSTEE FOR HOLDERS OF THE BCAP LLC TRUST 2006-AA2,

Movant, by and through its attorneys, Shapiro, Swertfeger & Hasty, LLP, and withdraws, without prejudice, its

Motion for Relief from Stay filed herein on December 4, 2013. (Doc. No. 623).

            Shapiro, Swertfeger & Hasty, LLP

            /s/Aimee Pulley____
            Aimee Pulley
            Georgia Bar No. 550159
            apulley@logs.com

2872 Woodcock Boulevard
Suite 100
Atlanta, GA 30341
(770) 220-2535

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| In Re: | Chapter 7 |
| Marvin B Smith III and Sharon H Smith, | Case No. 07-20244-JSD |
| Debtors. | |

Nationstar Mortgage as a servicer for HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOLDERS OF THE BCAP LLC TRUST 2006-AA2, its successors or assigns,

Movant,

V.

Marvin B Smith III and Sharon H Smith, Debtors, and R. Michael Souther, Trustee,

Respondents.

Contested Matter

### CERTIFICATE OF SERVICE

This is to certify that on the _____ day of December, 2013, I served a copy of the foregoing Withdrawal of Motion for Relief from Stay filed in this bankruptcy proceeding, on the Respondents by first-class mail addressed as follows:

Marvin B Smith III
Post Office Box 31306
Sea Island, GA 31561

Sharon H Smith
Post Office Box 31306
Sea Island, GA 31561

R. Michael Souther
P. O. Box 978
Brunswick, GA 31521

**United States Trustee**
PO Box 10230
Savannah, GA  31412

Shapiro, Swertfeger & Hasty, LLP

/s/ Aimee Pulley
Aimee Pulley
Georgia Bar No. 550159
apulley@logs.com

2872 Woodcock Blvd.
Suite 100
Atlanta, GA 30341-3941
(770) 220-2535

**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
*By jbergen at 12:49 pm, Oct 06, 2014*

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 CASE |
| MARVIN B. SMITH III | ) | NUMBER <u>07-20244</u> |
| SHARON H. SMITH | ) | |
| | ) | |
| Debtors | ) | |

## <u>ORDER DENYING LEAVE TO FILE COMPLAINT</u>

"When I see a bird that walks like a duck and swims like a duck and quacks like a duck, I call that bird a duck."[1]

By my order entered September 17, 2012 ("Sanctions Order"), pro se Debtors Marvin B. Smith III and Sharon H. Smith are subject to the following filing injunction:

> The Smiths are barred from filing any pleadings or motions in this Court wherein they name Countrywide Home Loans Inc., Countrywide Home Loan Servicing LP, or BAC Home Loans Servicing LP. The Smiths are instead directed to submit any such pleading to the Clerk of Court. The Clerk will then submit the pleading to me, and I will determine whether the pleading asserts a meritorious claim or simply reasserts the claim that I dismiss in this Order. If a pleading is appropriate, it will be docketed. If a pleading is inappropriate, it will be docketed as stricken, but will not be publicly viewable.

<u>Smith v. BAC Home Loans Servicing LP (In re Smith)</u>, No. 07-20244, 2012 WL 4758038, at *9 (Bankr. S.D. Ga. Sept. 17, 2012)

---

[1] James Whitcomb Riley, American writer and poet, 1849-1916.

(Opinion and Order Dismissing Motion to Reconsider with Prejudice and Granting Motion for Sanctions), aff'd, Smith v. Countrywide Home Loans Inc., No. 2:12-cv-00179, 2013 WL 3874772 (S.D. Ga. July 25, 2013), appeal dismissed as frivolous, Smith v. Countrywide Home Loans Inc., No. 13-13808 (11th Cir. Dec. 19, 2013), cert. denied, 134 S. Ct. 2141, reh'g denied, 134 S. Ct. 2897 (2014).

In its order dismissing as frivolous the Smiths' appeal from the Sanctions Order, the Eleventh Circuit Court of Appeals imposed an additional sanction enjoining the Smiths from making any filing against this same defendant ("Countrywide"), including any predecessor or successor entities, in any court, whether state or federal, anywhere in the United States, without pre-filing review:

> In addition to the pre-screening injunction
> imposed by the bankruptcy court, which
> remains in place, [the Smiths] are hereby
> ENJOINED from filing any pleadings, motions,
> or other papers seeking any form of relief
> against [Countrywide Home Loans Inc.] and/or
> any of its predecessor or successor entities
> in any action in any other court, state or
> federal, in the United States, without first
> obtaining leave from the district court.

Smith v. Countrywide Home Loans Inc., No. 13-13808, at 2 (11th Cir. Dec. 19, 2013). Further, the Eleventh Circuit ordered the Smiths to pay $1,000 to Countrywide as damages for pursuing a frivolous appeal. Id.

Before me now is a Complaint the Smiths submitted for my pre-filing review in compliance with the Sanctions Order. This is the second opportunity I have been afforded to review the Complaint.[2] After initially submitting the Complaint for my review on August 13, 2014, the Smiths aborted that process twenty-six days later by filing a motion in the United States District Court for the Southern District of Georgia to withdraw the reference, seeking thereby to file the Complaint in the District Court.

The District Court denied as frivolous the motion to withdraw the reference, stating that the Smiths would not be allowed to short-circuit the process under the Sanctions Order:

> If the Smiths desire to proceed in Bankruptcy Court, they must follow that Court's rules. They are not entitled to bypass the Bankruptcy Court based on their subjective, and inaccurate, belief that the Bankruptcy Court was taking too much time in attempting to review and address their voluminous proposed Bankruptcy Complaint.

Smith v. Countrywide Home Loans Inc., No. 2:14-cv-00136 (S.D. Ga. Sept. 22, 2014).

Nine days after the District Court's order denying the motion to withdraw the reference, I received a letter from Mrs. Smith—the second I have received since her initial submission of the Complaint—"to be sure that [she has] done everything [she]

---

[2] "Complaint" refers to the pleading as amended to correct the misspelling of a Defendant's name.

should do to have [the] Complaint filed as quickly as possible by this Court."

The Complaint is foreclosed under the Sanctions Order. Permission to file the Complaint is therefore denied.


## FINDINGS OF FACT

The Complaint names eleven Defendants, including the three entities that trigger my pre-filing review: Countrywide Home Loans Inc., Countrywide Home Loan[s] Servicing LP, and BAC Home Loans Servicing LP ("Protected Entities" or "Countrywide"). Ten of the Complaint's thirteen counts are alleged against either or both Countrywide Home Loans Inc. and BAC Home Loans Servicing LP f/k/a/ Countrywide Home Loans Servicing LP:

- Wrongful Foreclosure

- Fraud upon the Court

- Fraud by Omission

- Violation of Georgia RICO Act, Including Mortgage Fraud

- Elder Abuse in Violation of O.C.G.A. Title 30, Chapter 5

- Violation of Georgia Fair Business Protection Act

- Breach of Contract

- Breach of Good Faith and Fair Dealing

- Unjust Enrichment

- Negligence

(Compl. ¶¶ 50-244.)

The Complaint concludes with a fourteen-paragraph prayer for relief, including that:

> H. Judgment be entered canceling the void Assignment of Security Deed filed in the Glynn County records.
>
> . . . .
>
> J. Judgment be entered against Defendants ordering forfeiture of any claim to the subject Security Deed and the property secured thereby.
>
> K. Judgment be entered granting a permanent injunction barring Defendants from proceeding with a non-judicial foreclosure.

(Id. at 57-58.)

## CONCLUSIONS OF LAW

In November 2008, a consent order was entered on Countrywide's motion for relief from stay as to its collateral: the real property at 311 10th Street, Unit #B, Saint Simons Island, Georgia ("Consent Order"). (Consent Order Modifying Automatic Stay, ECF No. 174.) Under the terms of the Consent Order, the chapter 7 trustee would market the property for 180 days. If the Trustee could not find a buyer during that time, the automatic stay would be lifted without further hearing and Countrywide could proceed with its remedies under state law.

The Sanctions Order chronicles the Smiths' unfounded and unrelenting attacks on the Consent Order over the ensuing three years. See Smith v. BAC Home Loans Servicing LP (In re

Smith), No. 07-20244, 2012 WL 4758038, at *1-*4. To stem the tide of abusive filings, the Sanctions Order bars the Smiths "from challenging the Consent Order and any actions of Countrywide or BAC related to the Consent Order or to the collateral." Id. at *9.

This very challenge is exactly what the Smiths now seek to mount, as shown in the Complaint's prayer for relief. The "Security Deed" in paragraphs H and J refers to the deed securing the Smiths' debt on the collateral. (See Compl. ¶ 14 ("The subject property is the Smiths' current home at 311 10th Street, Unit #B, Saint Simons Island, Georgia 31522.").) The permanent injunction sought in paragraph K would bar "Defendants"—including the Protected Entities—from foreclosing against this same property.

The Complaint boils down to one more attempt by the Smiths to undo the effects of the Consent Order. Folding this foreclosed cause of action into a complaint embellished with new allegations and new causes of action against new defendants does not save this Complaint.

Nor should it be saved. Mrs. Smith would have me believe that the Smiths' motive in seeking to bring this lawsuit is purely altruistic: "The complaint has been submitted to the Bankruptcy Court because the estate would be affected by the

outcome, with any benefit to the Smiths inuring to the estate."
(Letter from Sharon Smith (Aug. 25, 2014).)

This statement is entirely disingenuous. The Smiths hope that by continuing to file baseless and vexatious lawsuits against the Protected Entities, foreclosure against their home will be indefinitely delayed. The Smiths have been admirably served by this strategy; I find no indication in the record that they have made a mortgage payment on the property—once said to be worth $2 million—since March 2007. (See Countrywide Mot. for Relief, ECF No. 154 ¶¶ 4-5 (stating that the Smiths had not made a direct payment in approximately eighteen months).)

Now, after a two-year hiatus in proceedings, foreclosure is once again imminent. (Compl. ¶¶ 113, 117; Letter from Sharon Smith (Sept. 30, 2014).) Hence, the submission of the Complaint.

**IT IS THEREFORE ORDERED** that permission to file the Complaint is **DENIED**; and

**FURTHER ORDERED** that the Clerk shall docket as stricken and not publicly viewable the Complaint as originally submitted; the Complaint as amended; and the two letters received from Mrs. Smith.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _6th_ day of October, 2014.