# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

FILED
Scott L. Poff, Clerk
United States District Court

By cashell at 4:44 pm, Mar 30, 2020

MARVIN B. SMITH, III AND SHARON
H. SMITH,

     Appellants,

     v.

HSBC BANK, N.A. *ET AL.*,

     Appellees.

No. 2:19—CV-73

## ORDER

This matter is before the Court on an appeal by Marvin and Sharon Smith ("the Smiths") of an Order from the United States Bankruptcy Court for the Southern District of Georgia denying the Smiths motion to enforce a discharge injunction and hold the Respondents in contempt. The Smiths' appeal comes before this Court following their roughly twelve-year effort to avoid the forced sale of beachfront property that they previously owned on Saint Simons Island, Georgia. Despite denials, sanctions, and filing injunctions spanning multiple courts and jurisdictions, the Smiths have been inexorable. They have refused at nearly every juncture to accept reasoned judicial opinions and orders, demanding reconsideration without cause, filing frivolous appeals, and reframing previously rejected arguments so that they can continue

to pursue their claims. For the reasons discussed below, the Court will affirm the decision of the bankruptcy court below. Moreover, because of the Smiths' demonstrated disregard for the finality of judicial decisions, the Court will further enjoin them from appealing any future decisions of the bankruptcy court without prior approval from this Court.

## BACKGROUND

The factual and procedural history of this case, which covers more than a decade, is voluminous. It concerns legal disputes across multiple dockets, before multiple courts, and in multiple jurisdictions. Below is merely a summary of the Smiths' legal battles to date.

In August 2006, the Smiths purchased property (the "Property") on Saint Simons Island financed by a loan from Synovus Mortgage Corp. for approximately $1.7 million, which was secured by a mortgage on the Property. See In re Marvin B. Smith, III & Sharon H. Smith, Case No. 07-bk-20244 (Bakr. S.D. Ga. Apr. 2, 2007) ("Smith I"), Dkt. No. 154 at 5-6.[1] Following an economic recession in 2007, the Smiths filed a Chapter 11 bankruptcy petition in the bankruptcy court for the Southern District of Georgia.[2] See id.,

---

[1] The procedural history of this case involves interrelated filings from multiple dockets. For clarity, the Court will identify the case before identifying the docket entry. If no case is specified, the docket entry cited is the entry for the appeal at bar.

[2] On May 8, 2008, the bankruptcy court converted the Smith's filing to a Chapter 7 petition. Id., Dkt. No. 109.

Dkt. No. 1. They appended to their petition a schedule of creditors holding secured claims, which included two claims by Countrywide Home Loans ("Countrywide") totaling approximately $2.1 million and representing first and second mortgages on the Property. See id. at 32. On November 11, 2007, Countrywide filed two proofs of claim (Claim Nos. 9 and 10) for approximately the same amounts listed in the Smiths' Petition. See id., Claims Register Nos. 9-1 and 10-1.

On September 25, 2008, Countrywide, purporting to be acting as servicing agent for HSBC Bank USA ("HSBC"), moved pursuant to 11 U.S.C. § 362 to terminate the automatic stay and allow it to collect on its security interest in the Property. Dkt. No. 7-4 at 1-3. On November 12, the bankruptcy court entered a consent order (the "Consent Order") conditionally denying Countrywide's motion but modifying the automatic stay such that it would only remain in effect until May 4, 2009 to allow the bankruptcy trustee (the "Trustee") to market the Property. Id. at 9-11. The bankruptcy court ordered that if the Trustee filed an abandonment of the Property during that time or otherwise failed to produce a contract for sale of the Property by May 5, 2009, the automatic stay would terminate without further order of the court. Id.

On April 15, 2009, the Smiths filed a Motion to Vacate the Consent Order under Rule 60(b) of the Federal Rules of Civil Procedure. Id. at 12-17. They argued that Countrywide "misrepresented itself as [the] owner of Debtor's mortgage" in its

Motion for Relief of Automatic Stay and therefore lacked standing to request relief from the stay because it had not shown that it was a real party in interest. Id. In July, the bankruptcy court denied the Smiths' Motion to Vacate, finding that the Smiths "waived the right to demand proof [of Countrywide's interest in the Property] when they agreed to the Consent Order. See id. at 77. The court concluded that the Smiths had failed to "demonstrate any ground for the extraordinary relief" they sought under Rule 60(b). See id. at 74. In July 2010, this Court affirmed the bankruptcy court's decision on the Motion to Vacate, see Smith v. Countrywide Home Loans Inc., No. 2:09-cv-140, Dkt. No. 18 (S.D. Ga. July 30, 2010), and in November 2010 the Eleventh Circuit denied the Smiths motion to proceed in forma pauperis on an appeal to that court "because the appeal [was] frivolous." Smith v. Countrywide Home Loans, Inc., No 10-13671, 2010 U.S. App. LEXIS 27658 (11th Cir. Nov. 24, 2010).

Undeterred, the Smiths went back to the bankruptcy court in December 2010 and moved the court to reconsider its order from July 2009. No. 07-bk-20244, Dkt. No. 377. They also requested that the court disallow Countrywide's proofs of claim. See Dkt. No. 7-4 at 149. Meanwhile, the Smiths continued to pursue their appeal in the Eleventh Circuit, ultimately paying the filing fee to allow them to move forward with their claim in March 2011. See id. at 136 (describing factual history of the Smiths' bankruptcy

proceedings).[3] In July 2011, BAC Home Loans Servicing LP ("BAC")—the new owner of the Smiths' loan—filed a Motion to Dismiss the Smiths' Motion for Reconsideration, and in February 2012 BAC filed a Motion for Sanctions against the Smiths for continuing to press arguments that had already been deemed frivolous on appeal. Id. at 137-38.[4] In September 2012, the bankruptcy court ruled on the parties' pending motions, finding that the Smiths' Motion to Reconsider was barred under the doctrine of res judicata and that they had "waived the right to litigate the proofs of claim when they signed the Consent Order." Id. at 144, 149. With respect to the Motion for Sanctions, the court found that the Smiths' "unfounded and unrelenting attacks on the Consent Order over a three-year period indicate a calculated plan to harass, hinder, frustrate, and delay any action by Countrywide, now BAC, against the collateral securing its claims." Id. at 151. Accordingly, the Bankruptcy Judge ordered the following injunction be issued against the Smiths:

> The Smiths are barred from filing any pleadings or motions in this Court wherein they name Countrywide Home

---

[3] Later, Countrywide filed a Notice of Substitution in the Eleventh Circuit indicating that the servicer of the Smiths' loan had been changed to BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing LP and the loan itself had been transferred first to The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for the Certificateholders of CWHEQ, Inc., Home Equity Loan Asset-Backed Certificates Series 2006-09 and subsequently to the BCAP2006-AA Trust. Id. at 136-37. The Eleventh Circuit granted Countrywide's Motion for Substitution over the Smiths' opposition. Id. at 137.

[4] Shortly before the hearing was to be held on the Motion to Reconsider and the Motion for Sanctions, the Smiths filed a motion to recuse the bankruptcy judge overseeing the case. Id. at 139. The Smiths later withdrew the motion. Id.

Loans Inc., Countrywide Home Loan Servicing LP, or BAC Home Loans Servicing LP. The Smiths are instead directed to submit any such pleading to the Clerk of Court. The Clerk will then submit the pleading to me, and I will determine whether the pleading asserts a meritorious claim or simply reasserts the claim that I dismiss in this Order. If a pleading is appropriate, it will be docketed. If a pleading is inappropriate, it will be docketed as stricken, but will not be publicly viewable.

Id. at 153.

In December 2013, the Eleventh Circuit issued an order dismissing the Smiths' appeal that had been pending on the Motion to Vacate as "frivolous and entirely without merit." Smith v. Countrywide Home Loans, Inc., No. 13-13808, 2013 U.S. App. LEXIS 26218 at *1 (11th Cir. Dec. 19, 2013). The court also issued a $1,000 sanction against the Smiths "as damages for pursuing [the] frivolous appeal," and it expanded the pre-screening injunction issued by the bankruptcy court, stating that the Smiths were:

ENJOINED from filing any pleadings, motions, or other papers seeking any form of relief against Appellee and/or any of its predecessor or successor entities in any action in any other court, state or federal, in the United States, without first obtaining leave from the district court.

Id. at *1-2.

As these events were unfolding, the Trustee over the Smiths' bankruptcy estate filed a notice of abandonment of the Property in April 2012. Dkt. No. 7-4 at 129. In January 2013, the Trustee filed an objection to Claim No. 10 by Countrywide on the grounds that the loan was "secured by property either abandoned or not

administered by the Trustee and, therefore, [Countrywide] should look to its collateral for satisfaction of the debt." Id. at 156. The bankruptcy court sustained the Trustee's objection a few months later. Id. at 159. Moreover, in June 2016, the Bankruptcy Court entered an order discharging the Smiths' debt under 11 U.S.C. § 727. No. 07-bk-20244, Dkt. No. 699.

In August 2014, the Smiths submitted to the clerk of the bankruptcy court a complaint containing several causes of action against Countrywide, BAC, and a myriad of other defendants. Dkt. No. 7-5 at 3-62. Dissatisfied with the length of time that the bankruptcy judge was taking to review their complaint pursuant to his September 2012 Order, the Smiths filed a "Motion for Leave to Submit Complaint" in this Court, which was promptly denied. See No. 214-cv-136, Dkt. Nos. 1, 4. In October, the bankruptcy court denied the Smiths leave to file their complaint dkt. no. 7-4 at 192-98, and in December this Court denied the Smiths' appeal of that order, see In re Smith, No. MC214-13, 2014 U.S. Dist. LEXIS 185323 (S.D. Ga. Dec. 16, 2014).

Eventually, the Smiths filed a nearly identical complaint in the United States District Court for the Southern District of New York, naming as defendants HSBC, Wells Fargo Bank, and the law firms and lawyer involved in handling the foreclosure sale. See Smith v. HSBC Bank United States, No. 2:15cv70, 2016 U.S. Dist. LEXIS 26585 at *5 (describing case history); see also Smith v.

HSBC Bank USA, N.A., 679 Fed. App'x 876, 878 (11th Cir. 2017). The Southern District of New York transferred the case to this Court, see No. 2:15-cv-47, Dkt. No. 4, and following a motion to strike by one of the defendants, No. 2:15-cv-47, dkt. no. 6, the Smiths voluntarily withdrew the complaint on May 7, 2015, see No. 2:15-cv-47, dkt. nos. 9-10. Not to be defeated, however, the Smiths then filed a nearly identical complaint ("Smith II") in Glynn County, Georgia Superior Court, which the Appellees removed back to this Court. In re Smith, 2016 U.S. Dist. LEXIS 26585 at *6-7; see also No. 2:15cv70, Dkt. No. 1. This Court denied the Smiths' Motion to Remand the case back to Glynn County and granted the defendants' Motion to Strike and Motion to Dismiss, finding that "[w]hile Plaintiffs ostensibly avoided violating the letter of [the pre-screening] Order by filing a complaint against" parties not identified in that Order, "their efforts at circumvention will not be rewarded". See No. 2:15cv70, Dkt. No. 37 at 11-13. This Court further found that "[b]ecause Plaintiffs refuse to quell their incessant abuse of judicial time and resources, despite sanctions and warnings . . . dismissal of their complaint with prejudice is appropriate." Id. at 11-12. In February 2017, the Smiths secured a small victory when the Eleventh Circuit overturned this Court's dismissal of Smith II at least in part on the basis that the named defendants from that action were technically

different from those identified in the bankruptcy court's pre-screening order. See Smith, 679 Fed. App'x at 879.

Thereafter, the Smiths turned their attention back to the Consent Order from Smith I. In July 2017, the Smiths filed with the bankruptcy court a "Motion for Entry of Order on Violation of the Automatic Stay and Emergency Verified Motion for Stay of Writ of Possession and Enforcement of the Automatic Stay." See Dkt. No. 8-1 at 14-28. In their motion, they argued that a foreclosure on the Property in May 2015 by HSBC Bank USA, National Association as Trustee for the Holders of BCAP LLC Trust 2006-AA2 violated the automatic stay because the only entity that had been granted relief of stay was Countrywide. See id. at 16, 19. In December 2017, the bankruptcy court denied the Smiths' motion as barred by res judicata, and the district court affirmed that order on appeal. Smith v. HSBC Bank USA, N.A., 775 Fed. App'x 492, 494 (11th Cir. 2019) (discussing case history). Meanwhile, on September 1, 2017, the district court dismissed Smith II, in pertinent part, on res judicata grounds. Id. Thereafter, the Smiths appealed both the dismissal of their Complaint, as well as the denial of their motion to stay, to the Eleventh Circuit, and the Eleventh Circuit affirmed the district court on both matters. See id. at 493-94.

And still the Smiths persisted. In August 2017, they filed with this Court an "Emergency" Motion to Stay Writ of Possession and to Enforce the Automatic Stay, see No. 2:15-cv-70, Dkt. No.

69, which looked strikingly similar to the motion filed with the bankruptcy court in July that had been denied (on res judicata grounds), affirmed by the district court, and affirmed by the Eleventh Circuit. This Court denied the Smith's motion, as well as their motion for reconsideration of the same issue. See No. 2:15cv70, Dkt. Nos. 70, 95.

Not to be undone, the Smiths filed yet another complaint ("Smith III") in November 2017 against HSBC; HSBC Bank USA, N.A.; and HSBC Bank USA, National Association as Trustee for the Holders of BCAP LLC Trust 2006-AA2 (collectively the "HSBC" Parties). Dkt. No. 10-1 at 3-20. This time, the Smiths vaguely challenged the validity and enforcement of the lien against the Property, as well as the automatic stay. Id. They also asked for money damages and fees. Id. In June 2019, the bankruptcy court entered an order dismissing non-bankruptcy components of Smith III for lack of subject matter jurisdiction and dismissing the remainder as barred by res judicata. No. 17-02016, Dkt. No. 29. The Smiths appealed that order, which is currently pending before this Court in a separate matter.

Finally, in August 2018, the Smiths filed a motion in Smith I titled, "Emergency Motion to Enforce Discharge Injunction and Motion for Issuance of an Order to Respondents to Show Cause why they should not be Held in Contempt." (the "Contempt Motion") Dkt. No. 11-1 at 37-47. In their motion, they argued that the HSBC

Parties, an executive associated with HSBC Bank USA, N.A., as well as certain attorneys, law firms, a realty company, and a realtor, all violated the bankruptcy court's discharge injunction or its order disallowing Claim No. 10. Id. Specifically, they argued that, pursuant to 11 U.S.C. § 506(d), the disallowance of a claim against a debtor renders any lien on that debt void. Accordingly, they reasoned that when the bankruptcy court sustained the trustee's objection to Claim No. 10 and disallowed that claim in March 2013, any lien against the Property related to that claim was rendered void. See id. In the alternative, they argued that, pursuant to 11 U.S.C. § 524, a discharge under the bankruptcy code has the effect of voiding a lien against property in the bankruptcy estate. See id.

The bankruptcy court denied the Contempt Motion in an order entered June 2019 (the "Contempt Order"). Dkt. No. 11-1 at 76–86. With respect to the Smiths' request for injunctive relief, the bankruptcy court found that it could not "enforce the discharge injunction with a new injunction," but rather it could only "sanction parties that have violated the discharge injunction through a contempt order." Id. at 80.[5] Thus, the court assessed only whether there was a violation of the discharge injunction.

---

[5] The Bankruptcy Court also denied the Smiths' request for monetary damages, finding that "[d]ebtors do not have a private right of action for damages arising from a violation of the discharge injunction." Id.

First, the bankruptcy court noted that a Chapter 7 discharge "stops the collection of debts personally against the debtor only." Id. at 82. It does not "avoid or otherwise affect a lien against property of the debtor." Id. (quoting Mele v. Bank of Am. Home Loans (BAC) (in re Mele), 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013)). The court found that the Smiths had not shown "that any of [the] Respondents have made any attempts to collect any debt as a personal liability of the Smiths." Id. Therefore, it concluded that any efforts to foreclose on the Property "had nothing to do with the Smiths or their discharge." Id.

Next, with respect to the Claim No. 10 disallowance, the court found that the disallowance order in this case was procedural because "its effect was simply to keep Countrywide and/or [the HSBC Parties] from receiving any distribution from the Trustee for the Claim" given that the Trustee had abandoned the Property, and it was no longer part of the bankruptcy estate. Id. at 84–85. Accordingly, because there had been no determination about the validity of the lien on the merits, the bankruptcy court found that the disallowance did not void the lien under 11 U.S.C. § 506(d). Thus, the court found no violation of the disallowance order. The Smiths appealed to this Court.

The Smiths essentially raise three arguments on appeal. First, they argue that the bankruptcy Court erred by failing to conduct an evidentiary hearing on the Contempt Motion despite a

12

dispute of material fact. Dkt. No. 14 at 19. Second, they argue that the court erred in concluding that the disallowance did not void the Respondents' lien on the Property. Id. at 27. Finally, they argue that the court erred in concluding that the Respondents' efforts to foreclose on the Property were not in violation of the discharge order. Id. at 37. For the reasons discussed below, the Court finds that these arguments are without merit and affirms the bankruptcy court's Contempt Order.

## LEGAL STANDARD

A district court reviewing a bankruptcy court judgment functions like an appellate court. In re JLJ, Inc., 988 F.2d 1112, 1116 (11th Cir. 1993). Though it reviews the bankruptcy court's legal conclusions de novo, it must accept the court's factual findings unless they are "clearly erroneous." Id. Mixed questions of law and fact are reviewed de novo. In Re Cox, 493 F.3d 1336, 1340 n.9 (11th Cir. 2007).

## DISCUSSION

### I. The Bankruptcy Court did not err by declining to conduct an evidentiary hearing.

The Smiths' first argument on appeal is that the bankruptcy court deprived them of their due process rights under the Fifth Amendment by failing to hold an evidentiary hearing on the Contempt Motion. Specifically, they argue that because there was a dispute of fact as to whether the any of the HSBC parties were parties in

interest as it relates to the lien on the Property, the bankruptcy court should have allowed the parties to present evidence on this question during a hearing before ruling on the Smiths' motion.

As an initial matter, cases addressing due process rights in the context of contempt proceedings generally attribute those rights to the party subject to possible contempt rather than to the party moving for it. See FTC v. Leshin, 719 F.3d 1227, 1235 ("due process is satisfied when a civil contempt *defendant* receives notice and an opportunity to be heard.") (emphasis added); see also Green Point Credit, LLC v. McLean (In re McLean), 794 F.3d 1313, 1324 (11th Cir. 2015) (finding that due process requires "[a]t most" certain "skeletal" protections in civil contempt proceedings, such as "a hearing in which the alleged *contemnor* . . . can introduce evidence rebutting the allegation of contempt and testify on his own behalf") (emphasis added). Indeed, in Mercer v. Mithcell, on which the Smiths rely, the court addressed whether the alleged contemnor was entitled to a hearing "prior to finding [him] in contempt and sanctioning him." 908 F.2d 763, 769 n.11 (11th Cir. 1990). The Smiths have not identified a single decision whereby the movant in a contempt motion was entitled to a hearing merely by virtue of their having filed a motion.

Nevertheless, even if it is true that the Smiths were entitled to a hearing on disputed issues of material fact, they have failed to identify any such issue here. Though the Smiths may dispute

whether any of the HBSC parties are a "party in interest" to the Consent Order, they fail to explain how that fact is material to the underlying dispute. To be sure, the Smiths argue in their Contempt Motion that by operation of either the discharge order or the disallowance of Claim No. 10, the lien on the Property was rendered void. Thus, the Smiths effectively take the position that irrespective of who was granted relief from stay by the Consent Order, no lienholder may now seek to foreclose. See Mot. for Contempt, Dkt. No. 11-1 at 39 ("Regardless of whether or not there was an agency relationship with HSBC Bank USA, N.A., the claim of Countrywide Home Loans, Inc., #10, was disallowed in its entirely by Order of this Court in 2013.") Therefore, the answer to the question of the appropriate party in interest to the Consent Order is immaterial. Accordingly, the Court finds no error by the bankruptcy court in declining to hold a hearing on this issue.

## II. The Bankruptcy Court did not err by finding that the disallowance of Claim No. 10 did not void the lien on the Property.

Next, the Smiths argue that because the bankruptcy court disallowed Claim No. 10, which represented Countrywide's primary mortgage on the Property, the current lienholder could not foreclose on the Property pursuant to that lien. However, the Smiths misapprehend the nature of the disallowance order. As noted, in April 2012, the Trustee filed an abandonment of the Property and thereafter objected to Claim No. 10 on the basis that the

Property had been abandoned. In sustaining the Trustee's objection, the bankruptcy court effectively made a procedural determination that the creditor could not claim property that was no longer a part of the bankruptcy estate. It did not, however, make any substantive determination about the validity of the lien. To the contrary, the Trustee specifically noted in its objection that the owner of the claim should "look to its collateral for the satisfaction of the debt." Dkt. No. 7-4 at 156.

In support of their position, the Smiths point to 11 U.S.C. § 506(d), which provides:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1)  such claim was disallowed under section 502(b)(5) or 502(e) of this title; or
> (2)  such claim is not an allowed claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d).

In essence, the Smiths argue that because Claim No. 10 was disallowed, any liens associated with that claim must necessarily be void under § 506(d). However, while that section may declare certain types of liens "void", it "does not dictate the procedural method required to obtain a judicial adjudication of that fact." In re Smith, 514 B.R. 331, 338 (Bakr. S.D. Ga. 2014). Indeed, "deeds to secure debt are presumptively 'valid' absent a contrary determination authorized by the Bankruptcy Code." Id. The

appropriate method to seek adjudication of the validity of a lien is an adversary proceeding under Bankruptcy Rule 7001(2). Id. Because the Smiths have not sought any such relief here, the Bankruptcy Court did not err in declining to find the lien void.

At best, the Smiths point to National Capital Management v. Gammage-Lewis, a decision from the Eastern District of North Carolina, which held that a claim objection can function as an adversary proceeding to implement § 506. No. 5:10-cv-468, 2012 U.S. Dist. LEXIS 114395, at *8 (W.D.N.C. Aug. 14, 2012). However, the court in that case also held that to be "a suitable substitute for an adversary proceeding," the objection must "give[] clear notice that the debtor is challenging the validity, priority, or extent of the lien and seeks to abrogate a creditor's right to look to its collateral." Id. Here, the Trustee's objection to Claim No. 10 did not purport to be challenging Countrywide's lien on the Property, nor did it seek to abrogate Countrywide—or any other lienholder's—right to the collateral. To the contrary, the Trustee specifically stated that the creditor should "look to its collateral for the satisfaction of the debt." Dkt. No. 7-4 at 156. Accordingly, the bankruptcy court did not err in concluding that the disallowance of Claim No. 10 did not void the lien on the Property.

## III. The Bankruptcy Court did not err in finding that the Respondents did not violate the discharge order.

As a final matter, the Smiths argue that the Respondents violated the discharge order in their efforts to "foreclose [on the Property], evict the Smiths from the Property, and/or sell the Property." Dkt. No. 14 at 37. However, as the bankruptcy court noted, "the chapter 7 discharge stops the collection of debts personally against the debtor," but it "does not avoid or otherwise affect a lien against property of the debtor." Dkt. No. 11-1 (quoting In re Mele, 486 B.R. at 555); see also Caldwell v. Redstone Fed. Credit Union, No. 2:15cv01923, 2018 U.S. Dist. LEXIS 121524, at *37 (N.D. Ala. July 20, 2018) ("A lender has the right to enforce a mortgage against the property after the discharge in bankruptcy, but it has no right to demand payment from the Debtor on the discharged debt.") (internal quotation marks omitted); Negron v. Selene Fin., LP, No. 8:16cv2231, 2017 U.S. Dist. LEXIS 97283, at *18 (M.D. Fla. June 23, 2017) ("Although Plaintiff alleges generally that the debt was discharged in bankruptcy, taken as true, a mortgager holder has a legal right to take possession of property pursuant to its lien rights even after a debtor's discharge in bankruptcy."); Desautels v. Wells Fargo Bank, No. 1:15cv04176, 2016 U.S. Dist. LEXIS 196362, at *11 (N.D. Ga. June 28, 2016) ("[W]hile a lender has no right to demand payment from the debtor after a secured debt has been discharged, it does retain

its right to enforce its contracted interest in the secured property."); <u>Henriquez v. Green Tree Servicing, LLC (In re Henriquez)</u>; 536 B.R. 341, 345 (Bakr. N.D. Ga. 2015) ("Although a discharge eliminates the debtor's personal liability on a secured debt, the discharge does not eliminate a secured creditor's lien against the property.").

The Smiths have not identified any specific actions by any of the Respondents that would have otherwise violated the discharge order. Instead, the bulk of their argument on this topic is simply a rehashing of their argument on the disallowance order, which was rejected above. Accordingly the Court finds no error in the bankruptcy court's conclusion that the Respondents did not violate the discharge order.

## Conclusion

The Smiths have now spent more than a decade pursuing redundant and frivolous arguments before courts in this district and beyond. With nearly every adverse decision, the Smiths demand reconsideration and appeal. When they seem to have exhausted their means of pursuing one line of argument, they simply rebrand the argument as something different and begin again. As the Supreme Court has stated,

> The goal of fairly dispensing justice . . is compromised when the Court is forced to devote its limited resources to the processing of repetitious and frivolous requests. *Pro se* petitioners have a greater capacity than most to disrupt the fair allocation of judicial resources

> because they are not subject to the financial
> considerations–filing fees and attorney's fees–that
> deter other litigants from filing frivolous petitions.

In re Sindram, 498 U.S. 177, 179–80 (1991).

Ultimately, district courts "have considerable discretion to impose even severe restrictions" on litigants who have abused the system. Shivers v. United States, 427 Fed. App'x 697, 699 (11th Cir. 2011). Indeed, "[i]njunctive restrictions on filing by abusive litigants are 'necessary and prudent' in order to curb conduct that would impair the rights of other litigants and the courts' ability to carry out their Article III functions." Id. (quoting Procup v. Strickland, 792 F.2d 1069, 1071 (11th Cir. 1986)). Because of the Smiths' arrant disregard for the decisions and the authority of this Court, and so as to prevent the continued waste of this Court's limited resources, the Court will impose additional restrictions on the Smiths.

Accordingly, for the reasons stated above, the Court **ORDERS** as follows:

1.   The bankruptcy court's decision is **AFFIRMED** and the clerk of court is instructed to **DISMISS** the appeal.

2.   As to any future appeals that the Smiths seek to commence in this Court, the Clerk **SHALL** receive the papers, open a single miscellaneous file for tracking purposes, and forward the paper to the presiding judge for a determination of whether the Smiths have stated a claim with any arguable merit. Only if the appeal

alleges a plausible claim of error by the bankruptcy court will the Court permit it to be filed. Appeals that do not state such a claim will be **DISMISSED** without any further judicial action **AFTER THIRTY (30) DAYS** from the date the Clerk receives the complaint, unless the Court orders otherwise.

3.     The Clerk **SHALL NOT DOCKET** any further motions or papers in a case automatically dismissed pursuant to the directive above except for a notice of appeal to the United States Court of Appeals for the Eleventh Circuit. Any papers other than a notice of appeal **SHALL** be returned to the Smiths unfiled. If the Smiths file a notice of appeal, the Clerk **SHALL** forward a copy of this Order, the notice of appeal, and the dismissed complaint to the Court of Appeals.

4.     To ensure that all future appeals filed by the Smiths are properly consolidated for review, the Clerk **SHALL** personally advise each deputy clerk of the Court's ruling in this case and develop a procedure for ensuring that all future appeals filed by the Smiths are immediately assigned and forwarded to the presiding district judge in this case, regardless of which divisional clerk's office receives and dockets the papers.

5.     This Order **SHALL** be enforced in conjunction with, and in no way replaces or supersedes the pre-screening injunctions entered by the bankruptcy court in September 2012, dkt. no. 7-4 at 153, and the United States Court of Appeals for the Eleventh

Circuit in December 2013, <u>Smith v. Countrywide Home Loans, Inc.</u>, No. 13-13808, 2013 U.S. App. LEXIS 26218 at *1-2 (11th Cir. Dec. 19, 2013).

   **SO ORDERED**, this 30th day of March, 2020.

_____

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA